UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

INSTITUTE FOR POLICY STUDIES     )
                             )
               Plaintiff,    )
           v.               )     Case No: 06-0960 (HHK)
                             )
U.S. CENTRAL INTELLIGENCE     )
AGENCY                      )
                             )
             Defendant.    )

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Defendant United States

Central Intelligence Agency ("CIA"), hereby moves for summary judgment in this action

brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552.  The reasons for this

motion are set forth in the memorandum of points and authorities and supporting documents

submitted herewith.  A statement of material facts as to which there is no genuine dispute, the

two declarations of Marilyn A. Dorn ("First Dorn Declaration" and "Second Dorn Declaration,"

respectively), declaration of William Little of the Drug Enforcement Agency ("Little

Declaration") and a proposed order are attached.

Dated: April 13, 2007                    Respectfully submitted,


                                         /s/
                                         JEFFREY A. TAYLOR, D.C. BAR # 498610
                                         United States Attorney


                                         /s/
                                         RUDOLPH CONTRERAS, D.C. BAR # 434122
                                         Assistant United States Attorney


                                         /s/
                                         ANDREA McBARNETTE, D.C. Bar  # 483789
                                         Assistant United States Attorney
                                         555 Fourth Street, N.W.
                                         Washington, D.C. 20530

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
INSTITUTE FOR POLICY STUDIES        )
                                    )
                Plaintiff,          )
        v.                          )        Case No: 06-0960 (HHK)
                                    )
U.S. CENTRAL INTELLIGENCE           )
AGENCY                              )
                                    )
                Defendant.          )
_____)

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

    Pursuant to LCvR 7.1(h), Defendant United States Central Intelligence Agency ("CIA")

respectfully submits this statement of material facts as to which it contends there is no genuine

dispute.

    1.    By letter dated June 1, 2004, Plaintiff submitted a FOIA request to the CIA.

Plaintiff's FOIA request sought "all records which mention or relate to the Colombian

organization known as 'PEPES' or the Perseguidos por Pablo Escobar, People Persecuted by

Pablo Escobar, Pablo Escobar, and/or the death of Pablo Escobar."  Declaration of Marilyn A.

Dorn ("First Dorn Dec.") ¶ 22.

    2.    In a June 29, 2004 letter, the CIA informed Plaintiff that it had searched its

database of previously released records using the search terms 'pepes' and 'Escobar .'  The CIA

provided Plaintiff with two requester reports listing documents that were "located in a search

conducted on behalf of a previous requester."  In the letter the CIA explained, "if you would like

to order documents from the requester reports, please clearly mark those you want and return the

entire listing to us, bearing in mind that some documents might be duplicates and some may not

be relevant to your request." The CIA also denied Plaintiff's request for a fee waiver. First Dorn Dec. ¶ 23.

3.    On October 13, 2004, Plaintiff appealed the CIA's response to the Plaintiff's June 1, 2004 FOIA request. Plaintiff claimed that, "the CIA Failed to Conduct a Reasonable Search of its Files" and that "the CIA has violated IPS's right to due process by failing to adequately respond to IPS's FOIA request." First Dorn Dec. ¶ 24.

4.    On November 30, 2004, the CIA informed Plaintiff that it had accepted its appeal and would arrange for an Agency Release Panel ("ARP") to consider the appeal. First Dorn Dec. ¶ 25.

5.    On February 16, 2005, Plaintiff asked the CIA for an "immediate response from the ARP and a status of the search for documents." First Dorn Dec. ¶ 26.

6.    On April 6, 2005, Plaintiff again requested an immediate response from the CIA regarding its October 13, 2004 appeal and requested for a second time for a waiver of document fees.   First Dorn Dec. ¶ 27.

7.    On May 13, 2005, the CIA responded to Plaintiff's February 16, 2005 letter by stating that the CIA was "still processing" Plaintiff's appeal and that "every reasonable effort will be made to complete a response as soon as possible." First Dorn Dec. ¶ 28.

8.    On May 23, 2006, Plaintiff filed a complaint for injunctive and declaratory relief in this Court. First Dorn Dec. ¶ 29.

9.    By letter dated December 15, 2006, the CIA notified Plaintiff that, "its processing of Plaintiff's request included a search for records in existence as of June 1, 2004" and that "as a matter of administrative discretion, we will not charge fees in this case." First Dorn Dec. ¶ 30.

