# IPS INDEX



FOIA/PA Request No.:
Document Number:
Date of Document:
Document Type:
Classification:
From/To:
Subject:
Document Pages:

FOIA Exemptions:          Privacy Act Exemptions:          Disposition:

Document Description : This is an 8 page intelligence report prepared by the DCI Crime and Narcotics Center in 1997. The only information in the document pertaining to the death of Pablo Escobar is a incidental reference to the location where he was killed in 1993. This reference has been released in full. The remaining information, which is currently and properly classified, is an assessment of the state of drug trafficking, including information about various drug traffickers and drug lords in the late 1990s. The information withheld would reveal information that is properly classified pursuant to an Executive order in the interest of national defense or foreign policy. The information withheld would reveal intelligence activities (including special activities), intelligence sources, and intelligence methods. The information withheld would reveal foreign government information, cause harm to foreign relations, and reveal CIA internal practices, data, functions, and the name, employee identification numbers, phone numbers, and official titles of CIA employees. All reasonably segregable responsive information has been released.

Case Number: 06-0960
Judge's Initials : HHK



# IPS INDEX



FOIA/PA Request No. :

Document Number:

Date of Document:

Document Type:

Classification :

From/To:

Subject:

Document Pages:

FOIA Exemptions:

Privacy Act Exemptions:

Disposition:

Document Description : This 3 page CIA cable contains one paragraph reporting on the death of Pablo Escobar and implications for the flow of drugs from Colombia. The information withheld would reveal information that is properly classified pursuant to an Executive order in the interest of national defense or foreign policy. The information withheld would reveal intelligence activities (including special activities), and intelligence sources and methods. The information withheld would also reveal foreign government information, cause harm to foreign relations, and reveal CIA internal practices, organizational data, functions, dissemination, and cable addresses.    All reasonably segregable responsive information has been released.

Case Number : 06-0960
Judge's Initials : HHK

# IPS INDEX



FOIA/PA Request No.:
Document Number:
Date of Document:
Document Type:
Classification:
From/To:
Subject:
Document Pages:

FOIA Exemptions:

Privacy Act Exemptions:

Disposition:

Document Description : Two page document created by the Directorate of Intelligence in March 1993 consisting of title page/table of contents and three separate articles about Latin American military issues. One article consisting of two paragraphs contains information about PEPES and is responsive to Plaintiff's request. The other article(s) are not responsive to the request because they contain information about developments in other countries in the world and do not refer to the subjects of Plaintiff's request. The information withheld would reveal information that is properly classified pursuant to an Executive order in the interest of national defense or foreign policy. The information withheld would reveal intelligence activities (including special activities), and intelligence sources and methods. The information withheld would also reveal foreign government information, cause harm to foreign relations, and reveal CIA internal practices, organizational data, functions, and the names, employee identification number, phone numbers, and official titles of CIA employees. All reasonably segregable responsive information has been released.

Case Number: 06-0960
Judge's Initials : HHK

# IPS INDEX



FOIA/PA Request No.:

Document Number:

Date of Document:

Document Type:

Classification:

From/To:

Subject:

Document Pages:

FOIA Exemptions:

Privacy Act Exemptions:

Disposition:

Document Description : This is a 3 page document consisting of cover page, table of contents, and two discrete articles from a periodical publication. One article concerns Colombia and drug-related violence escalating following a car-bomb attack on FEPES facilities and is responsive. (The other article is about developments in another country in the world and nonresponsive to the Plaintiff's request.) The information withheld would reveal information that is properly classified pursuant to an Executive order in the interest of national defense or foreign policy. The information withheld would reveal intelligence activities (including special activities), and intelligence sources and methods. The information withheld would also reveal foreign government information, cause harm to foreign relations, and reveal CIA internal practices, organizational data, functions, and the name, room number, and component of assignment of a CIA employee. All reasonably segregable responsive information has been released.

Case Number: 06-0960
Judge's Initials : HHK

# IPS INDEX



FOIA/PA Request No.:

Document Number:

Date of Document:

Document Type:

Classification:

From/To:

Subject:

Document Pages:

FOIA Exemptions:

Privacy Act Exemptions:

Disposition:

**Document Description :** This is a 3 page document consisting of cover page, table of contents, and one page containing two discrete articles from a periodical publication. One article concerns Columbia and extralegal steps against Escobar, discusses PEPES, and is responsive. (The remaining text is a separate article and a brief analysis about another country in the world and nonresponsive to the plaintiff's request.) The information withheld would reveal information that is properly classified pursuant to an Executive order in the interest of national defense or foreign policy. The information withheld would also reveal intelligence activities (including special activities), and intelligence sources and methods. The information withheld would also reveal foreign government information, cause harm to foreign relations, and reveal CIA internal practices, organizational data, functions, and the name, room number, and component of assignment of a CIA employee. All reasonably segregable responsive information has been released.

Case Number: 06-0960
Judge's Initials : HHK

# IPS INDEX



**FOIA/PA Request No.:**

**Document Number:**

**Date of Document:**

**Document Type:**

**Classification:**

**From/To:**

**Subject:**

**Document Pages:**

**FOIA Exemptions:**

**Privacy Act Exemptions:**

**Disposition:**

**Document Description :** This is a 3 page document consisting of cover page, table of contents, and one page containing two separate articles. One article concerns Columbia and implications of Escober's death and is responsive. (The remaining text is a separate article and a brief analysis about another country in the world and nonresponsive to plaintiff's request.) The information withheld would reveal information that is properly classified pursuant to an Executive order in the interest of national defense or foreign policy. The material withheld would also reveal intelligence activities (including special activities), and intelligence sources and methods. The information withheld would also reveal foreign government information, cause harm to foreign relations, and reveal CIA internal practices, organizational data, functions, and the name, room number, and component of assignment of a CIA employee. All reasonably segregable responsive information has been released.

**Case Number : 06-0960**
**Judge's Initials : HHK**

# IPS INDEX



FOIA/PA Request No.:
Document Number:
Date of Document:
Document Type:
Classification:
From/To:
Subject:
Document Pages:

FOIA Exemptions:
Privacy Act Exemptions:
Disposition:

Document Description : This 2 page memorandum for the record contains information from 6 December 1993 briefings of NSC and SSCI on the "Los Pepes" Affair by CIA officers. The information withheld would reveal information that is properly classified pursuant to an Executive order in the interest of national defense or foreign policy. The information withheld would also reveal intelligence activities (including special activities), intelligence sources, intelligence methods, and the location of a covert CIA installation. The information withheld would reveal foreign government information, cause harm to foreign relations, and reveal CIA internal practices, organizational data, functions, signature of a CIA officer, filing instructions, and the names, initials, employee identification number, and official titles of CIA employees. In accordance with standard procedures, CIA coordinated this document with the DOD and DOS. Both agencies determined certain information to be properly classified pursuant to an Executive order in the interest of national defense or foreign policy, and therefore exempt from release pursuant to FOIA exemption (b)(1). All reasonably segregable responsive information has been released.

Case Number : 06-0960
Judge's Initials : HHK

# IPS INDEX



FOIA/PA Request No.:

Document Number:

Date of Document:

Document Type: Memo

Classification: Secret

From/To:

Subject:

Document Pages:

FOIA Exemptions:

Privacy Act Exemptions:

Disposition:

Document Description : This 5 page document consists of a one page internal CIA cable concerning availability of a person and other administrative arrangements for discussion about various allegations, including reference to a plot against a narcotics trafficker; one page containing a case summary of polygraph derived information and case comments; a cover sheet with internal routing information that is nonresponsive to plaintiff's request; and a two page summary of a polygraph interview. The information withheld would reveal information that is properly classified pursuant to an Executive order in the interest of national defense or foreign policy. The information withheld would also reveal intelligence activities (including special activities), intelligence sources, intelligence methods, including polygraph derived information, the location of a covert CIA installation, pseudonyms, and cryptonyms. Additionally, the information withheld would reveal foreign government information, cause harm to foreign relations, and reveal CIA internal practices, organizational data, functions, and the names, initials, office numbers, office locations, employee numbers, telephone numbers, and official titles of CIA employees. The information withheld also constitutes investigatory records, the release of which could disclose investigative techniques and procedures. Third party information, including names, social security numbers, and date and place of birth, are withheld because disclosure of the information would constitute a clearly unwarranted invasion of personal privacy. The nature of the information contained in this document is such that no meaningful information can be segregated for release.

Case Number: 06-0960

Judge's Initials : HHK

# IPS INDEX

**FOIA/PA Request No.:** F-1999-00924

**Document Number:** 1397243

**Date of Document:** 12/27/1993

**Document Type:** Memo

**Classification:** Secret

**From/To:**

**Subject:** Briefing for HBSCI Staff on Results of "Los Pepes" Panel and on Death of Pablo Escobar

**Document Pages:** 6

**FOIA Exemptions:**

- [X] (b)(1)
- [ ] (b)(2)
- [X] (b)(3)
- [ ] (b)(4)
- [ ] (b)(5)
- [ ] (b)(6)
- [ ] (b)(7)(c)
- [ ] (b)(7)(d)
- [ ] (b)(7)(e)
- [ ] (b)(7)(f)

**Privacy Act Exemptions:**

- [ ] (d)(5)
- [ ] (j)(1)
- [ ] (j)(2)
- [ ] (k)(1)
- [ ] (k)(2)
- [ ] (k)(5)

**Disposition:**

- ( ) Denied in Full
- (●) Partial Release
- ( ) Released in Full
- ( ) Referred to Third Agency

**Document Description :** This is a 6 page memorandum for the record consisting of 2 page cover memorandum and four page attachment from 6 December 1993 briefings of HPSCI staff on results of "Los Pepes" Panel and on the Death of Pablo Escobar. The information withheld would reveal information that is properly classified pursuant to an Executive order in the interest of national defense or foreign policy. The information withheld would also reveal intelligence activities (including special activities), intelligence sources, intelligence methods, and the location of a covert CIA installation. The information withheld would reveal foreign government information, cause harm to foreign relations, and reveal CIA internal practices, organizational data, functions, and the names, initials, employee number, and official titles of CIA employees. In accordance with standard procedures, CIA coordinated this document with the DOD, DOS, DEA and NSA. The DOD, DOS, and NSA determined certain information to be properly classified pursuant to an Executive order in the interest of national defense or foreign policy, and therefore exempt from release pursuant to FOIA exemption (b)(1). NSA also determined that information withheld was exempt pursuant to FOIA exemption (b)(3). All reasonably segregable responsive information has been released.