10.    By letter dated February 21, 2007, the CIA provided IPS with a supplemental response concerning the document that required the Agency to consult with other federal agencies.  Second Dorn Dec. ¶ 5.  Some of the responsive documents located in the CIA's files were originated by the DOS and the DEA.  The CIA referred these documents to the DOS and DEA for direct response pursuant to the Executive Order 12958 § 3.7(b).  The DOS has notified the Agency that it will release their document in full to Plaintiff.  DOS will send its response to Plaintiff directly.  First Dorn Dec. ¶ 8, fn. 3.  The DEA will file a declaration and/or Vaughn regarding its processing of the referred document.  Little Dec.

11.    On December 15, 2006, the CIA produced to Plaintiff a *Vaughn* document index, pursuant to the Court's October 17, 2006 scheduling order.  First Dorn Dec. ¶ 34.

12.    Some of the responsive documents located in the CIA's files were originated by the DOS.  The CIA referred these documents to the DOS for direct response pursuant to the Executive Order 12958 § 3.7(b).  First Dorn Dec. ¶ 8.

Dated: April 13, 2007                    Respectfully submitted,


                         /s/
                         JEFFREY A. TAYLOR, D.C. BAR # 498610
                         United States Attorney


                         /s/
                         RUDOLPH CONTRERAS, D.C. BAR # 434122
                         Assistant United States Attorney


                         /s/
                         ANDREA McBARNETTE, D.C. Bar  # 483789
                         Assistant United States Attorney
                         555 Fourth Street, N.W.
                         Washington, D.C. 20530
                         (202) 514-7153

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
INSTITUTE FOR POLICY STUDIES     )
               )
         Plaintiff,    )
      v.            )     Case No: 06-0960 (HHK)
               )
U.S. CENTRAL INTELLIGENCE    )
AGENCY              )
               )
        Defendant.   )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(b), of the Federal Rules of Civil Procedure, Defendant United States Central Intelligence Agency ("CIA") hereby submits this memorandum in support of its motion for summary judgment.

## BACKGROUND

This cases arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  This motion addresses the search conducted by the CIA in response to Plaintiff's FOIA request and the ten CIA documents (1 denied-in-full and 9 partial-release documents) at issue in this matter.

Plaintiff submitted a FOIA request to the CIA.  Plaintiff's FOIA request sought "all records which mention or relate to the Colombian organization known as 'PEPES' or the Perseguidos por Pablo Escobar, People Persecuted by Pablo Escobar, Pablo Escobar, and/or the death of Pablo Escobar."  Declaration of Marilyn A. Dorn ("First Dorn Dec.") ¶ 22.

In a June 29, 2004 letter, the CIA informed Plaintiff that it had searched its "database of previously released records using the search terms 'pepes' and 'Escobar .'  The CIA provided Plaintiff with two requester reports listing documents that were "located in a search conducted on behalf of a previous requester."  In the letter the CIA explained, "if you would like to order documents from the requester reports, please clearly mark those you want and return the entire listing to us, bearing in mind that some documents might be duplicates and some may not be relevant to your request."  On October 13, 2004, Plaintiff appealed the CIA's response to the Plaintiff's June 1, 2004 FOIA request.  Plaintiff claimed that, "the CIA Failed to Conduct a Reasonable Search of its Files" and that "the CIA has violated IPS's right to due process by failing to adequately respond to IPS's FOIA request."  First Dorn Dec. ¶ 24.  On 23 May 2006, Plaintiff filed a complaint for injunctive and declaratory relief in this Court. [1]

## STANDARD OF REVIEW

### *Summary Judgment*

Summary judgment may be granted if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986), the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

---

[1]  Some of the responsive documents located in the CIA's files were originated by the DOS and the DEA.  The CIA referred these documents to the DOS and DEA for direct response pursuant to the Executive Order 12958 § 3.7(b).  The DOS has notified the Agency that it will release their document in full to Plaintiff.  DOS will send its response to Plaintiff directly. First Dorn Dec. ¶ 8, fn. 3.  The DEA will file a declaration and/or Vaughn regarding its processing of the referred documents.  Little Dec.

whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved.  See Cooper Cameron Corp. v. Dept. of Labor, 238 F.3d 539, 543 (5th Cir. 2002).