**Case Number:** 06-0960
**Judge's Initials :** HHK

MORI DocID: 1099051

TCNI

F-2004-01528



**IPS**

*Four Decades of*
*Unconventional*
*Wisdom*

**Director**
John Cavanagh

**Board Of Trustees**
Ruth Adams
Harry Belafonte
Robert L. Borosage
Elsbeth Bothe
John Cavanaugh
Adrian De Wind
James Early
Ralph Estes
Frances T. Farenthold
Lisa Fuentes
Saul Landau
Nancy Lewis
Clarence Lusane
E. Ethelbert Miller
Marcus Raskin
Lewis M. Steel
Katrina vanden Heuvel
Daphne Wysham

June 1, 2004                                          JUN10'04 PM12:49

Mr. Alan Tate, FOIA Coordinator, CODE PSP/FOIA
Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Dear Mr. Tate:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. Section 552, et seq. (as
amended), I hereby request access to or a copy of the following records:

>   All records which mention or relate to the Colombian organization known as the
>   "PEPES" or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo
>   Escobar, Pablo Escobar and/or the death of Pablo Escobar.

This request is made on behalf of the Institute of Policy Studies (IPS) for non-commercial
use. IPS is the nation's oldest multi-issue progressive think tank. Since 1963, the Institute
has worked with social movements to forge viable and sustainable policies to promote
democracy, justice, human rights, and diversity. IPS is a nonprofit tax-exempt organization.
Under 5 U.S.C. (a) (4) we are entitled to a waiver of all fees in connection with this request.

IPS enriches public policy debates by publishing and making widely available
reports concerning issues relating to human rights. Disclosure of the information in this
request is in the public interest since release to us of these records, which directly relate to
U.S. policy on Colombia, is likely to contribute significantly to greater public understanding
of the operations or activities of the U.S. Government in Colombia.

To the extent that this request is denied based on a claimed exemption under the
FOIA, please provide us with the basis for the claimed exemption, a summary of the material
claimed to be exempt, and any reasonably segregable non-exempt portions of the requested
material.

To expedite the release of the documents, please disclose them on an interim basis as they
become available to you, without waiting until all the documents have been processed. If you
have any questions regarding the identity of the records, their location, the scope of the
request or any other matters, please call me at (510) 986-0885. I look forward to receiving
your response within the ten-day statutory time period.

Sincerely,

Paul Paz y Miño
ppaz@igc.org
Research Scholar
Institute for Policy Studies

**GOVERNMENT EXHIBIT**

---

Institute for Policy Studies, 733 15th Street, NW, Suite 1020, Washington, DC 20005-2112
Phone (202)234-9382, Fax (202)387-7915, www.ips-dc.org

MORI DocID: 1104104



Central Intelligence Agency

Washington, D.C. 20505

29 June 2004

Mr. Paul Paz y Miño
Institute for Policy Studies
733 15ᵗʰ Street, NW, Suite 1020
Washington, DC 20005-2112

Reference: F-2004-01528

Dear Mr. Miño:

    This acknowledges receipt of your 1 June 2004 letter requesting records under the provisions of the Freedom of Information Act (FOIA). Specifically, your request is for:

> **All records which mention or relate to the Colombian organization known as the "PEPES" or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar.**

For identification purposes we have assigned your request the number referenced above. Please refer to this number in future correspondence.

    In an effort to assist you we searched our database of previously released records using the search terms "pepes" and "Escobar." Enclosed are copies of two requester reports generated by this search. These documents were located in a search conducted on behalf of a previous requester. This search was conducted at no charge.

    Based upon the information provided in your letter, we have determined that your request falls into the "educational and non-commercial scientific institution" fee category, which means that you will be required to pay only the cost of reproducing released records. You will be assessed for document copies at the rate of ten cents per page for pages in excess of the first 100, to which you are entitled free. A copy of our fee schedule is enclosed for reference



GOVERNMENT
EXHIBIT
C

MORI DocID: 1104104

If you would like to order documents from the requester reports, please clearly mark those you want and return the entire listing to us, bearing in mind that some documents might be duplicates and some may not be relevant to your request. Because the page counts on the listings are not always accurate, please do not send payment in advance. We will bill you at the time we provide the documents you choose. At that time, we will ask you to make your check payable to the United States Treasurer.

We trust that you will find the enclosed information useful.

Sincerely,

Alan W. Tate
Acting Information and Privacy Coordinator



OCT 20 '04 at 10:38

*Four Decades of
Unconventional
Wisdom*

**Director**
John Cavanagh

**Board Of Trustees**
Ruth Adams
Harry Belafonte
Robert L. Borosage
Elsbeth Bothe
John Cavanaugh
Adrian De Wind
James Early
Ralph Estes
Frances T. Farenthold
Lisa Fuentes
Saul Landau
Nancy Lewis
Clarence Lusane
E. Ethelbert Miller
Marcus Raskin
Lewis M. Steel
Katrina vanden Heuvel
Daphne Wysham

October 13, 2004

Mr. Alan Tate, FOIA Coordinator, CODE PSP/FOIA
Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Re:    Case Number F-2004-01528
Freedom of Information Act Appeal

Dear Mr. Tate:

Pursuant to the Freedom of Information Act ("FOIA"), codified at 5 U.S.C. § 552 et seq., and in accordance with 5 U.S.C. § 552(a)(6), The Institute for Policy Studies (IPS) is formally appealing the June 29, 2004 FOIA response issued by the Central Intelligence Agency (CIA) and requesting that the CIA reply to the foregoing appeal within the requisite 20 day time limit. See 5 U.S.C. § 552(a)(6)(A)(ii) (1996).

On June 1, 2004, Paul Paz y Miño, on behalf of IPS, submitted a FOIA request to the State Department requesting all records regarding or referring to the Colombian organization known as the "PEPES" or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar.

**The CIA Failed to Conduct a Reasonable Search of its Files**

The CIA stated in its June 29, 2004 response only that it had conducted a search of its "database of previously released documents". This search produced an index of 503 documents all of which were publicly released Foreign Broadcast Information Service reports. IPS does not consider this search to be adequate and requests that a new search be conducted and documents be reviewed that are not merely public foreign broadcasts. The CIA is under a duty to conduct a reasonable search of its records for any documents that are "possibly responsive" to IPS's request, and the CIA bears the burden of showing the reasonableness of both the scope and method of its search. See Kurz-Kasch, Inc. v. Department of Defense, 688 F. Supp. 311, 313 (S.D. Ohio 1987) (emphasis added). As the CIA has failed to meet that burden by demonstrating that it has reasonably searched its files in responding to IPS's request, the CIA's response is inadequate.

When responding to a FOIA request, agencies are "under a duty to conduct a reasonable search for any documents which are possibly responsive" to the request. Kurz-Kasch, Inc. v. Department of Defense, 688 F. Supp. 311, 313 (S.D. Ohio 1987)(citing Weisberg v. Department of Justice, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983)); see Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990)("[I]t is elementary that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents"). An agency's failure to locate any responsive documents may in some circumstances indicate that an agency has used inadequate search methods or has only selectively searched its files. See Founding Church of Scientology of Washington v. NSA,



GOVERNMENT
EXHIBIT
D



**IPS**

*Four Decades of Unconventional Wisdom*

Director
John Cavanagh

Board Of Trustees
Ruth Adams
Harry Belafonte
Robert L. Borosage
Elsbeth Bothe
John Cavanagh
Adrian De Wind
James Early
Ralph Estes
Frances T. Farenthold
Lisa Fuentes
Saul Landau
Nancy Lewis
Clarence Lusane
E. Ethelbert Miller
Marcus Raskin
Lewis M. Steel
Katrina vanden Heuvel
Daphne Wysham

610 F.2d 824, 836-37 (D.C. 1979) ("to accept its claims of inability to retrieve the requested documents . . . is to raise the specter of easy circumvention of the Freedom of Information Act). Moreover, if challenged, it is the agency's responsibility to demonstrate "beyond material doubt that the search as conducted was in fact reasonable." Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990)(internal quotations and citations omitted).

The CIA bears the burden of demonstrating that it has conducted a reasonable search. IPS submits that, as the CIA has not presented such evidence, its search should be found inadequate.

**The CIA has violated IPS's right to due process by failing to adequately respond to IPS's FOIA request**

In responding to IPS's FOIA request, the CIA is required to respond with sufficient detail and explanation so that IPS is able to ascertain from the response whether an appeal should be taken. See Shermco Industries, Inc. v. Secretary of the Air Force, 452 F. Supp. 306, 317 (N.D. Tex. 1978), rev'd on other grounds, 613 F.2d 1314 (5th Cir.1980). Without an adequate statement from the CIA specifying all of the documents responsive to IPS's request and identifying all of those withheld, IPS is unable to determine the amount of responsive information possessed by the CIA or the validity of any claimed exemptions.

Courts have held that an agency's response to a request for documents under FOIA must contain certain information, including a list of documents that are and are not releasable, reasoning that "a person cannot effectively appeal a decision about the releasability of documents . . . if he is not informed of at least a list of the documents to which he was denied access . . . and why those decisions were made." See Shermco, 452 F. Supp. at 317, n.7; see also Oglesby v. Department of the Army, 920 F.2d 57, 65 (D.C. Cir. 1990) (citing Shermco). Indeed, an agency's "denial of this information would in all likelihood be a violation of due process as well as effectively gutting the reasons for applying the exhaustion doctrine in FOIA cases." Id. The CIA has failed to provide the required list.