Summary judgment is available to a defendant in a FOIA case if the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.  Miller v. Department of State, 779 F.2d 1378, 1382 (8th Cir. 1985), citing Weisberg v. Department of Justice, 705 F.2d 1344, 1350 (D.C. Cir. 1983).  To discharge its FOIA obligations, the agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Goland v. CIA, 607 F.2d 339, 352  (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980), quoting National Cable Television Ass'n. Inc. v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973).  The agency may sustain its burden by submitting detailed affidavits that identify the documents at issue and explain why they fall under the claimed exemptions.  See Summers v. Dept. of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998); Miller, 779 F.2d at1382.

Agencies establish that all of their obligations under the FOIA have been met through declarations.  Thus, when the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant.  Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

**ARGUMENT**

I.    **Defendant Conducted a Proper Search for Requested Materials**

    A.    <u>**Standards for a Proper Search for Responsive Records**</u>

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. <u>Oglesby v. U.S. Dept. of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990); <u>Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al.</u>, 844 F. Supp. 770, 776 (D.D.C. 1993); <u>Weisberg v. U.S. Dept. of Justice</u>, 705 F.2d 1344, 1352 (D.C. Cir. 1983). This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce relevant material. <u>Id</u>. at 777 n.4. An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. <u>Oglesby</u>, 920 F.2d at 68. Simply stated, the adequacy of the search is "dependent upon the circumstances of the case." <u>Truitt v. Dept. of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990).

The search standards under FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located. <u>Nation Magazine v. U.S. Customs Serv.</u>, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). It has been held that "'the search need only be reasonable; it does not have to be exhaustive.'" <u>Miller v. Dept. of State</u>, 779 F.2d 1378, 1383 (8th Cir. 1985) <u>citing</u> <u>National Cable Television Association v. FCC</u>, 479 F.2d 183, 186 (D.C. Cir. 1973). Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. <u>Nation Magazine</u>, 71 F.3d at 892 n.7. Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a

document necessarily imply that the agency has retained it. Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller, 779 F.2d at 1383; Goland, 607 F.2d at 352. Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" Carney v. Dept. of Justice, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Servs., 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search. Once the agency has met this burden through a show of convincing evidence, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations. See Carney, 19 F.3d at 813; SafeCard, 926 F.2d at 1200; Maynard v. CIA, 986 F.2d 547, 559-560 (1st Cir. 1993).

The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

5

B.    **CIA Records Systems**

The CIA's records systems are decentralized and compartmented.  First Dorn Dec. ¶ 14.

All CIA components are contained within one of five directorates or office clusters:  the

Directorate of Intelligence (DI); the National Clandestine Service (NCS); the Directorate of

Science and Technology (DS&T); the Directorate of Support (DS); and the Director of CIA Area

(DCIA).  First Dorn Dec. ¶ 15.

C.    **Defendant Conducted an Adequate Search**

1.    **CIA's  Search was Adequate**

Plaintiff's FOIA request sought "all records which mention or relate to the Colombian

organization known as 'PEPES' or the Perseguidos por Pablo Escobar, People Persecuted by

Pablo Escobar, Pablo Escobar, and/or the death of Pablo Escobar."  First Dorn Dec. ¶ 22  The

CIA initially searched its database of previously released records using the search terms 'pepes'

and 'Escobar.'  CIA provided Plaintiff with two requester reports listing documents that were

located and released after a prior search on behalf of a previous requester.  The previous

requester sought, "All records which mention or relate to the Colombian organization known as

the "PEPES," or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar."

First Dorn Dec. ¶ 36.  Plaintiff did not select any items from the requester reports and appealed,

among other things, the CIA determination to search only previously released records.  First

Dorn Dec. ¶ 37.

CIA reevaluated its initial search and determined to conduct a more expansive search.

The CIA determined that two directorates would be most likely to have responsive records:  the

DI and the DCIA.   First Dorn Dec. ¶ 38-39.  The DI is the CIA component that analyzes,

interprets, and forecasts foreign intelligence issues and world events of importance to the United

States.  The DI is also responsible for the production of finished intelligence reports for

dissemination to policymakers in the United States Government.  First Dorn Dec. ¶ 41.  The

DCIA is a cluster of offices directly responsible to the Director of CIA, and is distinct from the

Agency's four main directorates (DI, NCS, DS and DS&T).  The DCIA includes such

components as the Office of Inspector General (OIG), Office of General Counsel (OGC), Office

of Congressional Affairs (OCA), Office of Public Affairs (OPA) and Office of Protocol (OP).

First Dorn Dec. ¶ 42.