**Conclusion**

Thank you for your consideration of this appeal, and we look forward to your response. A decision in this matter will result in exhaustion of IPS's administrative remedies. In the event that IPS's appeal is denied in whole or in part, IPS is prepared to seek relief in federal district court. If we can be of any further assistance, please do not hesitate to contact this Office.

Sincerely,

Paul Paz y Miño
ppaz@igc.org
Research Scholar
Institute for Policy Studies

Central Intelligence Agency



Washington, D.C. 20505

30 November 2004

Mr. Paul Paz y Miño
Institute for Policy Studies
733 15th Street, NW, Suite 1020
Washington, DC 20005-2112

Reference: F-2004-01528

Dear Mr. Paz y Miño:

We received your 13 October 2004 letter on 20 October 2004. You are appealing our 29 June 2004 response to your 1 June 2004 Freedom of Information Act request for "**All records which mention or relate to the Colombian organization know as the "PEPES" or the** *Perseguidos por Pablo Escobar*, **People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar.**"

You appealed the adequacy of our search.

We have accepted your appeal and will arrange for the Agency Release Panel (ARP) to consider it. We will advise you of the ARP's decision.

We handle appeals as first-in, first-out. At present, we have approximately 180 appeals awaiting completion. In view of this, you must expect a delay in receiving the ARP's decision, but we will make every reasonable effort to complete our response as soon as possible.

Sincerely,

Scott Koch
Information and Privacy Coordinator

GOVERNMENT
EXHIBIT



*Four Decades of*
*Unconventional*
*Wisdom*

**Director**
John Cavanagh

**Board Of Trustees**
Ruth Adams
Harry Belafonte
Robert L. Borosage
Elsbeth Bothe
John Cavanaugh
Adrian De Wind
James Early
Ralph Estes
Frances T. Farenthold
Lisa Fuentes
Saul Landau
Nancy Lewis
Clarence Lusane
E. Ethelbert Miller
Marcus Raskin
Lewis M. Steel
Katrina vanden Heuvel
Daphne Wysham

FEB 24'05 AT 10:39

February 16, 2005

Mr. Scott Koch,
Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Re:    Case Number F-2004-01528
       Freedom of Information Act Appeal

Dear Mr. Koch:

I would like to acknowledge your letter of November 30, 2004 granting the appeal issued by The Institute for Policy Studies (IPS) regarding the search for all records regarding or referring to the Colombian organization known as the "PEPES" or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar.

At this point in time I have received no follow-up information on the status of the search or the Agency Release Panel (ARP). We understand that there are many appeals waiting, but would like to remind you that well more than the required 20 work days have passed since your last letter. At this point in time we request an immediate response from the ARP and a status of the search for documents.

Furthermore, I ask that you disclose these documents as they become available to you without waiting until all the documents have been assembled. If the documents include classified information and the volume of this material makes a lengthy declassification review necessary, I request the segregation and prompt release of all elements of the documents portion-marked Unclassified or Declassified. Additionally, I request that the remaining classified portions undergo a careful review for the purpose of declassification, in whole or in part, and that you release to me all reasonably segregable non-exempt portions.

As you know, an agency cannot rely simply on the markings of a document to deny its release. In order that a document be withheld under Exemption 1, it must be reviewed and found to be in fact properly classified pursuant to both procedural and substantive criteria found in the governing Executive Order. This of course requires an actual, substantive review of the materials and their classification markings, according to Executive Order 12356, Section 3.4 Mandatory Review for Declassification.

---

Institute for Policy Studies, 733 15th Street, NW, Suite 1020, Washington, DC 20005
Phone (202)234-9382, Fax (202)387-7915, www.ips-dc.org

GOVERNMENT
EXHIBIT



*Four Decades of Unconventional Wisdom*

Director
John Cavanagh

Board Of Trustees
Ruth Adams
Harry Belafonte
Robert L. Borosage
Elsbeth Bothe
John Cavanaugh
Adrian De Wind
James Early
Ralph Estes
Frances T, Farenthold
Lisa Fuentes
Saul Landau
Nancy Lewis
Clarence Lusane
E. Ethelbert Miller
Marcus Raskin
Lewis M. Steel
Katrina vanden Heuvel
Daphne Wysham

Should you elect to invoke an exemption to the FOIA, I will require in your full or partial denial letter sufficient information to effectively appeal the denial. In accordance with the minimum requirements for administrative due process, this information should include: a) the basic factual material including the originator, date, length, and location of the withheld intercepts; and, b) explanations and justifications for denial, including the identification of the subsection of Executive Order 12356 under which the withheld document or portions of the document was found to be subject to classification, and, most importantly, explanations of how each exemption fits the withheld material.

Thank you for your consideration. I look forward to your response.

Sincerely,

Paul Paz y Miño
ppaz@igc.org
Research Scholar
Institute for Policy Studies

Apr 07 2005 12:14PM   LAW OFFICES OF BRIAN GAFF   510 891 9380                    P.2

## Law Office of
## BRIAN GAFFNEY

370 Grand Avenue, Suite 5
Oakland, CA 94610

(510) 891-9592 Telephone
(510) 891-9380 Facsimile

April 6, 2005

*Via Facsimile* (703) 613-3007
*Original by Mail*

Chair, Agency Release Panel
Attn: Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Re:    Case Number F-2004-01528
       Freedom of Information Act Appeal

Dear Chair and Information/Privacy Coordinator

This office represents the Institute for Policy Studies (IPS) in regard to the above FOIA appeal.
Please direct future correspondence regarding Case Number F-2004-01528 to this office, as well
as Paul Paz y Miño.

On June 1, 2004, IPS submitted a FOIA request to the Central Intelligence Agency (CIA)
requesting "All records which mention or relate to the Colombian organization known as the
'PEPES' or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo
Escobar and/or the death of Pablo Escobar." The June 1, 2004 FOIA request also included a
request for "waiver of all fees."

On June 29, 2004, the CIA responded to this request by stating that it had only searched its
"database of previously released documents using the search terms 'pepes' and 'Escobar',"
enclosing copies of two requester reports generated by this limited search, stating that IPS will be
charged at ten cents per page for pages in excess of the first 100 pages and enclosing a fee
schedule.

On October 13, 2004, IPS appealed the CIA's response to the June 1, 2004 FOIA request,
including the adequacy of the CIA's search and the CIA's failure to identify documents withheld.
While FOIA requires a determination with respect to any appeal within twenty business days
after the receipt of an appeal, to date the CIA has failed to make a determination on this FOIA
appeal.  On February 16, 2005, IPS again wrote to the CIA requesting an immediate response
from the CIA.

This office on behalf of IPS again urges immediate resolution of this matter and provides
additional information for the Agency Release Panel and the Information/Privacy Coordinator to
consider in regards to this appeal.


GOVERNMENT
EXHIBIT

IPS appeals the CIA's response to the June 1, 2004 FOIA request on the grounds that 1) the CIA should not have limited its search to previously released documents, 2) the CIA should have searched for all records which mention or relate to the Colombian organization known as the 'PEPES' or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar and should not have limited its search to pepes and Escobar, 3) should not have limited its search to Foreign Broadcast Information Service.

IPS also appeals the CIA's de facto denial of IPS' request for waiver of all fees associated with this request. FOIA requires the CIA to notify a requestor of the right to appeal to the head of the agency any adverse determination; the CIA failed to so notify IPS in regards to the fee waiver determination.

The IPS requested a waiver of document fee requirements pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the U.S. government and because disclosure of the requested information is not made in furtherance of any commercial interest of IPS.

(1) The Subject of the Request

The subject of IPS's request concerns the operations and activities of the United States government. As stated in IPS's initial request dated June 1, 2004, IPS is seeking CIA documents which mention or relate to "'PEPES' or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar," including documents which disclose the United States' foreign policy with Colombia. IPS requests this information so that it can educate the public on the United States' foreign policy with Colombia and the activities of the United States with Colombia. Indeed, one of the major objectives of the United States' policy with Colombia, was to assist in the manhunt for Pablo Escobar, in which the PEPES played a crucial role. Thus, the subject of the requested information involves the activities and operations of the U.S. government.

(2) The Informative Value of the Information to Be Disclosed

Disclosure of this information is likely to contribute to the public's understanding of the activities of the United States with respect to Colombia. As stated above, IPS is seeking records that relate to the United States' foreign policy with Colombia. It is clear that these documents are relevant and will contribute to the public's understanding of the United States government's foreign policy with Colombia. Moreover, IPS cannot obtain the requested information from any other available source. Once the information is disseminated to the public, the information will likely contribute to increase and add to the public's understanding of the U.S. government. Thus, the disclosure is likely to contribute to an understanding of the U.S. government's operations and activities as they relate to the United States' foreign policy with Colombia.

(3) Contribution to General Public Understanding

Disclosure will contribute to the understanding of a broad audience beyond IPS's internal understanding. IPS, this nation's oldest progressive think-tank, publishes a great deal of information

JUN. 22. 2005  1:31PM    IP 1017                            NO. 845   P. 10
                                              MORI DOCID: 1188651

Apr 07 2005 12:14PM   LAW OFFICES OF BRIAN GAFF   510 891 9380          P.4

and reports on human rights and US policy. This search is in conjunction with our Drug Control Policy Project and the results will be used for publication purposes. IPS enriches public policy debates by publishing and making widely available reports concerning issues relating to human rights. Information about IPS and its Drug Control Policy Project can be accessed by the public, journalists and government officials at http://www.ips-dc.org/projects/drugpolicy.htm.
A list of IPS publications is available at http://www.ips-dc.org/pubs/pubs1.htm. A copy of an IPS publication is attached hereto. Accordingly, the requested information is likely to contribute to public understanding.