      CIA officers did not task the DS&T, NCS, or DS to search for responsive records.  The

DS&T is the CIA component responsible for creating and applying technology to fulfill

intelligence requirements.  First Dorn Dec. ¶ 44.  The DS is responsible for CIA's administrative

matters.  First Dorn Dec. ¶ 45.  The NCS is the organization within CIA responsible for the

conduct of foreign intelligence collection activities through the clandestine use of human

sources. First Dorn Dec. ¶ 45.  In connection with Plaintiff's FOIA request, the CIA did not

search "operational files" of the NCS or DS&T.   Pursuant to the CIA Information Act of 1984,

Congress authorized the Director of Central Intelligence to exempt certain operational files from

the search, review and disclosure provisions of the FOIA.  See 50 U.S.C. § 431.  Because the

files most likely to have information responsive to the request would be exempt under 50 U.S.C.

§ 431, the CIA didn't search NCS or DS&T files.  See First Dorn Dec. ¶ 48.

      The CIA searched for the following items in Plaintiff's request: "PEPES" or the

"*Perseguidos por Pablo Escobar",* "People Persecuted by Pablo Escobar," and/or the death of

Pablo Escobar.  The CIA conducted a search for all items in Plaintiff's request except for that

portion concerning Pablo Escobar, as discussed below.  First Dorn Dec. ¶¶ 40-55.  The CIA's search was reasonably well designed to locate all responsive records, and was executed according to plan.  The search was adequate and should therefore be upheld.

### 2. The CIA Properly did not Search for Documents regarding Pablo Escobar

The CIA was correct in refusing to search for documents related to that portion of Plaintiff's request seeking records on Pablo Escobar as the CIA can neither confirm nor deny the existence or nonexistence of records responsive to Plaintiffs' request for information about Pablo Escobar.  In responding to Plaintiff's request for information about Pablo Escobar, the mere confirmation or denial of the existence of responsive records would reveal a classified fact-- namely, whether the CIA has gathered information on a specific person who was or appeared to be a foreign national.  First Dorn Dec. ¶ 50.  These matters must be approached in the reasonable manner of neither confirming nor denying the existence of such records when there has been no prior official acknowledgment by the CIA that it either has or does not have records or that there exists an overt relationship with the person(s).  First Dorn Dec. ¶ 50.

This "Glomar" response is necessary to safeguard intelligence sources, methods and U.S. foreign relations interests.  See, e.g., Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999) (finding that the CIA properly refused to confirm or deny whether plaintiff was ever employed by the CIA, on the basis that disclosure could cause "diplomatic tension between Chile and the United States" or could "lessen the burden facing a foreign intelligence agency attempting to track the CIA's covert activities abroad"); Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984) (applying response to request for any record reflecting any attempt by Western countries to overthrow Albanian government); Gardels v. CIA, 689 F.2d 1100, 1105 (D.C. Cir. 1982)

8

(applying response to request for any record revealing any covert CIA connection with University of California); <u>Wheeler v. CIA</u>, 271 F. Supp. 2d 132, 140 (D.D.C. 2003) (allowing the agency to give a "Glomar" response to a request for records concerning plaintiff's activities as a journalist in Cuba during the 1960s). Here, a Glomar response will "prevent disclosing to our adversaries the specific persons and areas in which the CIA is interested and upon which it focuses its methods and resources. Every country or group has limited resources. The disclosure to a potential U.S. intelligence target of the areas and persons of CIA interest would indicate to that target how CIA is allocating its resources. Therefore, the target may array its counterintelligence and security resources most efficiently to frustrate CIA." Dorn Dec. ¶ 54. <u>See</u> <u>Wolf v. CIA et. al</u>, 473 F.3d 370, 377 (D.C. Cir. 2007) (finding Glomar response regarding a deceased foreign national under Exemption (b)(1) appropriate where "confirming a foreign national reasonably could damage sources and methods by revealing CIA priorities, thereby providing foreign intelligence sources with a starting point for applying countermeasures against the CIA and thus wasting Agency resources"). Thus, the CIA properly refused to search for records regarding someone who appeared to be a foreign national in order to safeguard intelligence sources, methods and U.S. foreign relations interests.

**III.     <u>The CIA Properly Referred Documents</u>**

Some of the responsive documents located in the CIA's files and responsive to Plaintiff's request were originated by the DOS and the DEA. In accordance with standard procedures, the CIA referred these documents to the DOS and DEA for direct response. Executive Order 12958 § 3.7(b) mandates this referral, commonly referred to as the "third-agency rule." The DOS has notified the Agency that it will release their document in full to

Plaintiff.  DOS will send its response to Plaintiff directly.  The DEA will provide a declaration

and/or Vaughn regarding its processing of the referred documents.  First Dorn Dec. ¶ 8, fn. 3.