### (4) The Significance of the Contribution to Public Understanding

Finally, disclosure of the requested information will elevate the public's awareness and understanding of U.S. government's policy towards Colombia beyond what is currently known. As stated above, the requested information is not available elsewhere and to IPS's knowledge has never been published for the general public. Therefore, the public's understanding of the United States Policy with Colombia will be significantly enhanced once the information is disclosed. Thus, the disclosure of the requested information is in the public's interest and will significantly contribute to the public's understanding of the U.S. government's activities and operations. In determining whether the disclosure of the requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the disclosed records to a reasonably broad audience of persons interested in the subject. Carney v U.S. Dept. of Justice, 19 F.3d 807 (2nd Cir. 1994).

The subject of this FOIA request will be used to contribute to one or more of the following: IPS' publications, website, newsletters, public presentations, and/or local and national news stories contributed to or written by IPS staff. Exactly which of these uses of the information addressed in this FOIA request will be determined after complete review of the requested material.

The staff, consultants and counsel of IPS bring a broad range of expertise and skills to IPS that will enable it to review and understand the records requested through this FOIA and to then supply this information in a coherent and understandable way to the general public and the media. IPS can draw on its researchers, policy analysts, and others to review and summarize this information. IPS certainly has the necessary qualifications relevant to *any* use of the records that may come about upon reviewing them.

IPS' contribution to the public understanding, as compared to the level of understanding prior to disclosure, as well as IPS' intent to inform the public, are well established. Moreover, many of the records requested may not have been publicly released.   A requester is likely to contribute significantly to the public understanding if the information disclosed is new; supports public oversight of agency operations; or otherwise confirms or clarifies data on past or present operations of the government." 132 Cong. Rec. H9464 (Reps. English and Kindness)

### (5) The Existence and Magnitude of a Commercial Interest

IPS has no commercial interest that would be furthered by the requested disclosure. IPS is a 501(c)(3) tax-exempt non-profit organization and requests the information to further its scientific,

legal and educational efforts.

In considering whether IPS meets the fee waiver criteria, it is imperative to remember that FOIA, in general, carries a presumption of disclosure and that the fee waiver amendments of 1986 were designed specifically to allow nonprofit, public interest groups such as IPS access to U.S. government records without the payment of fees. FOIA's fee waiver provision "is to be liberally construed in favor of waivers for noncommercial requesters." McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d 1282, 1284 (9th Cir. 1987). As stated by one Senator, "[A]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information..." 132 Cong. Rec. S. 14298 (statement of Sen. Leahy). In interpreting this amendment, the Ninth Circuit stated that the amended statute "is to be liberally construed in favor of waivers for noncommercial requesters." (citing Sen. Leahy). The amendment's main purpose was "to remove the roadblocks and technicalities which have been used by various Federal agencies to deny waivers or reductions of fees under the FOIA. (citing Sen. Leahy). McClellan at 1284. Thus, the main legislative purpose of FOIA is to facilitate access to agency records by "watchdog" organizations, such as environmental groups, which use FOIA to monitor and challenge U.S. government activities. The FOIA fee waiver provision was added to FOIA "in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests" in clear reference to requests from nonprofit public interest groups. Better Gov't Ass'n v. Department of State, 780 F.2d 86, 93-94 (D.C. Cir. 1986), quoting Ettlinger v. FBI, 596 F. Supp. 867, 876 (D. Mass. 1984).

If the CIA does not respond to this FOIA appeal by promptly conducting a thorough search of its records and releasing the requested documents free of charge, IPS will have to consider its judicial remedies. Please contact this office if necessary.

Sincerely,

Brian Gaffney

cc:   Paul Paz y Mino, Institute for Policy Studies

Page 4 of 4

# IPS News

### THE INSTITUTE FOR POLICY STUDIES

**Volume 4 • Winter 2001**

## Capitol Hill Forum Launches Progressive Challenge Effort on Electoral Reform

The IPS-led Progressive Challenge kicked off an ambitious, activist year with an all day forum on electoral reform on January 19, 2001, the day before the inauguration of George W. Bush.

The event, titled "The Progressive Challenge: An Action Agenda for Electoral Reform," manifested the project's goal of linking lawmakers and grassroots activists, and involving them in one another's work. The forum also highlighted the Progressive Challenge's ability to bring together the many strands of a broad issue, providing a look at the scope of electoral reform issues and promoting cooperation between groups attacking the problems from different angles.



*Representative Cynthia McKinney (D-GA) recounts her struggles with challenges to her district*

The day began with two plenary sessions held in the large ninth-floor conference room of the Hart Senate Office Building. Prominent progressives from the House and Senate, organizers, and researchers spoke before an overflow crowd, linking the current struggles for democracy with the work of Martin Luther King, Jr., and laying out a vision for renewal of our democratic system.

The first panel featured Senator Paul Wellstone of Minnesota, as well as Representatives Dennis Kucinich (OH), Bernie Sanders (VT), Jan Schakowsky (IL), Eleanor Holmes Norton (DC), Barbara Lee (CA) and John Tierney (MA). They were

(continued on p. 4)

## Inside

## SEEN Conference Calls for Coal Phaseout

IPS's Sustainable Energy and Economy Network (SEEN) convened their second annual conference on fossil fuels, human rights and international financial institutions in Ranchi, India, from January 29-February 2, 2001. The conference brought together over 60 activists from throughout India and around the world to focus on the environmental and human rights consequences of mining and burning coal, and to explore ways to press the World Bank and other international financial institutions into appropriate lending policies.

Human rights violations, short- and long-term environmental impacts from mining and burning coal, and the details of World Bank lending are real, day-to-day issues in India. And as evidence mounts that climate change is a ticking time bomb, India is at or near ground zero.

(continued, see box on p. 8)

## Three New Reports Highlight Global Economy Work

IPS's Global Economy project released a flurry of reports in late 2000 and early 2001, illuminating the state of corporate power and the movement against it.

Two of the reports were released in early December to mark the first anniversary of the 1999 Seattle protests, the beginning of the mass movement against corporate globalization.

For "Student Voices: One Year After Seattle," Bhumika Muchhala, a recent college graduate who demonstrated in Seattle, conducted interviews with 60 students and recent graduates from 38 universities across the country. The 40-page report offers the students' own words on: how they became politicized and what continues to motivate them, the collective vision, their most empowering experiences at protests and on campus, organizing across race and socioeconomic divides, and their plans for the future and how they want to contribute to the movement in the long run.

Top 200: The Rise of Corporate Global Power, by Sarah Anderson and John Cavanagh, delivered the startling conclusion that 51 of the world's 100 largest economic entities are now corporations and only 49 are countries, when GDPs are compared to corporate sales. Meanwhile, the world's top 200 corporations account for over a quarter of economic activity on the globe, while employing less than one percent of its workforce. The report concludes that there is a tremendous threat to democracy as these corporations transform their economic clout into political power.

The Global Economy project released NAFTA at 7 at the beginning of January. This short report by Sarah Anderson compares the claims made by supporters of the agreement with statistics on poverty, wages, environmental quality, and the balance of trade in the United States, Canada, and Mexico.

All three reports are available in Adobe Acrobat format at the Institute's website, *www.ips-dc.org,* or you may order them by calling the Institute at 202-234-9382 x236.



*Graphic from Nafta at 7, which updates IPS's Field Guide to the Global Economy.*

## Drug Policy Project's Sanho Tree Visits Colombia

In January, Drug Policy Director Sanho Tree went on a 2-week fact-finding trip to Colombia, meeting with peasant farmers, refugees, and indigenous and human rights groups, as well as US and Colombian officials. He toured Bogota and the province of Putumayo, one of the main conflict zones between leftist rebels, the military, and right-wing paramilitary death-squads. Putumayo is also the epicenter of US military involvement.

Tree has since undertaken lecture tours in Oregon and New England, and spoken at Yale and American University.

His trip led him to conclude that "the region's problems are social, political, and economic in nature. Sending guns and helicopters will solve neither the problems of poverty in Latin America nor addiction in the US. The region is in desperate need of a mini-Marshall Plan, but our response has been to send them Desert Storm. Some day we will have a rational drug control policy and peace in Colombia, but our current policy merely postpones that inevitable day of reckoning. Meanwhile, we are mortgaging our future and the interest paid on that mortgage can be seen in the devastated lives of the campesinos caught in the crossfire and in our own addicts who cannot get treatment upon request because of insufficient government funding." Tree will continue to speak around the country this spring.

If you would like to sponsor a talk, please email him at stree@igc.org.



*IPS's Sanho Tree stands in a Putumayo coca field during his recent trip to Colombia.*

## Global Economy's Sarah Anderson Represents IPS at World Social Forum

In late January, IPS Fellow Sarah Anderson participated in the first World Social Forum, a.k.a. "Anti-Davos," since it was designed as a counter to the annual elite gathering of corporate and government supporters of globalization in the swanky resort town of Davos, Switzerland.

Organizers chose Porto Alegre, Brazil as the site for the World Social Forum in order to showcase the achievements of the progressive Workers Party, which controls both the city and state governments and has become world-renowned for its innovative participatory budget system.

The summit consisted of morning plenary sessions (translated into four languages), followed by hundreds of workshops on every aspect of trade, agriculture, human rights, the environment, labor rights, democracy, violence and civil society, and other topics related to democracy and social justice. Among the featured speakers were Oscar Olivera, who received last year's Letelier-Moffitt award for his work against water privatization in Bolivia, and acclaimed Chilean author and former IPS employee Ariel Dorfman.

Anderson's main focus at the gathering was on the Free Trade Area of the Americas, the plan to negotiate a trade and investment deal among 34 countries in the hemisphere. IPS plays a key role in U.S. and hemispheric networks that are working to confront the current free trade model, as embodied in the North American Free Trade Agreement and the World Trade Organization, and to build consensus around an alternative vision.

Recently, Anderson edited a 30-page critique of the U.S. negotiating positions on the FTAA, entitled "America's Plan for the Americas." Her findings reveal that while the vast majority of



*Sarah Anderson protests the FTAA in Brazil*

Americans say they believe trade deals should advance labor and environmental protections, the U.S. proposals for the FTAA completely ignore these concerns. In fact, Anderson says, "The proposed hemispheric deal would actually be a step backwards from the much-criticized North American Free Trade Agreement in its treatment of social concerns." (for a full copy of the report: www.art-us.org).