## IV.    The CIA Properly Applied Exemption (b)(1)

FOIA Exemption (b)(1) provides that FOIA's disclosure requirements do not apply to

records that are:

> (A)  specifically authorized under criteria established by an Executive Order to be kept
> secret in the interest of national defense or foreign policy and
>
> (B) are in fact properly classified pursuant to such Executive Order.

5 U.S.C.§ 552(b)(1).  In exemption (b)(1) cases, "courts must 'recognize that the Executive

departments responsible for national defense and foreign policy matters have unique insights into

what adverse affects [sic] might occur as a result of public disclosure of a particular classified

record.'"  Salisbury v. United States, 690 F.2d 966, 970 (D. C. Cir. 1982) (quoting S. Conf. Rep.

No. 1200, 93rd Cong., 2d Sess. 12 (1974)).  The D.C. Circuit has held that courts must give

"substantial weight" and "utmost deference," while conducting a de novo review of agency

determination, that information requested under FOIA is classified and barred from disclosure.

Id. at 970 ("[C]ourts are to 'accord substantial weight to an agency's affidavit concerning the

details of the classified status of the disputed record.'"); see also Bonner v. Department of

Justice, 930 F.2d 350, 357 (D.C. Cir. 1991) ("What fact or bit of information may compromise

national security is best left to the intelligence experts.").

The CIA asserted Exemption (b)(1) to roughly 31 pages that were redacted and 5 pages

that were denied in full.  See First Dorn Dec., Vaughn Index.  After reviewing the information at

issue, the CIA determined that it had been properly classified at the SECRET or

CONFIDENTIAL level pursuant to E.O. 12958 criteria because its disclosure could reasonably be expected to cause damage, or in some cases, serious damage to the U.S. national security. First Dorn. Dec. ¶ 58.  The CIA withheld three categories of classified information listed in Section 1.5 of E.O. 12958:  "(b) foreign government information; (c) intelligence activities . . . intelligence sources or methods, or cryptology;" and "(d) foreign relations or foreign activities of the United States, including confidential sources."  Here, the CIA withheld information that would reveal: 1) intelligence sources; 2) intelligence methods; 3) intelligence  activities; 4) CIA employee names and internal information; 5) cryptonyms and pseudonyms; and 6) foreign government information.  First Dorn Dec. ¶¶ 58 - 92.  See, e.g., Schrecker v. United States Dep't of Justice, 254 F.3d 162, 166 (D.C. Cir. 2001) (protecting intelligence sources because release would harm national security by "dissuading current and future sources from cooperating"); Emerson v. CIA, No. 99-00274, slip op. at 5 (D.D.C. May 8, 2000) (holding that the "CIA's covert intelligence interest in a specific individual represents an intelligence activity, source, and/or method"); McDonnell v. United States, 4 F.3d 1227, 1244 (3d Cir. 1993) (upholding classification of cryptographic information dating back to 1934 when release "could enable hostile entities to interpret other, more sensitive documents similarly encoded") (decided under Executive Order 12,356); Rubin v. CIA, No. 01 CIV 2274, 2001 WL 1537706, at 3-4 (S.D.N.Y. Dec. 3, 2001) (holding that CIA properly refused to confirm or deny existence of records concerning two deceased British poets, because acknowledgment could negatively impact foreign relations and compromise a source); Pinnavaia v. FBI, No. 03-112, slip op. at 8 (D.D.C. Feb. 25, 2004) (holding that it was reasonable to classify "sensitive information gathered by the

United States either about or by a foreign country," because the disclosure "could have negative diplomatic consequences"). Thus, the CIA properly applied exemption (b)(1).

## V.    The CIA Properly Applied Exemption (b)(2)

FOIA Exemption (b)(2) states that FOIA does not apply to matters that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption (b)(2) of the FOIA protects from disclosure internal matters of a relatively trivial nature such as "internal information of a less significant nature, such as administrative routing notations and agency rules and practices, sometimes referred to as "low 2" information." Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing "low 2" and "high 2" aspects of exemption). "[I]f the material relates to trivial administrative matters of no genuine public interest, exemption would be automatic under the statute. If withholding frustrates legitimate public interest, however, the material should be released unless the government can show that disclosure would risk circumvention of lawful agency regulation." Founding Church of Scientology v. Smith,721 F.2d 828, 830-31, n. 4 (D.C. Cir. 1983).