In Porto Alegre, Anderson reported on the U.S. FTAA negotiating strategy at several meetings of the Hemispheric Social Alliance, a network of labor organizations and citizens coalitions representing more than 45 million people from throughout the Americas. Anderson will work with members of the HSA to carry out a rapid analysis of the full draft text of the FTAA when it is made available (likely to be this spring). She is also involved in preparations for a

Peoples Summit that the HSA will hold prior to the meeting of 34 heads of state from the Americas (all except Castro) in Quebec City, Canada in April. The six-day Peoples Summit will involve educational and strategizing sessions culminating in a mass demonstration.

George W. Bush will make his debut on the international scene in Quebec City. He has stated that the FTAA is a top priority of his Administration and it's expected that in Canada he will call for a speed up of negotiations, aiming for completion in 2003 instead of the original 2005 deadline.

"Bush is rushing to clinch a deal on the FTAA," Anderson says. "But his vision for the Americas will be a tough sell in the public opinion marketplace and in the U.S. Congress. What was clear in Porto Alegre is that the citizens backlash against this corporate-led approach to globalization and the demand for a better alternative are only growing."

## IPS Briefs

In November, SALSA director Netfa Freeman traveled to Havana for the Second World Meeting for Friendship and Solidarity, joining over 4000 people from 118 countries. His account of the conference can be accessed through www.ips-dc.org.

Campaign For Migrant Domestic Worker Rights director Joy Zarembka's book, *The Pigment of Your Imagination: Mixed Race Families in Britain, Kenya, Zimbabwe, and Jamaica*, will be released in June by New York University Press.

(Electoral reform, from p. 1)
joined by Robert Borosage, former director of IPS and now with the Campaign for America's Future, IPS founder Marcus Raskin, and current IPS director John Cavanagh.

Outrage at how the 2000 elections were conducted, particularly in Florida, was a consistent theme, with Senator Wellstone declaring that he had decided to reverse his decision to retire after two terms because "You can't walk away from this."

The second panel, while no less outraged, focused on the weaknesses of the current system, proposed solutions, and how to implement them.

Representative Cynthia McKinney of Georgia gave a notable presentation on the redistricting fights she has faced. She reinforced her points with graphics showing the striking double standard that challenges majority black districts while ignoring majority white districts in clear violation of federal standards.

Other speakers included actor/activist Danny Glover, Rob Richie of the Center for Voting and Democracy, Stephanie Wilson of the Fannie Lou Hamer Project, Todd Cox of the NAACP Legal Defense and Education Fund, Nick Nyhart of the Public Campaign, Katrina vanden Heuvel of *The Nation* magazine, and Ron Daniels of the Center for Constitutional Rights, who well captured the prevailing mood, saying, "Out of adversity we must seize this moment... All this madness is not what we would like to see and profess to believe in in terms of democracy."

Afternoon breakout sessions provided attendees with the opportunity for in-depth discussion of many different elements of electoral reform. Topics included campaign finance



*Eleanor Holmes Norton (D-DC) argues for voting rights for the District of Columbia while Marc Raskin and other panelists look on.*

reform, rights violations in the 2000 elections, instant runoff voting and proportional representation, recent electoral reforms abroad, building a broad pro-democracy movement, restoring voting rights to convicted felons, and representation for the District of Columbia.

## New Project on Nuclear Policy

The Institute's new Nuclear Policy Project's work will focus on three broad issues: strategic integration of nuclear material management into nuclear arsenal reductions and ending production of nuclear explosives, accountability of the nuclear weapons states to their citizens relative to social, environmental, safety, and health impacts, and structural collapse of Cold War nuclear institutions.

Project director Robert Alvarez helped draft legislation establishing a compensation plan for Department of Energy nuclear workers and

Based on the success of the event, IPS and *The Nation* magazine are collaborating on an internet action center on electoral reform, to be launched in March at www.ips-dc.org. The site will connect the many innovative resources now available online with special action materials in development at the Institute. The site will also feature commentary from *The Nation* and research of IPS associate fellow Steve Cobble.

IPS is also part of 'Democracy Summer,' which will bring young organizers to Florida for training and participation in various pro-democracy movements.

This was the first of a year-long schedule of "Action Agenda" forums organized by the Progressive Challenge. A second event on January 31 featured drug and prison issues. Future forums will focus on the budget and taxes, healthcare, and income inequality.

led a media campaign that played a crucial role in the legislation's enactment; drew national attention to the dangers resulting from the Cerro Grande Fire at Los Alamos National Laboratory (see www.ips-dc.org for one of his articles on the subject); forced changes in the way radioactive waste is handled; and brought attention, first from the media and then from the DOE, to cost overruns with a contractor.

Nuclear Policy project director Robert Alvarez served as senior policy advisor to the Secretary of Energy from 1993 to 1999.

4

(Climate Change, from p. 1)

India has long been a top recipient of World Bank loans, and, in the eyes of the World Bank, development in India meant energy, which in turn meant coal. Coal is abundant and cheaply produced in India (and in China, which has recently overtaken India as the top recipient of World Bank investment).

Conference participants saw the immediate consequences of mining and burning coal as they toured the region's coalmines and coal-fired power plants on the first day of the conference.

"We witnessed an unthinkable level of human degradation," said Daphne Wysham, SEEN coordinator. "Women and children drawing drinking water from grey rivers full of toxic fly-ash. A village surrounded by burning underground coal fires. Air thick with dust and smoke that burned our eyes and coated our lungs with soot. The land was like a barren, black moonscape. We saw no sign of the 'development' these coal projects are purported to bring to the poor. Instead, thousands of people are being resettled to make way for these open pit mines, which destroy the ecology, traditional tribal culture and economy of the region."

And while India's poor are paying the price now, coal's full bill has yet to come due: coal is a major contributor to climate change, emitting 80 percent more carbon dioxide ($CO_2$) than natural gas and about 20 percent more than oil. As the planet warms, the poorest are expected to suffer most.

Just prior to the conference, the Intergovernmental Panel on Climate Change released its review of the latest science on climate change, concluding that the planet is indeed warming, and at a frightening pace. The report stated that "there is new and stronger evidence that most of the warming observed over the last half century is attributable to human activities," and that the warming is expected to accelerate.

Using the latest climate models, the report predicted an increase in global average temperature of up to 10.4 degrees Fahrenheit (5.6 degrees Celsius) over the next century, and significant sea level rise. For countries like India, this pace of climate change will have devastating consequences, including: a tide of environmental refugees from low-lying neighbors like Bangladesh as sea levels rise; reduced food production as a result of shrinking glaciers in the Himalayas and increased droughts and flooding; and an increase in vector-borne diseases such as malaria, dengue fever, and the plague.

The demand for energy is expected to double in the next two decades with the vast majority of increase seen in the developing world, particularly in China and India. Coal consumption is forecast to almost double by 2020 in a business-as-usual scenario. Despite coal's abundance and low cost, many governments are recognizing the costs of coal dependency and are exploring alternative development and energy paths. Unfortunately, industrialized countries and international financial institutions have not taken a leadership role in promoting clean alternatives.

The International Conference ended with delegates committing to working toward the eventual phaseout of fossil fuel mining and use, taking all precautions to ensure that workers currently employed in these unsustainable activities are absorbed into cleaner, meaningful and more dignified livelihoods. In part due to pressure from SEEN and others, the World Bank claims it is "highly unlikely" it will invest in coal in India in the future.



*Representatives of Earth Day International and Toxics Link of India speak at the Ranchi conference*

For more details on climate change, coal, the conference outcome and followup, please visit the SEEN website at: www.seen.org.



## Foreign Policy In Focus Evaluates Bush Team, Releases New Media Guide

On January 25, 2001, the Foreign Policy In Focus project (FPIF), a joint project of IPS and the Interhemispheric Resource Center held a briefing at the National Press Club on the foreign policy prospects under the new Bush administration. Members of the press packed the room to hear commentary from leading progressive experts, many of whom were in town to participate in the project's advisory board meeting.

Robert Borosage (Campaign for America's Future) led off with a look at Bush's military budget. He blasted the Defense Department for their slack accounting practices, pointing out that the Pentagon is currently unable to account for an amount of money equal to Bush's proposed increases to the education budget for the next four years. He also raised concerns over the budgetary priorities of Bush's military advisors, most of whom gained their expertise during the Cold War in the first Bush administration.

William Hartung (World Policy Institute) then gave a humorous but incisive critique of the National Missile Defense program and its destabilizing influence. Coletta Youngers

(Washington Office on Latin America) discussed Colombia policy, expressing concern about the lack of Latin American experience amongst Bush's team and worrying about a return of Cold War attitudes towards the region. She did, however, point out some signs that the Bush team's vision of the 'War on Drugs' will involve less foreign intervention.

Salih Booker (Africa Policy Information Center) saw little cause for optimism about Bush's Africa policy. "Four days into the new Administration, George W. Bush in effect declared war on Africa and Africans. Bush's very first foreign policy action was to defund international public health family planning services. Bush's next action was to place under review an executive order that supports African countries' right to import or produce generic versions of HIV/AIDS medications that are still under U.S. patent. These actions constitute an assault on Africans' health at a time when the continent faces the world's greatest health crisis."

John Gershman (FPIF Asia editor) predicted that "By April at the latest, the Bush administration's for-



*Salih Booker listens as William Hartung discusses the National Missile Defense program.*

> "As Ronald Reagan said, 'here we go again': pushing missile defense, pressing for a major increase in military spending and a major tax cut simultaneously, and even engaging in loose talk about 'usable' nuclear weapons."
>
> — Bill Hartung

eign policy team will be in a convulsive debate, both internally and with key Republican legislators, over U.S.-China policy." He cited Taiwan as the key issue, specifically arms sales and the decision on whether to issue an explicit pledge to defend the island.