The CIA properly invoked Exemption (b)(2) in this case to withhold  "low 2" information from two documents. First Dorn Dec. ¶ 95. The "low 2" information includes a  signature of a CIA officer, internal filing instructions, and an internal cover sheet with administrative routing information.  There is no public interest in the disclosure of such internal procedures and clerical information that would justify the administrative burden that would be placed upon CIA. Therefore, the CIA properly asserted Exemption (b)(2).

12

## VI.    The CIA Properly Applied Exemption (b)(3)

Exemption 3 allows the withholding of information prohibited from disclosure by another statute only if one of two disjunctive requirements are met: the statute either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  The D.C. Circuit has held that "a statute that is claimed to qualify as an Exemption 3 withholding statute must, on its face, exempt matters from disclosure.").  Reporters Comm. for Freedom of the Press v. United States Dep't of Justice, 816 F.2d 730, 734 (D.C. Cir.), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989).

CIA may withhold intelligence sources and methods under authority of  the CIA Act of 1949.  Specifically, Section 6 of the CIA Act provides  that CIA shall be exempt from the "provision of any other laws which require the publication or disclosure of the organization, function, names, official titles, salaries, or numbers of personnel employed by the Agency."  50 U.S.C. 403g.  To this end, CIA cannot disclose any information relating to its core function: collection of foreign intelligence through its intelligence sources and methods.  See id.  Thus, CIA may invoke FOIA exemption (b)(3) to protect intelligence sources and methods.  Bowers v. U.S. Dept. of Justice, 930 F.2d 350, 357 (4th Cir. 1991) (noting that 50 U.S.C. § 403g "is precisely the type statute covered by exemption (b)(3)).

The CIA withheld a record containing information derived from a polygraph interview because it involves intelligence sources and methods, and CIA organizational/functional information.   First Dorn Dec. ¶¶ 98, 108.  The CIA withheld: a signature of a CIA officer;

13

internal filing instructions; an internal cover sheet with administrative routing information. First Dorn Dec. ¶ 95 fn 12. The CIA also withheld CIA employees' names and personal identifiers; cryptonyms and pseudonyms; and information pertaining to intelligence activities, intelligence methods; intelligence source's identity and the CIA's relationship with a foreign intelligence service. First Dorn Dec. ¶ 74, 85, 91, 95 fn. 12. The CIA properly withheld these documents in their entirety, or in part under (b)(3) because it concerns intelligence sources and/or methods, and CIA organizational/functional information. First Dorn Dec. ¶ 95 fn. 12.

## VII. The CIA Properly Applied Exemption (b)(6)

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." Lepelletier v. FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999), (emphasis supplied), quoting Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982). The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." U.S. Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 763 (1989). In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." Lepelletier, 164 F.3d at 46 (interior quotation marks and citations omitted).

The CIA withheld personal information that identifies the names of, and/or identifying information about (including biographical information) specific individuals, including CIA

14

employees, and their family members.  First Dorn Dec. ¶ 102.   As  no overriding public interest requires the disclosure of the names of, or identifying information about CIA employees or about CIA family members, the CIA properly applied Exemption (b)(6).

## VIII.   The CIA Properly Applied Exemption (b)(7)(E)

Exemption 7(E) of the FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

The CIA withheld a record containing information derived from a polygraph interview. First Dorn Dec. ¶ 106.  Because the release of the record would disclose Agency investigatory techniques and procedures, as well as those of certain law enforcement agencies, CIA properly invoked FOIA exemption (b)(7)(E).  Dorn. Dec. ¶ 106.

## IX.   Defendant Released all Reasonably Segregable Material

The FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements."  Mead Data,

566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  Id.  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated.  Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

The CIA carefully segregated exempt from non-exempt material in responding to plaintiff's request.  A line-by-line review was conducted for all the documents at issue to identify and release reasonably segregable, non-exempt portions of documents.  First Dorn Dec. ¶ 5.  The CIA provided a detailed justification regarding the segregable material.  See First Dorn Dec. ¶¶ 17-18, 33, 43, 95, 101; Vaughn Index.  Accordingly, the CIA has complied with its obligation under the FOIA to release any reasonably segregable information.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the Defendant respectfully requests that the Court grant summary judgment in favor of the Defendant.


Dated: April 13, 2007                    Respectfully submitted,


 /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


 /s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


 /s/
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530