Stephen Zunes (Univ. of San Francisco) called for a Middle East policy that recognizes that "the Jews did not give up on their dream of a national homeland for 2,000 years. The Palestinians are not going to give up after just 50."

IPS director John Cavanagh capped the briefing with a look at the ideological divides that complicate Bush's trade agenda, saying that "George Bush will have no opportunity to be a uniter on trade policy. The same divisions that virtually paralyzed the Clinton administration on trade policy threaten to do the same with Bush. Rather, Bush's choice will be whether to be a clever divider or a clumsy divider."

You can find analysis from these and other policy experts at: www.foreignpolicy-infocus.org.

The press conference also marked the release of Global Perspectives 2001, the newly updated FPIF media guide, arrived. The guide lists nearly 100 progressive foreign policy experts indexed by area of expertise to enable the working press to quickly locate progressive voices to comment on breaking news. An expanded, fully searchable version of the guide is planned for the project's website. To buy a copy of the guide, or apply for a free copy as a member of the working press, visit www.ips-dc.org or call the Institute.

Apr 07 2005 12:20PM   LAW OFFICES OF BRIAN GAFF   510 881 9380                    P.12

## March Conference On Pinochet Precedent

IPS's Bring Pinochet to Justice Campaign, in conjunction with American University's Washington College of Law, is sponsoring a conference entitled "The Pinochet Precedent: Individual Accountability for International Crimes" on Monday, March 26, 2001. The event will run from 8:30 a.m. to 6:00 p.m. at the Washington College of Law, 4801 Massachusetts Avenue, NW, Rm. 603, Washington, DC.

This conference will bring together jurists and legal scholars from around the world to share experiences and carefully examine national and international mechanisms for holding individuals accountable for international crimes. Panelists will trace the development and impact of the Pinochet case and will examine the experiences of other cases that have grown out of the so-called "Pinochet precedent." They will also consider the questions of whether the United States is falling short of its obligations to hold perpetrators of international crimes accountable and how we can create a legislative and judicial framework for universal jurisdiction in this country.

The panels will consist of a number of distinguished legal scholars from the U.S. and abroad including Rep. Juan Bustos, lawyer in the "Caravan of Death" case against Pinochet in Chile; Joan Garcés, attorney who led the case against Pinochet in Spain; Pascal Kambale, legal advisor for Senegalese case brought against Hissène Habré (former dictator of Chad); and Rep. Marcos Rolim, director of the Brazilian Congressional Committee on Human Rights seeking to prosecute Alfredo Stroessner.

For full conference agenda and registration information visit www.ips-dc.org or contact Stacie Jonas, at 202-234-9382, or sjonas@mindspring.com.

## Saul Landau. . . The Worst Is Yet to Come

For those who still eat meat out there
I don't want to blow the horn
Nor change the listeners' eating taste
From porterhouse to corn

You've heard about meat scandals
The ones in Europe anyhow
Where outbreaks of hoof and mouth disease
Compound the epidemic of mad cow

It seems that the meat producers
To make their profits soar and leap
Fed dead animal parts to live animals
I refer to brains of poor dead sheep

And when they ship them round the world
As the large growers are wont to do
They pack them tight in cattle cars
All the way from Britain to Beirut

The butcher shops must buy this meat
They really have no choice
The companies control the play
And consumers have no voice

They cram the cows together
few inspectors check their health
The companies have but one concern
Which is to magnify their wealth

They lobby against all regulation
And deny blame for their misdeeds
It's profits not meat that matters
Hey that's the industry's creed

Back in our own great country
millions wretched from e. coli food
eating assembly-line hamburgers
that we equate with the common good

The famous golden arches loom
Over fast food shacks galore
Burger king and junior Carl's
Proliferate like live spores

But now the scare that Europe knows
Has finally reached our land
We suffer from our own human disease
Our madness is quite grand

I conclude this tale of animal woe
by alerting all of my friends
Lay off the Bigs Macs and KFCs
Remember the means have ends

Big companies care about making
their dough
Not about giving you healthy regimes
So lay off of meat you don't raise yourself
The result could be worse than it seems



Apr 07 2006 12:20PM   LAW OFFICES OF BRIAN GAFF   510 891 9380        p.13

## COMING SOON TO A SCREEN NEAR YOU...

### IPS/The Nation Electoral Reform Web Action Center



▶ Links to the best resources on instant runoff voting, proportional representation, DC voting rights, and more

▶ Analysis from The Nation magazine and IPS scholars

▶ IPS Electoral Reform Action Pack and other resources to get you involved

▶ Upcoming events

▶ Links to electoral reform commissions and coalitions

▶ Text and analysis of pending legislation on every level

▶ Information on democracy overseas

Non-Profit
Organization
Postage Paid
Permit No. 7748
Washington, DC

# IPS News

Institute for Policy Studies
733 15th Street NW, Suite 1020
Washington, DC 20005

Central Intelligence Agency



Washington, D.C. 20505

19 May 2004 5

Mr. Paul Paz y Miño
Institute for Policy Studies
733 15th Street, NW, Suite 1020
Washington, DC 20005-2112

Reference: F-2004-01528

Dear Mr. Paz y Miño:

This is in response to your 16 February 2005 letter in which you inquired of the status of the above referenced Freedom of Information Act request and subsequent appeal for "all records which mention or relate to the Colombian organization know as the 'PEPES' or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar". As the result of an administrative error, we did not respond in timely fashion to your request for the status of this appeal. We apologize for our oversight and we regret any inconvenience this may have caused.

Our letter to you dated 30 November 2004 confirms that your appeal was accepted. We wish to assure you that we are still processing your appeal and that every reasonable effort will be made to complete a response as soon as possible.

On 8 April 2005, we received a letter from the Law Office of Brian Gaffney requesting that we direct future correspondence regarding this Freedom of Information Act request to both his office and to you. It is our policy to correspond to one addressee only. If you prefer that we correspond with Mr. Gaffney rather than yourself, please let us know. Until we hear otherwise, we will continue to correspond with you.

Again, we wish to apologize for the delay in responding to your request concerning the processing of your appeal. We sincerely regret the delay and appreciate your patience.

Sincerely,

Scott Koch
Information and Privacy Coordinator

GOVERNMENT
EXHIBIT

Concerning the remaining portions of your request pertaining to PEPES or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, and/or the death of Pablo Escobar, we have completed a thorough search for records responsive to your request, and located the enclosed eight documents (MORI documents 1339991-1339992, 1340582-1340586, and 1391030), which can be released in segregable form on the basis of FOIA exemptions (b)(1), (b)(2), and (b)(3). We also located additional material, which we have determined is exempt from release and must be denied in its entirety on the basis of FOIA exemptions (b)(1), (b)(2), (b)(3), (b)(6), and (b)(7)(e).

During our searches, we also identified one document that requires this agency to consult with other federal agencies. Once the consultation process is complete, we will provide a supplemental response concerning that document.

Also, during our searches, we located additional United States Government material that was not originated by CIA. This material appears to be relevant to your request, and has been referred to the originating agencies for review and direct response to you.

The CIA regulations governing administrative appeals are set forth at 32 C.F.R. §1900.42. Those regulations state that no appeal shall be accepted if the information in question is the subject of litigation in the federal courts.

Sincerely,

Scott Koch
Information and Privacy Coordinator

Enclosures

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INSTITUTE FOR POLICY STUDIES<br>1112 18th Street, N.W.<br>Suite 600<br>Washington, D.C. 20036 | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| UNITED STATES CENTRAL<br>INTELLIGENCE AGENCY<br>Washington, D.C. 20505 | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF
[Freedom of Information Act, 5 U.S.C. § 552]

### INTRODUCTION

1.      Plaintiff Institute for Policy Studies (hereinafter "IPS") brings this action to redress

violations of the Freedom of Information Act (hereinafter "FOIA"), 5 U.S.C. § 552, by defendant

United States Central Intelligence Agency (hereinafter "CIA"). Defendant violated FOIA by failing

to provide the records requested by Plaintiff in the June 1, 2004 FOIA request made by IPS to the

CIA, by failing to conduct an adequate search for the records requested by IPS, by failing to respond

to IPS' October 13, 2004 administrative appeal in a timely manner, and by denying Plaintiff's

request for a full fee waiver under FOIA (5 U.S.C. section 552(a)(4)(A)(iii)). This action requests

an order declaring that the CIA has violated FOIA, and enjoining the CIA—after conducting an

adequate FOIA search— to provide the requested records forthwith and free of charge.

1


GOVERNMENT
EXHIBIT

### JURISDICTION

2.    This Court has jurisdiction over this action pursuant to FOIA (5 U.S.C. §552(a)(4)(B)), federal question (28 U.S.C. § 1331), the Administrative Procedures Act (5 U.S.C. § 702) and pursuant to the Declaratory Judgment Act (28 U.S.C. section 2201).

### VENUE

3.    The District of Columbia is the proper venue pursuant to 28 U.S.C. § 1331 because (1) Plaintiff has the District of Columbia as its principal place of business, (2) the agency records at issue are located in the District of Columbia, and (3) 5 U.S.C. section 552(a)(4)(B) provides for jurisdiction in the District of Columbia. 5 U.S.C. § 552(a)(4)(B).

### PARTIES

4.    Plaintiff, Institute for Policy Studies ("IPS") is the nation's oldest multi-issue progressive think tank. IPS is a 501(c)(3) non-profit organization that is dedicated to strengthening social and environmental movements with independent research, visionary thinking and links to grassroots organizations, scholars and elected officials. Since 1963, IPS has empowered people to build healthy democratic societies in individual communities throughout the United States and the world. IPS publishes a great deal of information and reports on issues affecting democracy, justice, human rights, diversity and U.S. policy. IPS brings this action on behalf of the organization, its staff and members.

5.    Plaintiff and its respective staff and members are adversely affected and injured by the CIA's failure to conduct an adequate search for the requested records, failure to release the requested records, failure to respond timely to Plaintiff's administrative appeal, and improper denial of Plaintiff's fee waiver request.  The CIA's actions discourage Plaintiff, its members and other

2

members of the public from obtaining public records from the United States government. Without

the FOIA information Plaintiff requested, Plaintiff and the members of the public to which Plaintiff

disseminates information will not be able to effectively analyze and understand the United States

government's foreign policy specifically as it pertains to Defendant's oversight and knowledge of

past operations and activities related to the Colombian organization known as the 'PEPES' or the

"Perseguidos por Pablo Escobar", "People Persecuted by Pablo Escobar", as well as Pablo Escobar

and/or the death of Pablo Escobar. Further, without the requested information, Plaintiff is unable

to inform, educate and counsel the public regarding the same. Unless this Court grants the requested

relief, Plaintiff, its respective staff and its members will continue to be adversely affected and

injured by the CIA's failure to comply with FOIA as alleged herein.

6.      Defendant United States Central Intelligence Agency is a federal agency with

possession of and control over the records that Plaintiff seeks. The CIA is responsible for searching

for and releasing records in response to FOIA requests and granting FOIA fee waivers and,

therefore, is sued as the defendant in this action.

## LEGAL FRAMEWORK

7.      FOIA requires, *inter alia*, that federal agencies must promptly provide copies of

agency records to those persons who make a request for records that reasonably describes the nature

of the records sought, and which conforms with agency regulations and procedures in requesting

such records. 5 U.S.C. § 552(a)(3)(A).

8.      An agency must demonstrate beyond material doubt that its search was reasonably

calculated to uncover all relevant documents

9.      FOIA provides for fee waivers for requests that are in the public interest and not in

3

the primary commercial interest of the requestor. 5 U.S.C. § 552 (a)(4)(A)(iii).

10.    FOIA requires federal agencies to make a final determination on FOIA requests within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such request unless the agency provides notice to the requester of "unusual circumstances" meriting additional time for responding to a FOIA request. 5 U.S.C. § 552(a)(6)(A)(i).

11.    FOIA requires federal agencies to make a final determination on FOIA administrative appeals within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal, unless the agency provides notice to the requester of "unusual circumstances" meriting additional time for responding to a FOIA request. 5 U.S.C. § 552(a)(6)(A)(ii).

12.    FOIA expressly provides that a person shall be deemed to have exhausted their administrative remedies if the agency fails to comply with the applicable time limitations provided by 5 U.S.C. section 552(a)(6)(A)(i)–(ii). 5 U.S.C. § 552(a)(6)(C).

13.    FOIA provides that any person who has not been provided the records requested pursuant to FOIA may, after exhausting their administrative remedies, seek legal redress from the federal district court to "enjoin the agency from withholding agency records and to order agency records improperly withheld from the complainant." 5 U.S.C. 552(a)(4)(B).

14.    In any action seeking to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld, the court shall determine the matter de novo.

15.    In any action regarding the waiver of fees the court shall determine the matter de novo. 5 U.S.C. § 552(a)(4)(A)(vii).

4

16.    Under FOIA, the federal agency has the burden to sustain its action. 5 U.S.C. § 552(a)(4)(B).

17.    The Court may assess attorney fees and litigation costs against the United States if Plaintiff substantially prevails in this action. 5 U.S.C. § 552(a)(4)(E).

## STATEMENT OF FACTS

18.    Pablo Escobar was born on December 1, 1949 and died on December 2, 1993. During the 1980s and early 1990s, Escobar was considered one of the most notorious and wealthiest drug-traffickers in the world.

19.    "PEPES," or the "People Persecuted by Pablo Escobar" or "Perseguidos por Pablo Escobar," was a short-lived vigilante group composed of various enemies of Pablo Escobar. PEPES was formed in approximately October of 1992 and disbanded following Escobar's death in December of 1993. During that time period, PEPES briefly waged a bloody war against Escobar and his associates. The group is alleged to have committed numerous human rights violations in Colombia, including torture, rape and the killing of innocent civilians. PEPES were funded, among other parties, by the Cali Cartel, which was one of Escobar's main rivals.

### *IPS' June 1, 2004 FOIA Request*

20.    On June 1, 2004, pursuant to FOIA, IPS requested from the CIA, "All records which mention or relate to the Colombian organization known as the 'PEPES' or the Perseguidos por Pablo Escobar, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar."

21.    The FOIA request reasonably described the records requested and was made in accordance with the published rules of the CIA.

22.    The June 1, 2004 FOIA request included a request for "waiver of all fees in

5

connection with this request."

23.    Plaintiff's FOIA request adequately described why IPS is entitled to a fee waiver

pursuant to 5 U.S.C. section 552(a)(4)(A)(iii).

24.    IPS' request was in the public interest and was not requested for any commercial

or economic interest.

### The June 29, 2004 CIA Response

25.    By letter dated June 29, 2004, the CIA acknowledged that it received IPS' request

and stated that it had only searched its "database of previously released documents using the search

terms 'pepes' and 'Escobar.'"

26.    Enclosed with the June 29, 2004 letter, the CIA provided IPS with an index

("Defendant's June 29th Index") of records generated by this limited search totaling approximately

503 pages, stating, "[t]hese documents were located in a search conducted on behalf of a previous

requester."

27.    In the June 29, 2004 letter, the CIA stated that it had "determined that [IPS'] request

falls into the 'educational and non-commercial scientific institution fee category'" (see 32 C.F.R.

§ 1900.02(h)(2)) and that IPS would be charged at ten cents per page for pages in excess of the first

100 pages.

28.    The CIA did not claim that IPS had failed to satisfy FOIA's requirements for

entitlement to a public interest fee waiver.

29.    The June 29, 2004 correspondence included a fee schedule.

30.    Many, if not all, of the documents listed in Defendant's June 29th Index were Foreign

Broadcast Information Service records.

6

### *IPS' October 13, 2004 FOIA Appeal*

31.    On October 13, 2004, IPS appealed the CIA's response to the June 1, 2004 FOIA request. IPS appealed the adequacy of the CIA's search on the grounds that the CIA had only searched its database of previously released documents.   IPS also appealed the CIA's failure to identify all documents withheld and the reasons for non-disclosure.

32.    The CIA received IPS' appeal on or before October 20, 2004.

33.    The CIA was required to respond to IPS' FOIA appeal no later than November 17, 2004.

34.    On November 30, 2004, the CIA informed IPS that it had received IPS' October 13, 2004 appeal, had accepted IPS' appeal and would arrange for the Agency Release Panel to consider the appeal. The CIA stated that Plaintiff must expect a delay in receiving the Agency Release Panel's decision.

35.    To date, the CIA has failed to make a determination on IPS' FOIA appeal.

### *IPS' February 16, 2005 Letter to the CIA*

36.    On February 16, 2005, IPS again wrote to the CIA requesting an immediate response to its FOIA appeal. In this letter, IPS informed the CIA that it had received no follow-up information regarding the status of its FOIA appeal or the Agency Release Panel's decision. IPS stated that well over 20 work days had passed since the CIA's November 30 letter.

37.    In its February 16, 2005 letter, IPS requested that the CIA disclose the requested documents as they become available, without waiting until all the documents have been assembled.

36.    The CIA did not respond to IPS' February 16, 2005 letter until May 13, 2005.

### *IPS' April 6, 2005 Appeal Letter to the CIA*

7

38.    On April 6, 2005, Plaintiff sent the CIA's Agency Release Panel and the Information and Privacy Coordinator a letter urging immediate resolution of this matter and providing the CIA with additional information to consider with respect to IPS' FOIA appeal.

39.    In the April 6, 2005 letter, IPS—by and through its legal counsel—stated that IPS was appealing the CIA's response to the June 1, 2004 FOIA request on the grounds that 1) the CIA should not have limited its search to previously released documents, 2) the CIA should have searched for all records which mention or relate to the Colombian organization known as the 'PEPES' or the Perseguidos por Pablo Escobar, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar and should not have limited its search to pepes and Escobar, 3) should not have limited its search to Foreign Broadcast Information Service records.

40.    The April 6, 2005 IPS letter explained that IPS was entitled to a full waiver of document fee requirements pursuant to 5 U.S.C. section 552(a)(4)(A)(iii). The letter stated that the disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the United States government and that the request was not made in furtherance of any commercial interest of IPS.

41.    The April 6, 2005 IPS letter demonstrated (1) the subject of IPS' request; (2) the informative value of the information to be disclosed; (3) the contribution to general public understanding; (4) the significance of the contribution to public understanding; and (5) the existence and magnitude of a commercial interest.

42.    The April 6, 2005 IPS letter concluded by stating that "[i]f the CIA does not respond to this FOIA appeal by promptly conducting a thorough search of its records and releasing the requested documents free of charge, IPS will have to consider its judicial remedies."

8

*The CIA's May 13, 2005 Letter to IPS*

43.    On or about May 13, 2005, the CIA responded to IPS' February 16, 2005 and April 6, 2005 correspondence by stating that the CIA was "still processing" IPS' appeal and that "every reasonable effort will be made to complete a response as soon as possible."

44.    To date, the CIA has failed to respond to IPS' October 13, 2004 appeal or to adequately respond to IPS' June 1, 2004 FOIA request.

45.    To date, the CIA has not granted IPS' request for a full fee waiver for all fees associated with IPS' June 1, 2004 FOIA request.

**CLAIMS FOR RELIEF**

**CLAIM ONE: FAILURE TO CONDUCT AN ADEQUATE SEARCH**

46.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

47.    As of the date of filing this action, the CIA has failed to conduct an adequate search for the documents requested by Plaintiff in its June 1, 2004 FOIA request.

48.    Based on the above facts and legal obligations, the CIA improperly limited its search for documents requested by Plaintiff in its June 1, 2004 FOIA request to previously released documents.

49.    Based on the above facts and legal obligations, the CIA should have searched for all records which mention or relate to PEPES, the Perseguidos por Pablo Escobar, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar.

50.    Based on the above facts and legal obligations, the CIA should not have limited its search to the terms pepes and Escobar.

51.    Based on the above facts and legal obligations, the CIA improperly limited its search for documents requested by Plaintiff in its June 1, 2004 FOIA request to Foreign Broadcast Information Service documents.

## CLAIM TWO: VIOLATION OF FOIA FOR FAILURE TO PROVIDE ALL RECORDS RESPONSIVE TO PLAINTIFF'S JUNE 1, 2004 FOIA REQUEST

52.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

53.    Defendant has denied Plaintiff's request of June 1, 2004, in that the CIA has failed to provide Plaintiff with all records responsive to the June 1, 2004 request.

54.    By failing to provide Plaintiff with all responsive records, Defendant has denied Plaintiff's right to this information under the Freedom of Information Act.

55.    Unless enjoined by this Court, Defendant will continue to violate Plaintiff's legal rights to access all of the records requested pursuant to the FOIA.

## CLAIM THREE: FAILURE TO REPLY TO FOIA APPEALS

56.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

57.    Based on the above facts and legal obligations, the CIA failed to respond to IPS' October 13, 2004 administrative appeal within 20 business days of the appeal, and so violated FOIA's response deadline, 5 U.S.C. § 552(a)(6)(A)(ii).

## CLAIM FOUR: IMPROPER DENIAL OF FULL FEE WAIVER REQUEST

58.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

59.    Based on the above facts and legal obligations, the CIA improperly denied IPS' July

10

1, 2004 request for a public interest waiver of fees, and so violated the fee waiver provision of FOIA, 5 U.S.C. § 552(a)(4)(A)(iii).

### CLAIM FIVE - ADMINISTRATIVE PROCEDURE ACT

60.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

61.    Plaintiff is entitled to judicial review, pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 702, 706, of Defendant's actions concerning its unlawful policies and practices regarding adequately searching for records requested by Plaintiff.

62.    Plaintiff is entitled to judicial review, pursuant to the Administrative Procedure Act, of Defendant's failure to respond to Plaintiff's October 13, 2004 administrative appeal within the time frame established by FOIA.

63.    Defendant has unlawfully withheld and/or unreasonably delayed agency action by failing to comply with the mandates of FOIA regarding Plaintiff's FOIA request and appeal.

64.    Defendant's actions regarding Plaintiff's FOIA requests and appeal, are arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law.

### CLAIM SIX - DECLARATORY JUDGMENT ACT

65.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

66.    Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaratory judgement that Defendant violated FOIA by failing to provide all records responsive to Plaintiff's June 1, 2004 FOIA request prior to filing this action.

67.    Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaratory judgement that

11

Defendant violated FOIA by failing to conduct an adequate search for documents requested by Plaintiff in its June 1, 2004 FOIA request by limiting its search to previously released documents, by limiting its search to a subset of the search terms, and by limiting its search to Foreign Broadcast Information Service documents.

68.    Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaratory judgement that Defendant violated FOIA by failing to timely respond to IPS' October 13, 2004 administrative appeal.

69.    Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaratory judgement that Defendant violated FOIA by improperly denying IPS' July 1, 2004 request for a waiver of all fees.

### VIII. REQUEST FOR RELIEF

FOR THESE REASONS, Plaintiff respectfully requests that this Court enter judgment providing the following relief:

1.    Declare that the CIA violated FOIA by failing to conduct an adequate search for the documents requested by Plaintiff in its June 1, 2004 FOIA request;

2.    Declare that the CIA violated FOIA by failing to provide Plaintiff with all records responsive to the June 1, 2004 request;

3.    Declare that the CIA violated FOIA by not responding to Plaintiff's FOIA appeal within 20 business days of filing the appeal;

4.    Declare that the CIA violated FOIA by improperly denying Plaintiff's request for a public interest waiver of fees associated with release of the requested records;

5.    Enjoin the CIA to immediately conduct an adequate search for the records

12

requested by Plaintiff;

     6.     Enjoin the CIA from withholding the requested records and order the production

of all records improperly withheld from Plaintiff;

     7.     Enjoin the CIA to provide a public interest fee waiver for all records released to

Plaintiff;

     8.     Grant Plaintiff its costs of litigation, including reasonable attorney fees, as

provided by FOIA, 5 U.S.C. § 552(a)(4)(E); and

     9.     Provide such other relief as the Court deems just and proper.

May 23, 2006             RESPECTFULLY SUBMITTED,

Brian Gaffney
Matt McFarland
LAW OFFICES OF BRIAN GAFFNEY
605 Market St., Suite 505
San Francisco, CA 94105
Telephone: (415) 442-0711
Facsimile: (415) 442-0713

Carl Messineo (#450033)
Mara Verheyden-Hilliard (#450031)
PARTNERSHIP FOR CIVIL JUSTICE
10 G Street, N.E., Ste 650
Washington, D.C. 20002
Telephone: (202) 789-4330
Facsimile: (202) 789-4333

13



Central Intelligence Agency

Washington, D.C. 20505

15 December 2006

Mr. Paul Paz y Miño
Institute for Policy Studies
733 15th Street, NW, Suite 1020
Washington, DC 20005-2112

Reference: F-2004-01528

Dear Mr. Paz y Miño:

This concerns your 1 June 2004 Freedom of Information Act (FOIA) request and subsequent litigation for "all records which mention or relate to the Colombian organization know as the "PEPES" or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar." We processed your request in accordance with the FOIA, 5 U.S.C. § 552, et seq., and the CIA Information Act, 50 U.S.C. § 431. Our processing included a search for records in existence as of 1 June 2004.

With respect to your request for a fee waiver, we have reviewed your request and determined that it does not meet our criteria for a fee waiver because the information you seek from Agency files would not contribute significantly to the public understanding of the operations and activities of the United States Government. However, as a matter of administrative discretion, we will not charge fees in this case.

With regard to that portion of your request pertaining to Pablo Escobar, in accordance with section 3.6(a) of Executive Order 12958, as amended, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to this portion of your request. The fact of the existence or nonexistence of requested records is properly classified and is intelligence sources and methods information that is protected from disclosure by section 6 of the CIA Act of 1949. Therefore, the Agency has denied this portion of your request pursuant to FOIA exemptions (b)(1) and (b)(3). An explanation of these exemptions is enclosed for your reference and retention.



GOVERNMENT EXHIBIT

Concerning the remaining portions of your request pertaining to PEPES or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, and/or the death of Pablo Escobar, we have completed a thorough search for records responsive to your request, and located the enclosed eight documents (MORI documents 1339991-1339992, 1340582-1340586, and 1391030), which can be released in segregable form on the basis of FOIA exemptions (b)(1), (b)(2), and (b)(3). We also located additional material, which we have determined is exempt from release and must be denied in its entirety on the basis of FOIA exemptions (b)(1), (b)(2), (b)(3), (b)(6), and (b)(7)(e).

During our searches, we also identified one document that requires this agency to consult with other federal agencies. Once the consultation process is complete, we will provide a supplemental response concerning that document.

Also, during our searches, we located additional United States Government material that was not originated by CIA. This material appears to be relevant to your request, and has been referred to the originating agencies for review and direct response to you.

The CIA regulations governing administrative appeals are set forth at 32 C.F.R. §1900.42. Those regulations state that no appeal shall be accepted if the information in question is the subject of litigation in the federal courts.

Sincerely,

Scott Koch
Information and Privacy Coordinator

Enclosures

1-24-207 6:35AM    FROM



# Unclassified Facsimile Transmittal Form

Sending Unsecure Fax Telephone Number (703) 613- 0027

Receiving Unsecure Fax Telephone Number  703- 874-1050

Number of Pages (Including Coversheet/Transmittal Form):  3

From:  Richard Gindes  PIPD

Subject:  IPS Final Letter

To: Addressee/ Organization/ Office/ Extension

➢  Timothy Callahan  OGC/KD  76113

➢  _____

➢  _____

➢  _____

➢  _____

➢  _____

➢  _____

➢  _____

➢  _____

➢  _____

➢  _____

Special Instructions:  _____

_____

Releasing Official:  Richard Gindes            Richard J Gindes
                     Print Name                  Signature



2-09-207 4:40PM    FROM    P. 2

Central Intelligence Agency



Washington, D.C. 20505

9 February 2007

Mr. Paul Paz y Miño
Institute for Policy Studies
1112 16th Street, NW, Suite 600
Washington, DC  20005-2112

Reference: F-2004-01528

Dear Mr. Paz y Miño:

   This letter expands on our 15 December 2006 response to your 1 June 2004
Freedom of Information Act (FOIA) request and subsequent litigation for "all records
which mention or relate to the Colombian organization know as the "PEPES' or the
*Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo Escobar
and/or the death of Pablo Escobar."

   As indicated in our 15 December 2006 response, we had one remaining document
that required us to consult with other federal agencies.  The consultation process is
complete and we have determined that the document can be released in segregable form on
the basis of FOIA exemptions (b)(1) and (b)(3).

                                        Sincerely,

                                        Scott Koch
                                        Information and Privacy Coordinator

Enclosure





Central Intelligence Agency

Washington, D.C. 20505

21 February 2007

Mr. Paul Paz y Miño
Institute for Policy Studies
1112 16th Street, NW, Suite 600
Washington, DC 20005-2112

Reference: F-2004-01528

Dear Mr. Paz y Miño:

   This letter expands on our 15 December 2006 response to your 1 June 2004
Freedom of Information Act (FOIA) request and subsequent litigation for "all records
which mention or relate to the Colombian organization know as the "PEPES or the
*Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo Escobar
and/or the death of Pablo Escobar."

   As indicated in our 15 December 2006 response, we had one remaining document
that required us to consult with other federal agencies. The consultation process is
complete and we have determined that the document can be released in segregable form on
the basis of FOIA exemptions (b)(1) and (b)(3).

                                     Sincerely,

                                     Scott Koch
                                     Information and Privacy Coordinator

Enclosure



GOVERNMENT
EXHIBIT
M