# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INSTITUTE FOR POLICY STUDIES      )
     )
     )
       Plaintiff,      )
     )      Case No. 06-0960 (HHK)
     vs.      )
     )
UNITED STATES CENTRAL      )
INTELLIGENCE AGENCY      )
     )
     )
       Defendant.      )
_____)

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN
### OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL BACKGROUND – THE FREEDOM OF INFORMATION ACT  . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.       THE CIA IMPROPERLY WITHHELD RECORDS BY FAILING TO
         CONDUCT AN ADEQUATE SEARCH  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

         A.       The CIA Violated FOIA by Not Conducting a Search
                  up to the Date of the Search. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

         B.       The CIA Violated FOIA by Limiting its Search to Records Located
                  in a Search Conducted on Behalf of a Previous Requestor and Another
                  FOIA Request Reference Number.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

         C.       The CIA Violated FOIA by Only Searching Two of Five CIA
                  Directorates When Others Directorates Are Reasonably Likely to
                  Have Requested Records. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                  1.       The CIA Violated FOIA by Failing to Search DS&T, NCS And
                           DS Files For Responsive Records . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

                  2.       The CIA Information Act of 1984 Does Not Exempt the CIA from
                           Searching for Responsive Records Within DS&T and NCS. . . . . . . . . . 12

                           a.       The CIA Act Does Not Exempt All DS&T, NCS and DS Files  .12

                           b.       The Director of the CIA Failed to Explicitly Claim an
                                    "Operational Files" Exemption.. . . . . . . . . . . . . . . . . . . . . . . . 13

                           c.       The CIA Failed to Demonstrate That the "Operational Files"
                                    in DS&T and Ncs Fall into Any of the Three Specifically
                                    Categorized Files. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

d.    IPS' Request Qualifies for the "Special Activity"
Exception to the CIA Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

e.    Files Withheld by Defendant Which Contain Only
Disseminated NCS Intelligence Are Not Exempt from
Search under the CIA Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.    The CIA Failed to Conduct an Adequate Search Because It Did Not
Search For Documents Regarding Pablo Escobar. . . . . . . . . . . . . . . . . . . . . . . 17

1.    The Dorn Declaration Fails to Demonstrate That the Declarant
Possesses Either the Required Classification Authority Or Personal
Knowledge Such Authority Was Exercised. . . . . . . . . . . . . . . . . . . . . . 18

2.    The CIA's Asserted Reasons for the *Glomar* Response Are Not
Plausible.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

3.    Information Regarding "Pablo Escobar" Has Already Been
Officially Acknowledged by the CIA. . . . . . . . . . . . . . . . . . . . . . . . . . . .21

II.    THE CIA'S REFERRAL OF RECORDS TO OTHER AGENCIES VIOLATED
FOIA BY SIGNIFICANTLY DELAYING DISCLOSURE OF RECORDS TO IPS. . . 23

III.    THE CIA HAS IMPROPERLY WITHHELD DOCUMENTS BY BROADLY
CLAIMING FOIA EXEMPTIONS WITHOUT SUFFICIENTLY
DESCRIBING THE WITHHELD DOCUMENTS AND JUSTIFICATIONS.. . . . . . . 25

A.    The CIA's Affidavit is Controverted by Contrary Record Evidence as
The Vaughn Index Solely References a Different FOIA Request. . . . . . . . . . . 27

B.    The CIA Failed to Adequately Describe Which Portions of the Records
are Exempt from Disclosure and Sufficiently Justify Why the Claimed
Exemptions are Relevant.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

1.    The Vaughn Index Does Not Provide the Required Description
of the Withheld Portions Nor Sufficiently Justifies Their Withholding. . 28

2.    The CIA's Affidavit Does Not Provide the Required Description
of the Withheld Portions Nor Sufficiently Justifies Their Withholding.. 30

C.    The Vaughn Index Omits All Records Which the CIA Possesses but
Referred to Other Agencies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

D.      The Dorn Declaration and the Vaughn Index Are Inadequate as
        Neither Discuss Document No. 1339991. . . . . . . . . . . . . . . . . . . . . . . . .   33

IV.     PLAINTIFF IS ENTITLED TO DECLARATORY RELIEF . . . . . . . . . . . . . . . . . . . .33

        A.      Plaintiff Is Entitled to Declaratory Relief for the CIA's Failure to Respond
                to Plaintiff's FOIA Appeal Within 20 Business Days of Filing the Appeal. . . . .34

                1.      There Is an Actual Controversy of Sufficient Immediacy to
                        Warrant Declaratory Relief.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

                2.      Declaratory Relief Is Necessary Because the CIA's FOIA Appeal
                        Policy Has Affected and Will Continued to Affect Plaintiff's Interest. . 36

        B.      Plaintiff Is Entitled to Declaratory Relief for CIA's Denial of IPS'
                Request for a Public Interest Fee Waiver.. . . . . . . . . . . . . . . . . . . . . . . . . . 37

V.      THE CIA VIOLATED THE ADMINISTRATIVE PROCEDURE ACT
        BY FAILING RESPOND TO FOIA APPEALS IN A TIMELY MANNER. . . . . . . .39

        CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                    <u>PAGE</u>

*ACLU v. Dept. of Defense*, 351 F.Supp.2d 265 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . 13-15

*Aftergood v. National Reconnaissance Office*, 441 F.Supp.2d 37 (D.D.C. 2006) . . . . . . . . . . . 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Better Government Ass'n v. Department of State*, 780 F.2d 86 (D.C. Cir. 1986) . . . . . . . . . . . 37

*Campbell v. United States Dept. of Justice*, 164 F.3d 20 (D.C.Cir. 1998) . . 5-6, 9-10, 21, 30-31

*CIA v. Sims*, 471 U.S. 159 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Coldiron v. United States Dep't of Justice*, 310 F. Supp. 2d 44(D.D.C. 2004) . . . . . . . . . . . . 25

*Consumer Product Safety Commission et al. v. GTE Sylvania*, 447 U.S. 102 (1980) . . . . . . . . 34

*Cynthia King, v. United States Department of Justice,* 830 F.2d 210 (D.C. Cir. 1987) . . . *passim*

*Department of Justice v. Landano*, 508 U.S. 165 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Dept. of the Air Force v. Rose*, 425 U.S. 352 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dept. of the Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1 (2001) . . . . . . . . . . . 3

*Ethyl Corp. v. U.S. Environmental Protection Agency,* 25 F.3d 1241 (4th Cir. 1994) . . . . . . . . . 4

*Ettlinger v. F.B.I.*, 596 F. Supp. 867 (D. Mass. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Evans v. United States Office of Personnel Management*, 276 F. Supp. 2d 34 (D.D.C. 2003) . . . 4

*F.B.I. v. Abramson*, 456 U.S. 615 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Founding Church of Scientology v. National Sec. Agency*, 610 F.2d 824 (D.C. Cir. 1979) . . . . 10

*Gardels v. CIA*, 689 F.2d 1100 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hayden v. National Security Agency*, 608 F.2d 1381 (D.C.Cir.1979) . . . . . . . . . . . . . . . . . . 5, 20

*Jimenez v. F.B.I.*, 938 F. Supp. 21 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) . . . . . . . . . . . . . . . 34, 38-39

*McGehee v. CIA*, 697 F.2d 1095 (D.C. Cir. 1983),
    *modified in other respects*, 711 F.2d 1076 (D.C. Cir. 1983). . . . . . . . . . . . . . . 6–7, 23–25

*Mead Data Central, Inc. v. United States Dept. of the Air Force*, 566 F.2d 242
    (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Nation Magazine v. United States Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995) . . . . . . . *passim*

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Office of Foreign Assets Control, United States Dep't of the Treasury v.*
    *Voices in the Wilderness*, 382 F.Supp.2d 54 (D.D.C. 2005.) . . . . . . . . . . . . . . . . . . . . . 39

*Oglesby v. United States Dept. of Army*, 920 F.2d 57 (D.C. Cir. 1990) . . . . . . . . . . . 5, 8-10, 17

*Oglesby v. United States Dept. of the Army*, 79 F.3d 1172 (D.C. Cir. 1996) . . . . . . . . . . . 10, 25

*Peralta v. United States Attorney's Office*, 136 F.3d 169 (D.C. Cir. 1998) . . . . . . . . . . . . . . . 25

*Petroleum Info. Corp. v. Dept. of the Interior*, 976 F.2d 1429 (D.C. Cir. 1992) . . . . . . . . . . . 3-4

*Prison Legal News v. Lappin*, 436 F.Supp.2d 17 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . 37-38

*Public Citizen v. Dep't of State*, 276 F.3d 634 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 7

*Schiller v. NLRB*, 964 F.2d 1205 (D.C. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28–30

*Senate of the Commonwealth of Puerto Rico v. U.S. Dept. of Justice*,
    823 F.2d 574 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Steinberg v. United States Dept. of Justice*, 23 F.3d 548 (D.C.Cir.1994) . . . . . . . . . . . . . . . 5–6

*Sullivan v. Central Intellgence Agency*, 992 F.2d. 1249 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . 16

*Truitt v. Department of State*, 897 F.2d 540 (D.C. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States Dep't of Justice v. Julian*, 486 U.S. 1 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States Dept. of Justice v. Reporters Comm. for Freedom of the Press*,
    489 U.S. 749 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) . . . . . . . . . . . . . 8, 10, 12

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Weisberg  v. United States Dept. of Justice*, 705 F.2d 1344 (D.C. Cir. 1983) . . . . . . . . . . . . . . . 5

*Weisberg v. United State Dept. of Justice*, 745 F.2d 1476 (D.C.Cir. 1984). . . . . . . . . . . . . . . . 6

*Wiener v. FBI*, 943 F.2d 972 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Weissman v. CIA*, 565 F.2d 692  (D.C. Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17–21

**STATUTES**
Declaratory Judgment Act
28 U.S.C. § 2201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CIA Information Act of 1984
50 U.S.C. § 431 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        § 431(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        § 431(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15
        § 431(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16
        § 431(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16
        § 431(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Freedom of Information Act
5 U.S.C. §552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        § 552(a)(4)(A)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37-38
        § 552(a)(4)(A)(vii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 34, 37
        § 552(a)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 34, 38
        § 552(a)(6)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36
        § 552(a)(6)(B)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
        § 552(a)(6)(B)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
        § 552(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

//

Administrative Procedure Act
5 U.S.C.§ 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    § 706(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Federal Rules of Civil Procedure
Fed.R.Civ.Pro 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4–5
Fed.R.Civ.Pro. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**REGULATIONS**
32 C.F.R. § 1900.02(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    § 1900.13(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
    § 1900.13(b)(2)(i)–(vi.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    § 1900.22(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    § 1900.42(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
    § 1901.02(n) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    § 1901.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**EXECUTIVE ORDERS**
Executive Order 12958 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17–19, 21, 31

**MISCELLANEOUS**
132 Cong. Rec. S14298 (Sept. 30, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

60 Fed. Reg. 19825, 19826 at § 1.2(a)(4) (April 17, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 21

S.Rep.No. 305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CIA October 13, 2005 Press Release . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# INTRODUCTION

This is an action arising under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 706, filed by Plaintiff, Institute for Policy Studies, seeking declaratory and injunctive relief from this Court related to Plaintiff's request for records from the United States Central Intelligence Agency ("CIA") and Plaintiff's request for a waiver of all fees in conjunction therewith.

On June 1, 2004, the Institute for Policy Studies ("IPS") requested the CIA release all records which mention or relate to the Colombian organization known as the "PEPES" or the Perseguidos por Pablo Escobar, People Persecuted by Pablo Escobar, Pablo Escobar, and/or the death of Pablo Escobar. Declaration of Paul Paz y Mino ("Paz y Mino Dec.") at ¶ 4 & Exhibit A thereto; Declaration of Marilyn A. Dorn ("Dorn Dec.") at ¶ 22 & Exhibit B thereto. On June 29, 2004, the CIA assigned IPS' request the reference number F-2004-01528 and responded that it was providing "previously released records" that were "located in a search conducted on behalf of a previous requester" using the search terms "pepes" and "Escober." Paz y Mino Dec. at ¶ 8 & Exh. B thereto; Dorn Dec. at ¶ 23. The CIA enclosed a fee schedule and two indices generated by this limited search, and stated that IPS would be charged at ten cents per page for pages in excess of the first 100 pages. *Ibid.*

Because of the CIA's response to its FOIA request, on October 13, 2004 IPS filed an administrative appeal. Paz y Mino Dec. at ¶ 11 & Exh. F thereto; Dorn Dec., Exh. D. On February 16, 2005 IPS reminded the CIA that more than 20 days had elapsed, urged an immediate response to its appeal, and requested the documents be released as they became available without waiting for all documents to be assembled. Paz y Mino Dec. at ¶ 13 & Exh. H thereto; Dorn Dec., Exh. F. On

1

April 6, 2005 IPS again wrote to the CIA reiterating that IPS is a tax-exempt non profit organization which was requesting the information to further its efforts to educate the public about United States foreign policy with and activities in Columbia, urged resolution of this matter and cautioned that if "the CIA does not respond to this FOIA appeal by promptly conducting a thorough search of its records and releasing the requested documents free of charge, IPS will have to consider its judicial remedies."  Paz y Mino Dec., Exh. I; Dorn Dec, Exh. G.  Defendant elected not to make a determination on Plaintiff's appeal. Paz y Mino Dec. at ¶ 20.

After suit was filed on May 23, 2006, the CIA belatedly conducted a search for records in December, 2006.  IPS is entitled to summary judgment, and Defendant's motion should be denied, as the undisputed facts demonstrate that Defendant's search did not include to records in existence as of the date of the search, was limited to a records located in a search conducted on behalf of a previous requestor and another FOIA request reference number, was limited to two of five CIA directorates, did not include a search for the term "Pablo Escobar," and did not include records in the CIA's possession but referred to other federal agencies.

IPS is also entitled to summary judgment and Defendant's motion should be denied as the CIA improperly withheld records in its possession without preparing an adequate supporting affidavit or Vaughn Index.  The undisputed facts demonstrate that the Dorn Declaration is controverted by contrary record evidence, the Vaughn Index omits all records which the CIA possesses but referred to other agencies,  the CIA failed to adequately describe the redacted material and sufficiently explain how disclosure of the redacted material would likely impair national security, and neither the Dorn Declaration nor the Vaughn Index filed with this Court provide any discussion of Document No. 1339991.

Defendant has violated FOIA and the APA. IPS, therefore, is entitled to declaratory and injunctive relief.

## LEGAL BACKGROUND – THE FREEDOM OF INFORMATION ACT

FOIA, the Supreme Court has repeatedly found, is designed to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dept. of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). "[D]isclosure, not secrecy, is the dominant objective," of FOIA. *Ibid.; see also Dept. of the Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001). The fundamental purpose of FOIA is to assist citizens in discovering "what their government is up to." *United States Dept. of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).

FOIA's primary goal "is to ensure an informed citizenry, vital to the functioning of a democratic society." *F.B.I. v. Abramson*, 456 U.S. 615, 621 (1982) [internal quotations omitted]. FOIA "reflects a general philosophy of full agency disclosure," *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989); *CIA v. Sims*, 471 U.S. 159, 166 (1985). Accordingly, "virtually every document generated by an agency is available in one form or another, unless it falls within one of the Act's nine exemptions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975).

FOIA's statutory exemptions to disclosure, therefore, are narrowly construed with all doubts resolved in favor of disclosure. *Klamath Water Users Protective Assn.,* 532 U.S. at 8 ("'consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass,'" *quoting U.S. Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989)).

The burden is on federal agencies to justify withholding documents under FOIA's exemptions. 5 U.S.C. § 552(a)(4)(B); *Petroleum Info. Corp. v. Dept. of the Interior*, 976 F.2d 1429,

3

1433 (D.C. Cir. 1992) ("the burden is on the agency to show that requested material falls within a FOIA exemption") [quotations & citations omitted]; *Mead Data Central, Inc. v. United States Dept. of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

In order to shoulder its burden of demonstrating that a FOIA exemption applies, the agency must explain with specificity and detail why each document, or portion of the document, should be exempt. *Vaughn v. Rosen*, 484 F.2d 820, 825–26 (D.C. Cir. 1973) *cert. denied by Rosen v. Vaughn*, 415 U.S. 977 (1974). The agency's detailed explanation is necessary to compensate for the fact that the party seeking disclosure lacks knowledge about the withheld documents. *Ethyl Corp. v. U.S. Environmental Protection Agency,* 25 F.3d 1241, 1249–50 (4th Cir. 1994).

To correct this imbalance, this Circuit requires agencies to compile a "Vaughn Index" that "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Central*, 566 F.2d at 250–51; *Cynthia King v. United States Dept. of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987). Agencies must provide more than "the briefest of references to its subject matter." *Senate of the Commonwealth of Puerto Rico v. United States Dept. of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) [footnote omitted]. In describing withheld documents, the agency must "disclos[e] as much information as possible without thwarting the exemption's purpose." *King*, 830 F.2d at 224.

## STANDARD OF REVIEW

"Summary judgment is the preferred method of resolving cases brought under FOIA." *Evans v. United States Office of Personnel Management*, 276 F.Supp.2d 34, 37 (D.D.C. 2003) [citations omitted]. Summary judgment should be granted if there is "no genuine issue as to any material fact"

and the "moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c). Summary judgment is to be denied when the adverse party sets forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.Pro. 56(e). The moving party has the burden of demonstrating the absence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

A district court's review of an agency's decision and classification on a FOIA request is *de novo*. 5 U.S.C. § 552(a)(4)(B); *Hayden v. National Security Agency*, 608 F.2d 1381, 1384 (D.C.Cir. 1979). Review of an agency fee waiver determination is *de novo* and limited to the administrative record before the agency. 5 U.S.C. § 552(a)(4)(A)(vii).

Summary judgment in FOIA actions shall be rendered if the "affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Jimenez v. F.B.I.*, 938 F.Supp. 21, 25 (D.C. Cir. 1996), *quoting* Fed.R.Civ.Pro 56(c).

## ARGUMENT

## I.    THE CIA IMPROPERLY WITHHELD RECORDS BY FAILING TO CONDUCT AN ADEQUATE SEARCH.

To win summary judgment on the adequacy of a search, the agency must demonstrate beyond material doubt that its search was "reasonably calculated to uncover all relevant documents." *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) [citations omitted]; *Steinberg v. United States Dept. of Justice*, 23 F.3d 548, 552 (D.C.Cir.1994); *Weisberg v. United States Dept. of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The agency must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," *Oglesby v. United States Dep't of Army* ("*Oglesby I*"), 920 F.2d 57, 68 (D.C. Cir. 1990), and it "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Campbell v. United States Dept.*

*of Justice*, 164 F.3d 20, 28 (D.C.Cir. 1998).  "If [] the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Id*. at 27 [citation omitted].  The facts concerning the adequacy of the search will be viewed in the light most favorable to the requester. *Steinberg*, 23 F.3d at 552; *Weisberg v. United States Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  In conducting its search the agency has a duty to construe the request liberally.  *Nation Magazine*, 71 F.3d at 890.

### A.  The CIA Violated FOIA by Not Conducting a Search up to the Date of the Search.

The CIA violated FOIA by not searching for responsive records up to and including the date the search was conducted.  Defendant impermissibly limited its initial response to previously released records, and then after suit was filed conducting a search in December, 2006 that was impermissibly limited to records in existence as of June, 2004. FOIA does not support an agency's use of a search cut-off date that limits the search to the date of the FOIA request for all record searches by an agency.  *McGehee v. CIA*, 697 F.2d 1095, 1102–03 (D.C. Cir. 1983), *modified in other respects*, 711 F.2d 1076  (D.C. Cir. 1983).

Plaintiff filed its FOIA request on  June 1, 2004.  Paz y Mino Dec. at ¶ 4 & Exhibit A thereto; Dorn Dec. at ¶ 22 & Exhibit B.  Initially, the CIA did not conduct a search.  Paz y Mino Dec. at ¶ 8; Dorn Dec. at ¶ 23.  Instead only offered IPS "previously released records," without stating when such records were previously released. *Ibid*.  FOIA does not provide such an exemption from the agency's duty to search for records.  5 U.S.C. § 552(d).  The CIA did not comply with its "obligation to conduct a reasonably thorough investigation" and thus violated FOIA  *McGehee,* 697 F.2d at 1101.

In addition, two and a half years after IPS filed its FOIA request and over six months after suit was filed, the agency belatedly notified Plaintiff on December 15, 2006 that the CIA conducted

"a search for records in existence as of 1 June 2004." Paz y Mino Dec. at ¶ 17 & Exh. K thereto;

Dorn Dec. ¶ 30 & Exh. J.[1]  By limiting its search its search to records in existence on June 1, 2004,

rather than the December 2006 search date, the CIA again violated FOIA.

 In *McGehee* the D.C. Circuit held that a CIA rule—which had the effect of limiting FOIA

searches to records in the agency's possession as of the date of the initial FOIA request—violated

FOIA.  The court reasoned that

> [h]aving concluded that neither the terms of the statute nor the case law interpreting them
> supports a claim that the use of a time-of-request cut-off date is always proper, we are
> compelled to turn to the particular facts of the case before us to assess the reasonableness of
> the agency's conduct.  McGehee directs our attention to circumstances that, on their face,
> cast considerable doubt on the merits of the agency's procedure.  The CIA took almost two
> and one-half years to respond to McGehee's request.  Yet, when it finally released
> documents, the CIA chose to limit itself to records that originated with and were possessed
> by the agency [on the date of McGehee's finalized request].  Were these facts all that
> appeared in the record, we would be very hard pressed to sustain the agency's actions.

*Id*. at 1103.

 Twenty years later, the D.C. Circuit again rejected the use of the date of the FOIA request

as a cut-off, explaining that "[a]t the very least, we think that with minimal administrative hassle,

the Department could apply a date-of-*search* cut-off to the Central File."  *Public Citizen v. Dep't

of State*, 276 F.3d 634, 644 (D.C. Cir. 2002) (emphasis in original).

 Clearly, the CIA has not met its burden of establishing that its search limitation complies

with its "obligation to conduct a reasonably thorough investigation."  *McGehee,* 697 F.2d at 1101.

For these reasons, this Court should grant Plaintiff summary judgment and compel the agency to

search for all responsive records up to the date of its search.

//

---

[1] Although the CIA's letter is dated December 15, 2006, IPS did not receive the letter until after
January 8, 2007. Paz y Mino Dec. at ¶ 17.

**B.    The CIA Violated FOIA by Limiting its Search to Records Located in a Search Conducted on Behalf of a Previous Requestor and Another FOIA Request Reference Number.**

An agency's FOIA search is inadequate where the record itself reveals "positive indications of overlooked materials." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) [citation omitted].

Defendant's search was inadequate because it limited its June 2004 response to previously released records that were "located in a search conducted on behalf of a previous requester." Paz y Mino Dec. at ¶ 8 & Exh. B; Dorn Dec. at ¶ 23; Dorn Dec., Exh. C.  The CIA did not state how long ago such records were previously released, but did reveal that some of the documents in its attached indices "may not be relevant" to IPS' request. *Ibid*.  The agency's own evidence thus reveals positive indications of overlooked materials.

Defendant's search was also inadequate because it limited its December 2006 and January 2007 response to a FOIA reference number different then the number the CIA assigned to IPS' request.  The CIA assigned Plaintiff's FOIA request the reference number F-2004-01528.  Paz y Mino Dec. at ¶ 8 & Exh. B thereto; Dorn Dec. at ¶ 22 & Exh. C.  However, each document produced as part of the CIA's Vaughn Index is identified by a different identifying number: reference number F-1999-00924. *See* Dorn Dec., Exh. A.  The agency must use search methods "which can be reasonably expected to produce the information requested." *Nation Magazine*, 71 F.3d at 890, *citing Oglesby I*, 920 F.2d at 68.  Using a different FOIA reference number can not reasonably be expected to produce the requested information, where IPS did not mention reference number F-1999-00924. Paz y Mino Dec. at ¶ 5.

Clearly, the CIA did not demonstrate beyond material doubt that its search was "reasonably calculated to uncover all relevant documents." *Nation Magazine*, 71 F.3d at 890 [citations omitted].

Thus, the Court should grant summary judgment and compel Defendant to conduct a search that is not limited to a previous requestor or another FOIA reference number.

### C.    The CIA Violated FOIA by Only Searching Two of Five CIA Directorates When Others Directorates Are Reasonably Likely to Have Requested Records.

#### 1.    The CIA Violated FOIA by Failing to Search DS&T, NCS And DS Files For Responsive Records.

"All CIA components are contained within one of five directorates or office clusters: Directorate of Intelligence (DI), the National Clandestine Service (NCS), the Directorate of Science and Technology (DS&T), the Directorate of Support (DS) and the Directorate of CIA Area (DCIA)." Dorn Dec. at ¶ 15.  In response to Plaintiff's FOIA request, only two of the five directorates "were tasked to search for responsive documents: the DI (Directorate of Intelligence) and the DCIA (the Directorate of CIA Area)." *Id*. at ¶ 40.  However, "[i]n the course of reviewing documents for exempt information and segrebility," the DI and DCIA (Directorate of Intelligence and the Directorate of CIA Area) identified information that required coordination or referral to (1) the National Clandestine Service, (2) the Directorate of Support, and (3) the Directorate of Science and Technology (NCS, DS and DS&T) "because the other component originated the information or otherwise had equity in it." *Id*. at ¶ 43.  Despite the fact that the three other components had either originated the information or "had equity in it," the CIA "did not task DS&T, NCS or DS to search for records." *Id*. at ¶ 44; *see also* CIA's Memorandum of Points and Authorities In Support of Motion For Summary Judgment at  p. 7.

Defendant's failure to search for responsive records within the DS&T, NCS and DS directorates violated FOIA.  Courts have repeatedly held that an agency can not limit its search to only certain record systems when there are other record systems likely to turn up the requested information.  *Campbell*, 164 F.3d at 28, *quoting Oglesby I*, 920 F.2d at 68; *Nation Magazine,* 71

F.3d at 890. Although an agency has discretion to conduct a standard search in response to a general request, it must revise its search to account for leads that emerge during its inquiry. *Campbell*, 164 F.3d at 28. The court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion, rather than what the agency speculated at its inception. *Ibid*.

In *Valencia-Lucena v. U.S. Coast Guard*, the court held that the Coast Guard's search was inadequate because, like here, the record itself revealed a "well-defined request and positive indications of overlooked materials." *Valencia*, 180 F.3d at 326, *citing Founding Church of Scientology v. National Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979); *see also Oglesby v. United States Dept. of the Army* ("*Oglesby II*"), 79 F.3d 1172, 1185 (D.C. Cir. 1996). The *Valencia* court found that—according to the agency itself—the offices searched were not the only places "likely to turn up the information requested." *Valencia*, 180 F.3d at 327, *citing Oglesby I*, 920 F.2d at 68 [citations omitted]. The Coast Guard's failure to search the center it had identified as a likely place where the requested documents might be located clearly raised a genuine issue of material fact as to the adequacy of the Coast Guard's search. *Id.* at 327.

The undisputed facts before this Court demonstrate that other record systems are "likely to turn up the information requested." *Oglesby I*, 920 F.2d at 68; *Nation Magazine*, 71 F.3d at 890. The DI and DCIA identified information during their search which "originated" with the National Clandestine Service (NCS), the Directorate of Support (DS), and the Directorate of Science and Technology (DS&T), or which these component "otherwise had equity" in. Dorn Dec. at ¶ 43.

The fact that the CIA did not task the Directorate of Support (DS) to search for any records is startling, given that the DS is the initial reception point for all FOIA requests. *Id*. at ¶ 14. DS is responsible for "maintain[ing] records." *Id*. at ¶ 45. Within DS is the Information and Privacy Coordinator, Information Management Services, or IMS. *Ibid*. IMS is "the focal point for all FOIA

requests and decisions." *Id*. at ¶ 43; 32 C.F.R. § 1900.02(d).  The Information and Privacy Coordinators wrote all of the FOIA responses to Plaintiff.[2]  Paz y Mino Dec. at ¶¶ 8, 12, 16, 17; Dorn Dec. at ¶ 43 & Exhs. C, E, H, J & Y thereto.  It was the Directorate of Support, through the Information and Privacy Coordinator, who first responded to Plaintiff regarding Defendant's decision to only search the CIA's "database of previously released records using the search terms 'pepes' and 'Escobar'."  Paz y Mino Dec. at ¶ 8 & Exh. B thereto; Dorn Dec.  at ¶23 & Exh. C. Moreover, DS, NCS and DS&T components reported back to the Directorate of Support's IMS, after DI and DCIA consulted with them.  Dorn Dec. at ¶ 43.  Given that a search of the Directorate of Support was likely to turn up requested information, a search of this component's files was required for the CIA to fulfill its FOIA duties.

The National Clandestine Service (NCS) was also likely to turn up responsive documents, and thus the CIA's failure to conduct any search for NCS records violated FOIA.  NCS is responsible for conducting foreign intelligence collection activities. Dorn Dec. at ¶ 46.  As Plaintiff requested records related to foreign intelligence arising from United States foreign policy in Colombia (Paz y Mino Dec. at ¶¶ 7, 15; Dorn Dec. & Exh. I; Exh. G at p. 2, §1), it was likely that NCS would have responsive records. In fact, the search by the Directorate of Intelligence and the Directorate of CIA Area identified information which "originated" with the National Clandestine Service.  Dorn Dec. at ¶ 43.  Further, Dorn herself is within NCS.  *Id*. at ¶ 1.

Likewise, the CIA identified information which "originated" with the Directorate of Science and Technology (DS&T). Dorn Dec. at ¶ 43.  In fact, all of the records offered to IPS by the CIA in

---

[2] If the CIA had tasked DS with a search for responsive records, perhaps the CIA would have searched for records related to FOIA request, F-2004-01528, the reference number the CIA assigned to Plaintiff's FOIA request, rather than FOIA reference number F-1999-00924. Dorn Dec. at ¶ 22 & Exh. C thereto.

June, 2004 were from the Foreign Broadcast Information Service, which was within the CIA's Directorate of Science and Technology as of the June, 2004 response date.  Paz y Mino Dec. at ¶10.  The CIA clearly abidicated its FOIA duty "to perform a search of all places it knew 'likely to turn up the information requested.'" *Valencia*, 180 F.3d at 327 [citation omitted].

    2.    <u>The CIA Information Act of 1984 Does Not Exempt the CIA from Searching for Responsive Records Within DS&T and NCS.</u>

The CIA Information Act of 1984 ("the CIA Act"), 50 U.S.C. section 431, does not exempt the CIA from searching for responsive records within DS&T or NCS.[3]  Defendant impermissibly applied the CIA Act overbroadly in this matter by omitting all NCS, DS&T and DS files from any FOIA search.  Further, Defendant erred in applying the CIA Act because the Director of the CIA did not claim any operational files exemption, because there has been no demonstration that DS&T and NCS "operational files" fall into any of the three specifically categorized files, because IPS' Request qualifies for the "special activity" exception to the CIA Act, and because .  Files withheld by defendant which contain only disseminated NCS intelligence are not exempt from search under the CIA Act.

    a.    <u>The CIA Act Does Not Exempt All DS&T, NCS and DS Files</u>.

50 U.S.C. § 431 does not permit the CIA to entirely exempt *all* DS&T, NCS and DS files from search.  Only "operational files" which are properly claimed, and for which there are otherwise no exceptions (as discussed *infra*) are exempt.  Here, Defendant entirely omitted any search of the DS&T and NCS files (Dorn Dec. at ¶ 44) and thus applied the CIA Act overbroadly.

---

[3]The CIA failed to conduct any search for responsive records within DS and does not claim an "operational file" exemption for this omission. Dorn Dec. at  ¶¶ 44–48.

      b.     <u>The Director of the CIA Failed to Explicitly Claim an "Operational Files" Exemption.</u>

The CIA Act does not grant Defendant an automatic exemption of its "operational files" from the records it must search.  *ACLU v. Dept. of Defense*, 351 F.Supp.2d 265, 271–72 (S.D.N.Y. 2005).  In order for the Agency to take advantage of the protections afforded by the CIA Act, the Director of the CIA must explicitly claim an exemption with respect to specifically categorized "operational files."  *Id.* at 272.  Here, Defendant has submitted no evidence that the Director of the CIA claimed such an exemption.  Dorn only states that "*CIA officers* also determined that any records that the DS&T or NCS potentially may have located would be found in DS&T and NCS operational files." Dorn Dec. at ¶ 48 (emphasis added). The CIA Act requires that the Director of the CIA—not "CIA officers"— explicitly claim the "operational files" exemption. *ACLU*, 351 F.Supp.2d at 271–72.  The CIA Act does not provide that the authority to claim such an exemption can be delegated. *Ibid*. Moreover, Dorn provides no foundation for her statement that the CIA officers determined NCS and DS&T responsive records would only be found in "operational files" or that the Director of the CIA delegated such authority to such CIA officers.[4] Without adhering to the statutory procedure for exempting operational files, the CIA may not claim that "operational files" warrant any protection from the requirements of FOIA. *Ibid*.

      c.     <u>The CIA Failed to Demonstrate that the "operational files" in DS&T and NCS Fall into Any of the Three Specifically Categorized Files.</u>

Even assuming that the Director of the CIA explicitly claimed the "operational file" exemption, the CIA nonetheless failed to *demonstrate* that the operational files in DS&T and NCS

---

[4] The CIA did not search "operational files" of the NCS, DS&T *or the Security Center*. Dorn Dec. at ¶ 48 (emphasis added).  Defendant does not explain to which directorate the term "Security Center" refers.  Further, neither the CIA Director nor any CIA officer claimed an operational files exemption for the "Security Center."  *Ibid*.

fall into any of the three specifically categorized "operational files" exemptions.  Under the CIA

Act, only three types of "operational files" are exempted:

> (1) files of the Directorate of Operations[5] which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information enxchanges with foreign governments or their intelligence or security services;
> (2) files of the Directorate for Science and Technology which document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems; and
> (3) files of Office of Personnel Security which document investigations conducted to determine the suitability of potential foreign intelligence or counterintelligence sources.

50 U.S.C. § 431(b)(1)–(3).  The Court conducts *de novo* review of the CIA's interpretation of the

scope of the "operational files" exemption, without affording the CIA any formal deference. *ACLU*,

351 F.Supp.2d at 269 [internal quotation marks omitted]; *Aftergood v. National Reconnaissance*

*Office*, 441 F.Supp.2d 37, 45–46 (D.D.C. 2006).

The CIA failed to demonstrate that the "operational files" in DS&T and NCS fall into any

of the three specifically categorized files.  The Dorn Declaration broadly claims that "[t]he DCI

exercised his authority under this statute and exempted specific operational files from FOIA," but

Defendant provides no foundation nor personal knowledge that the "specific operational files" were

(1) "intelligence" or "counterintelligence," (2) files of NCS or DS&T,  (3) related to this request,

or (4)  identified for exemption under 50 U.S.C. section 431(b)(1)–(3).  *See* Dorn Dec. at ¶ 48.

Instead, Dorn merely states that "the CIA did not search 'operational files' of the NCS, DS&T and

the Security Center [and] [t]his was entirely proper." *Ibid.*  At no point does the Dorn Declaration

even attempt to demonstrate that DS&T or NCS "operational files" fall into one of the three

---

[5] The Directorate of Operations has been subsumed into the National Clandestine Service. *See* CIA October 13, 2005 Press Release available at www.cia.gov/news-information/press-releases-statements/press-release-archive-2005/pr10132005.html

exempted categories provided in the CIA Act. *ACLU*, 351 F.Supp.2d at 272. Thus, the CIA's claim that the CIA Act covers NCS and DS&T operational files must be rejected and this Court should order a search of all responsive records.[6]

        d.      <u>IPS' Request Qualifies for the "Special Activity" Exception to the CIA Act.</u>

IPS qualifies for the "special activity" exception to 50 U.S.C. section 431(c)(2). In order to qualify under the "special activity exceptionion," the request must be construed in light of two basic concerns: (1) specificity and (2) secrecy. *Sullivan v. Central Intellgence Agency*, 992 F.2d. 1249, 1253 (1st Cir. 1993). Under the specificity prong, "a requestor must identify a particular CIA activity in connection with [the] request." *Ibid.* The Senate provided examples of the Bay of Pigs invasion or the CIA's role in replacement of the Guatemala regime in the 1950s as specific CIA activities. *Ibid.*, *citing* S.Rep. No. 305, at 24–25. The Senate also stated that a request for all CIA covert efforts to counter Soviet influence in Western Europe during the 1950s was too broad. *Ibid*.

IPS' request concerned a specific activity: documents which mention or relate to "PEPES," the *Perseguidos por Pablo Escobar*, and People Persecuted by Pablo Escobar, Pablo Escobar; and/or the death of Pablo Escobar. Paz y Mino Dec. at ¶ 4 & Exh. A thereto; Dorn Dec. at ¶ 22 & Exhibit B. This request is akin to the CIA's role in the overthrow if the Guatemalan government, as Los Pepes was a discrete operation with "a definitive beginning, an end and a circumscribed middle." *Sullivan*, 992 F.2d at 1254. For example, on February 1, 1993 Los Pepes (People Persecuted by Pablo Escobar)—a newly formed clandestine military organization—declared open war, in a communiqué, against Pablo Escobar. Paz y Mino Dec.at ¶ 24. After the death of Pablo Escobar the

---

[6] For DS&T, "operational files" pertain only to files "which document the *means* by which" intelligence is collected through scientific and technical systems. 50 U.S.C. § 431(b)(2) (emphasis added). Thus, the CIA Act only exempts the disclosure of DS&T's intelligence methods. *Ibid*

organization disbanded. *Ibid*. Likewise, "Pablo Escobar" and "the death of Pablo Escobar" are specific search terms that are limited to a definitive time period - the life and death of this one individual. Therefore, Plaintiff's request is specific in nature.

As to the secrecy prong, the "special activity" exception requires that the requested material not be exempt, which means that the material is unclassified or declassified. *Sullivan*, 992 F.2d at 1259. The CIA has never said that the documents in DS&T, NCS and DS are classified. Moreover, IPS specifically requested that the CIA provide unclassified and declassified documents. Paz y Mino Dec. at ¶13 & Exh. H ("If the documents include classified information and the volume of this material makes a lengthy declassification review necessary, [IPS] request[s] the segregation and prompt release of all elements of the documents portion-marked Unclassified or Declassified."). Thus, because IPS' request is both specific and unclassified, it qualified under the "special activity" exception to 50 U.S.C. section 431(c)(2), and the CIA must conduct a search of its files as requested.

     e.    <u>Files Withheld by Defendant Which Contain Only Disseminated NCS Intelligence Are Not Exempt from Search under the CIA Act.</u>

50 U.S.C. section 431(b)(3) states that "files which are the sole repository of disseminated intelligence are not operational files," and 50 U.S.C. section 431(d)(3) states that the exemption covering "operational files" does not protect certain "operational files" which are transferred from exempted operational files to other files and then transferred back. The CIA admits that "records *disseminated* by NCS were located during the searches conducted" by DI and DCIA.[7] Dorn Dec. at ¶ 48 (emphasis added). DI and DCIA were the only two directorates tasked with a search in this matter. *Id*. at ¶39. To the extent that NCS records located by DI and DCIA were originally from

---

[7] DI further "disseminates intelligence reports to policymakers in the United States Government." Dorn Dec. at ¶41. DCIA includes the Office of Public Affairs. *Id*. at ¶42.

files which were otherwise "exempted operational files," such disseminated NCS records have lost

their privilege under the CIA Act.

The burden rests with the federal agency to establish that it made a good faith effort to search for requested records, using methods which can reasonably be expected to produce the requested records. *Oglesby I*, 920 F.2d at 68. Here, the undisputed facts reveal the CIA did not make a good faith effort to search for responsive records within DS&T, NCS and DS, and the Court should order Defendant to search for records within these three directorates.

### D. The CIA Failed to Conduct an Adequate Search Because It Did Not Search For Documents Regarding Pablo Escobar.

The CIA failed to conduct an adequate search because it failed to search for documents that mention or relate to Pablo Escober. Plaintiff's FOIA request sought all records which, *inter alia*, mention or relate to Pablo Escobar or the death of Pablo Escobar. Paz y Mino Dec. at ¶ 4 & Exh. A thereto; Dorn Dec. at ¶ 22 & Exh. B. On June 29, 2004, the CIA informed IPS that it had previously searched using the search term "Escobar." Paz y Mino Dec. at ¶ 8 & Exh. B thereto; Dorn Dec. at ¶ 23 & Exh. C.[8] However, following the commencement of litigation, the CIA asserted the *Glomar* response based on Executive Order 12958 (Dorn Dec. at ¶49) and notified IPS that, with respect to that portion of IPS' request pertaining to Pablo Escobar, the CIA "can neither confirm nor deny the existence or nonexistence of records responsive to this portion of your request." Paz y Mino Dec. at ¶ 17 & Exh. K thereto; Dorn Dec. at ¶¶ 32 & Exh. J.

"An agency may refuse to confirm or deny the existence or nonexistence of requested information whenever the fact of its existence or nonexistence is itself classified. . . ." *Wolf v. CIA*,

---

[8] The CIA's initial response also violated FOIA by only releasing records related to the search terms "pepes" and "Escobar" rather than conducting a search using each of the five terms IPS requested. Paz y Mino Dec. at ¶ 8; Dorn Dec. at ¶ 23. Failing to conduct any search for three of five search terms was not reasonable given IPS' reasonable description of the records sought. *Truitt v. Department of State*, 897 F.2d 540, 542-545 (D.C. 1990).

473 F.3d 370, 374 (D.C. Cir. 2007). The CIA violated FOIA in not searching for records regarding Pablo Escobar as (1) its affidavit fails to support its claimed *Glomar* response, (2) the asserted reasons for the *Glomar* response are not plausible, and (3) information regarding Pablo Escobar has already been officially acknowledged.

>    1.    The Dorn Declaration Fails to Demonstrate That the Declarant Possesses Either the Required Classification Authority Or Personal Knowledge Such Authority Was Exercised.

When an agency asserts the *Glomar* response, "there are no relevant documents for the court to examine other than the affidavits which explain the Agency's refusal." *Id.* at 374, fn. 4 [citations omitted]. In the matter before this Court, the CIA's affidavit fails to support its claimed *Glomar* response. Dorn has neither been granted authority to claim that records related to the search term Pablo Escobar are classified, nor does she have personal knowledge that any person with such authority has made such a classification decision.

In *Wolf*, the CIA asserted a *Glomar* response and claimed FOIA Exemption 1 based on the classification criteria of Executive Order 12958. *Id.* at 373. Executive Order 12958 provides agency classification authority to the agency head or to "subordinate officials to whom such authority is delegated by an agency head in writing." *Id.* at 375, fn. 5 [citations omitted]. In *Wolf*, the record showed that the Director of the CIA delegated original classification, through an internal CIA memorandum, to the Director of Information Management. The Director of Information Management chaired the Agency Release Panel,[9] which makes final determinations regarding administrative appeals under FOIA. *Ibid*. In *Wolf*, the Agency Release Panel, chaired by the Director of Information Management, determined that the existence or nonexistence of records was

---

[9] By contrast, there is no evidence that the Agency Release Panel was ever involved in reviewing IPS' FOIA request.

classified.  In that case, the CIA provided the affidavit of Kathryn Dyer, the Agency's Information and Privacy Coordinator, in support of its *Glomar* response.  *Id.* at 373.  Kathyrn Dyer, as Information and Privacy Coordinator served as the Agency Release Panel Executive Secretary and thus her declaration reflected personal knowledge, obtained in her personal capacity, regarding the classified nature of the information requested by Wolf.  *Id.* at 375, fn. 5.  On that basis, the D.C. Circuit held that the Dyer affidavit adequately supported the agency's *Glomar* response.  *Id.* at 376–377.

In contrast, Marilyn Dorn is not the CIA's Information and Privacy Coordinator.  The Information and Privacy Coordinator is within DS.  Dorn Dec. at ¶¶ 14, 20.  Ms. Dorn is the Deputy Chief of the Policy and Community Action Staff within NCS.  *Id.* at ¶ 1.  Although Ms. Dorn claims that through the exercise of her official duties, she is familiar with "this civil action" based on information made available to her (*Id.* at ¶ 3), her Declaration contains no foundation demonstrating that she has personal knowledge regarding the required exercise of classification authority in regards to the requested information.  Likewise, there is no evidence before the Court that the Director of the CIA exercised his classification authority with respect to the requested records, nor that Dorn is a "subordinate officials to whom such authority [has been] delegated by an agency head in writing."  Dorn Dec. at ¶¶ 49, 58; *cf. Wolf*, 473 F.3d at 375, fn. 5.

Further, whereas in *Wolf* the CIA Director delegated classification authority in writing to the Director of Information Management regarding the requested records, here it was Ms. Dorn who determined that responsive CIA documents are exempt from release pursuant to E.O. 12958 (Dorn Dec. at ¶ 6) and that "all of the information withheld on the basis of FOIA exemption (b)(1) is within three categories of classified information" listed in E.O. 12958. Dorn Dec. at ¶ 58.

Because the Dorn Declaration fails to demonstrate either that the declarant possesses the

required classification authority or personal knowledge that such authority was properly delegated and exercised by someone else, Defendant's affidavit can not support the CIA's *Glomar* response. This Court should order the CIA to search for all records related to the search term Pablo Escobar.

2.     The CIA's Asserted Reasons for the *Glomar* Response Are Not Plausible.

For an agency's justification for invoking a FOIA exemption to be sufficient, the agency's claimed invocation of the exemption must appear logical or plausible. *Wolf*, 473 F.3d at 374–75, *citing Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982) and *Hayden*, 608 F.2d at 1388. Here, instead of providing plausible reasons for the CIA's *Glomar* response, the Dorn Declaration provides only two "examples" which are neither logical nor plausible. Dorn Dec. at ¶¶ 51–52.

First, the Dorn Declaration claims that if the CIA were to admit that it possesses intelligence information about Pablo Escobar, "he could take countermeasures to identify, if possible, and frustrate the methods in order to make his future activities undetectable by the CIA. If the foreign national's countermeasures are successful, the CIA loses its ability to monitor his activities. Moreover, others who may be collaborating with the foreign natioanl [sic] also will soon cease engaging in these detectable activities with similar results." Dorn Dec. at ¶ 51. The court may take judicial notice that Pablo Escobar died in 1993. *See also* Paz y Mino Dec. at ¶24 & Exh. N (CIA Document No. 1340582). A deceased Pablo Escobar can take no countermeasures to frustrate the CIA methods or make his future activities undetectable to the CIA. The CIA will not lose the ability to monitor Escobar's activities as he has none. Similarly, others who may have collaborated with Pablo Escobar ceased engaging with him upon his death. Given that Pablo Escobar died in 1993, the CIA's justification for invoking a FOIA exemption is not plausible and therefore the justification is insufficient.

Second, the Dorn Declaration claims that if the CIA were to admit that it does not possess information about Pablo Escobar, then "[t]he result of this admission is that [Pablo Escobar] would

21

know that his operational security practices have successfully defeated CIA intelligence methods and that he can act with impunity." Dorn Dec. at ¶ 52. Again, this justification is implausible as it is impossible for a dead man to successfully defeat CIA intelligence methods or act with impunity.

In contrast, in *Wolf* the Dyer affidavit explained that official confirmation or denial of the existence of records might allow "foreign intelligence services" (not the deceased) to more effectively implement countermeasures to intelligence gathering. *Wolf*, 473 F.3d at 373. Dyer also claimed that "acknowledgment of such records could upset diplomatic relations" with foreign governments. *Ibid*. This is plausible given that the *Wolf* request was for records regarding Jorge Eliecer Gaitan, a former Columbian presidential candidate who was assassinated. *Id*. at 372–73. Here, Dorn does not provide any such rationale. Finally, Dyer claimed that the CIA utilizes foreign nationals whose confidentiality needed to be protected years later. *Id*. at 376. No such claim is made by Dorn here.

In order to claim the *Glomar* response under E.O. 12958, the agency must not only have properly exercised authority to classify the records, but also must be able to identify or describe the damage. *Id.* at 375, *citing* 60 Fed. Reg. 19825, 19826 at § 1.2(a)(4) (April 17, 1995). Although national security declarations should be given substantial weight, deference is not equivalent to acquiescence. *Campbell,* 164 F.3d at 30. The implausible justifications in the Dorn Declaration stand in sharp contrast to those provided by the Dyer affidavit in *Wolf* and, therefore, fail to support the CIA's *Glomar* response. Therefore, this Court should order Defendant to search for all responsive records which mention or relate to Pablo Escobar.

       3.    <u>Information Regarding "Pablo Escobar" Has Already Been Officially Acknowledged by the CIA.</u>

The CIA's *Glomar* response is directly contradicted by the CIA's previous search and release

of records in response to IPS' FOIA request.  When information has been officially acknowledged, its disclosure may be compelled even over the agency's otherwise valid *Glomar* exemption claim. *Fitzgibbon v. CIA*, 911 F.2d 755, 756 (D.C. Cir. 1990).  Here the contradiction is so fundamental that the *Glomar* assertion appears invalid *ab initio*.

Defendant claims for the first time in litigation that it cannot search for records pertaining to Pablo Escobar because whether the CIA has gathered information on this specific person is a "classified fact."  Dorn Dec. ¶ 49. This assertion, however, is directly controverted by the CIA's previous public acknowledgment that it does have such records.  Specifically, in response to Plaintiff's June 1, 2004 FOIA request, the CIA initially informed IPS that it had previously conducted a search using the search term "Escobar" and released such records, and enclosed to IPS an index or "requestor report" of 254 documents generated by the CIA's search for the term "Escobar."[10]  Paz y Mino Dec. at ¶ 8 & Exh. D thereto; Dorn Dec. at ¶ 23 & Exh. C.

In addition, documents released to IPS and noted in the Vaughn Index before the Court also pertain to Escobar.  For example, Document 1340584 states, "Escobar probably believes only a sustained bombing campaign against upper-class targets will force the government to accept his accept his terms for surrender.  If he can muster the resources for such attacks, they might also intimidate presidential candidates and reinforce efforts to win support for decriminalizing narcotics."  Paz y Mino Dec., Exh P at p. 3.

By conducting a past FOIA search using the terms "Escobar," and by producing records to past FOIA requesters and to IPS regarding Pablo Escobar, the CIA has already acknowledged that it maintains records "pertaining to Pablo Escobar" and the fact of the existence of such records can

---

[10] Following the initiation of this action, the CIA conducted an additional search for records related to the death of "Pablo Escobar."  Dorn Dec. at ¶ 31.

not be classified.

For all these reasons, the CIA's litigation tact of a *Glomar* response should not stand, and this Court should order Defendant to conduct a search for all responsive records pertaining to Pablo Escobar.

## II.     THE CIA'S REFERRAL OF RECORDS TO OTHER AGENCIES VIOLATED FOIA BY SIGNIFICANTLY DELAYING DISCLOSURE OF RECORDS TO IPS.

The CIA's referral of records in its possession to other agencies violated FOIA as the CIA significantly increased the amount of time Plaintiff must wait to obtain responsive records. *McGehee*, 697 F.2d at 1110.  It is undisputed that the CIA's referral of records in its possession to other agencies has significantly delayed disclosure of the records to IPS.  Plaintiff requested records on June 1, 2004.  Paz y Mino Dec. at ¶ 4; Dorn Dec at ¶ 22. Initially the agency only released to IPS previously released documents using two of the five search terms IPS requested. Paz y Mino Dec. at ¶ 8; Dorn Dec. at ¶¶ 23, 36.  After litigation had been filed, the agency conducted a record search. Paz y Mino Dec., Exh. K; Dorn Dec. at ¶ 38.  It wasn't until December 15, 2006 that the CIA was able to state that it had completed a search for responsive records and had identified records that had been referred to the other agencies.  Paz y Mino Dec. at ¶17 & Exh. K;  Dorn Dec. at ¶31 & Exh. J.   These were "responsive documents *located in the CIA's files*," but which "contain[ed] information originated by the Department of Defense ('DOD'), Department of State ('DOS'), National Security Agency ('NSA'), and the Drug Enforcement Agency ('DEA')."  Paz y Mino Dec. at ¶17; Dorn Dec. at ¶ 7 (emphasis added).

To date IPS has received no records related to this FOIA request from these four (4) other agencies. Paz y Mino Dec. at ¶ 21.  Defendant did not forward the responsive documents to the DEA until on or after December 5, 2006. Little Dec. at ¶ 12.  This referral was two and a half years subsequent to Plaintiff's June 1, 2004 FOIA request.  DEA's processing of the referred records did

24

not even commence until December 12, 2006. *Id.* at ¶14.  Significantly, the DEA can provide no definite time for completion of its FOIA review.  *Id.* at ¶16. Given the CIA's delay in conducting its search and its decision to refer documents in its possession to other agencies, the DEA can not even commit to providing a declaration and Vaughn Index by August 31, 2007, but instead may simply file a "status report" on that date.  *Id.* at ¶18.  For the other three agencies—DOD, DOS and the NSA—neither the CIA nor the other agencies have even offered a response time for release of the records which the CIA had in its possession.  Paz y Mino Dec. at ¶ 21.

The CIA's delay in referring the search to other agencies also violates its own FOIA regulations, which  require the agency to forward responsive documents to other agencies within 20 days of completion of initial action. 32 C.F.R. §1900.22(b).  The CIA's  "initial action" was completed on June 29, 2004. Paz y Mino Dec., Exh. B;  Dorn Dec at ¶ 23 & Exh. C.  Thus, the CIA's referrals to DEA, DOS, DOD and the NSA were required by July, 2004.  32 C.F.R. § 1900.22(b).  However, the CIA did not forward the responsive records until December, 2006 at the earliest. Dorn Dec. at ¶ 31 & Exh. J. Defendant did not forward the responsive documents to DEA until on or after December 5, 2006—two and a half years subsequent to Plaintiff's June 1, 2004 FOIA request.  Little Dec. at ¶ 12.

"[W]hen an agency receives a FOIA request for 'agency records' in its possession, it must take responsibility for processing the request.  It cannot simply refuse to act on the ground that the documents originated elsewhere."  *McGehee*, 697 F.2d at 1110.  The case law is unequivocal that "*all records in an agency's possession, whether created by the agency itself or by other bodies covered by the Act, constitute 'agency records.*'" *Id*. at 1109 (emphasis in original).  It therefore does not matter which agency created the documents; the CIA possesses such records and therefore must release them.

25

The CIA's delay in processing of Plaintiff's request has significantly increased the amount of time Plaintiff will have to wait to obtain responsive records, and thus has resulted in the improper withholding of FOIA records in violation of FOIA. *McGehee*, 697 F.2d at 1110–12; *Peralta v. United States Attorney's Office*, 136 F.3d 169, 175 (D.C. Cir. 1998).

Here, the CIA violated FOIA and its own regulations by withholding records in its possession that originated with other agencies. This Court should enjoin Defendant to promptly release the withheld records.

## III.    THE CIA HAS IMPROPERLY WITHHELD DOCUMENTS BY BROADLY CLAIMING FOIA EXEMPTIONS WITHOUT SUFFICIENTLY DESCRIBING THE WITHHELD DOCUMENTS AND JUSTIFICATIONS.

Given FOIA's broad disclosure policy, the United States Supreme Court has "consistently stated that FOIA exemptions are to be narrowly construed." *United States Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988). District courts must review all exemption claims by an agency *de novo*, and the agency bears the burden of justifying its decision to withhold requested information. *King*, 830 F.2d at 217.

To win summary judgment on the issue of FOIA's exemptions, the "[g]overnment bears the burden of establishing that the exemption applies." *Department of Justice v. Landano*, 508 U.S. 165, 171 (1993). The government must file affidavits and a "Vaughn Index" to enable the court to perform this *de novo* review of the government's classification decision. *Vaughn*, 484 F.2d at 827; *Coldiron v. United States Dep't of Justice*, 310 F. Supp. 2d 44, 46 (D.D.C. 2004). The supporting affidavit must contain sufficient detail to forge the "logical connection between the information withheld and the claimed exemption." *Oglesby II*, 79 F.3d at 1178 [citation omitted]. Included in the Vaughn Index must be (1) a description of each document being withheld, and (2) an explanation of the reason for the agency's nondisclosure. *Id*. at 1176 [citation omitted]. The index must provide

"as much information as possible without thwarting the [asserted] exemption's purpose." *King*, 830 F.2d at 224.

A district court may award summary judgment to an agency invoking exemptions *only if* the agency affidavits describe both the documents withheld and the justifications for nondisclosure with sufficient detail and specificity to demonstrate that material withheld is logically within the domain of the exemption claimed, and the affidavits are neither controverted by contrary record evidence nor impugned by bad faith on the part of the agency. *Id.* at 217 (emphasis added).

The CIA has produced a nine (9) page Vaughn Index with each page of the Vaughn Index addressing a different document. Dorn Dec., Exh. A. One document was entirely withheld, the rest were partially released. *Ibid*. The CIA claimed that all of the documents fall within FOIA exemption (b)(1) and (b)(3). *Ibid*. The CIA also claimed exemption (b)(2) for one of the partially released documents. For the document entirely withheld, the CIA claimed exemptions (b)(1), (b)(2),(b)(3), (b)(6) and (b)(7)(e). *Ibid*. IPS does not seek release of the CIA employee names and internal information, cryptonyms and pseudonyms, administrative routing notations, dissemination control markings or medical information which the CIA claims is exempt. Paz y Mino Dec. at ¶ 25.

Here, IPS is entitled to summary judgment and Defendant's motion should be denied as the undisputed facts demonstrate that (1) the Dorn Declaration is controverted by contrary record evidence as the Vaughn Index solely discuss a different FOIA request, (2) the CIA omitted from its Vaughn Index all records which the CIA possesses but referred to other agencies, (3) the CIA failed to adequately describe the redacted material and sufficiently explain how disclosure of the redacted material would likely impair national security (*King,* 830 F.2d at 220–21), and (4) neither the Dorn Declaration nor the Vaughn Index provide any discussion of Document No. 1339991, which is a

twenty-four (24) page document that was provided to IPS with all but two paragraphs redacted. [11]

**A.    The CIA's Affidavit is Controverted by Contrary Record Evidence as The Vaughn Index Solely References a Different FOIA Request.**

A district court may award summary judgment to an agency invoking exemptions only if its affidavit is not controverted by contrary record evidence nor impugned by bad faith on the part of the agency. *King*, 830 F.2d at 217. The Dorn Declaration is controverted by contrary record evidence as each page of the CIA's Vauhgn Index solely references FOIA request F-1999-00924 (Dorn Dec., Exh. A), which is different than F-2004-01528—the reference number the CIA assigned to IPS' FOIA request. Dorn Dec. at ¶ 22 & Exh. C ("For identification purposes we have assigned [IPS'] request the number referenced above [F-2004-01528]. Please refer to this number in future correspondence.")

The CIA retrieves records based on the identifying number it assigns to the request. 32 C.F.R. §§ 1901.02(n), 1901.12. Because the CIA's Vaughn Index does not even reference the FOIA request at issue here, it can not serve its purpose of describing the records withheld. Instead, Defendant's claim that it conducted a "new" search and that "all reasonable efforts were made to identify and retrieve any records responsive to Plaintiff's FOIA request" (Dorn Dec. at ¶ 40) is contradicted by the Vaughn Index, which only includes documents responsive to some other FOIA request, *i.e.*, F-1999-00924.

**B.    The CIA Failed to Adequately Describe Which Portions of the Records are Exempt from Disclosure and Sufficiently Justify Why the Claimed Exemptions are Relevant.**

Once the agency identifies a document that it believes falls within an exemption, the Vaughn

---

[11] Once the Court orders Defendant to conduct an adequate search and produce an adequate Vaughn Index in conjunction with this search, the Court should conduct an in camera review of the documents withheld in whole and in part to determine if the materials withheld logically fall within the CIA's claimed exemptions. *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977).

Index and supporting affidavit must include a "segregability analysis," explaining "in detail" which portions of the document are disclosable and which are allegedly exempt. *Vaughn*, 484 F.2d at 827. An agency should provide a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *King*, 830 F.2d at 224 [quotation omitted]. "A submission that does not do that does not even qualify as a 'Vaughn Index.'" *Schiller v. NLRB*, 964 F.2d 1205, 1210 (D.C. Cir. 1992).

The purpose of the Vaughn Index and supporting affidavit is to produce the information necessary for the requester to challenge—and a court to conduct a meaningful review of—the claimed exemptions. The Vaughn Index and accompanying affidavits must:

(1) identify the document by type and location in the body of documents requested;
(2) note [the exemption] claimed;
(3) describe the document withheld or any redacted portions thereof, disclosing as much information as possible without thwarting the exemption's purpose;
(4) explain how this material falls within one or more of the categories of classified information authorized by the government executive order; and
(5) explain how disclosure of the material in question would cause the requisite degree of harm to national security.

*King*, 830 F.2d at 222.

The Vaughn Index and supporting declaration both fail to adequately describe the redacted portions of the documents the CIA has withheld from IPS and also fail to adequately justify their withholding.

      1.    <u>The Vaughn Index Does Not Provide the Required Description of the Withheld Portions Nor Sufficiently Justifies Their Withholding.</u>

The Vaughn Index does not provide the required segregability analysis. *Vaughn*, 484 F.2d at 825. For seven of the nine documents referenced as partially released in the CIA's Vaughn Index, there is not an adequate description of the withheld portions of the documents nor any attempt to

specifically tie the withheld portions to an exemption. Specifically, the Vauhgn Index is inadequate in regards to Documents Nos. 1340582, 1340583, 1340584, 1340585, 1340586, 1391030, and 1397243. Dorn Dec., Exh. A.; Paz y Mino Dec., Exhs. N–T.

For each of these "partially released" documents, the Vauhgn Index concludes with a boilerplate recitation of claimed exemptions without correlating those claims with the particular part of the withheld document to which they apply. *King*, 830 F.2d at 224. In fact, for these seven documents the Vaughn Index does not reference anything about the withheld portions of the documents. Dorn Dec., Exh. A.; Paz y Mino Dec., Exhs. N–T. In so doing, the Vaughn Index fails to explain "how" the redacted material falls within one or more of the categories of classified information and fails to explain how disclosure of the material would cause the requisite degree of harm. *Id.* at 222. A Vaughn Index and supporting affidavit "cannot support summary judgment if they are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Id.* at 219; *Nation Magazine*, 71 F.3d at 890. The CIA is required to correlate the theories of exemptions with the particular textual segments which it desired to exempt (*Schiller*, 964 F.2d at 1209–10), yet this Vaughn Index does not even attempt to tie the alleged exemptions to particular portions of the document.

Here, the Vaughn Index is also inadequate for failure to describe the withheld portions of the document for the following documents:

Document No. 1340582

The Vaughn Index only discusses the one paragraph released from this document and entirely fails to describe the remainder of this 3 page document, all of which was withheld. *See* Dorn Dec., Exh. A; *cf* Paz y Mino Dec., Exh. N.

Document Nos. 1340583, 1340584, 1340585, 1340586

The Vaughn Index only discusses non-responsive portions related to activities in other countries, which Plaintiff does not contest. However, the CIA releases redacted portions related to Columbia which it deems "responsive to Plaintiff's request," but the Vaughn Index fails to describe the redacted portions related to this responsive portion of the request. *See* Dorn Dec., Exh. A; *cf* Paz y Mino Dec., Exhs. O–R.

Document Nos. 1391030, 1397243

The Vaughn Index fails to describe the redacted portions of these documents, describing only the released portions of the documents. *See* Dorn Dec., Exh. A; *cf* Paz y Mino Dec., Exhs. S–T.

Failure to identify the allegedly exempt portions of the documents violates FOIA. *Vaughn*, 484 F.2d at 827.

2. The CIA's Affidavit Does Not Provide the Required Description of the Withheld Portions Nor Sufficiently Justifies Their Withholding.

The Dorn Declaration does not rectify the omissions of the Vaughn Index. The CIA discusses the exemptions it claims beginning on page 25 of the Dorn Declaration. *See* Dorn Dec. ¶¶ 56–108. Nowhere does the Dorn Declaration contain any specific reference to the documents produced or portions withheld. *Ibid*. The Dorn Declaration does not even reference any of the document numbers released here (*i.e.*, Documents Nos. 1340582, 1340583, 1340584, 1340585, 1340586, 1391030, and 1397243 are not mentioned by Dorn). *Ibid*. Courts have rejected agency affidavits which fail to refer to specific passages therein. *Schiller*, 964 F.2d at 1209.

Moreover, the Dorn Declaration fails to draw any connection between the documents at issue and the exemptions the CIA claims, as required by law. *Campbell*, 164 F.3d at 30. Thus, the affidavit fails to justify how disclosure of the redacted portions might be exempt. The CIA's

31

response to "Intelligence Sources" as exempt under FOIA Exemption 1 provides a good example.

Dorn broadly states that "certain information regarding intelligence sources was withheld because intelligence sources can be classified under E.O. 12958, and thus are exempt from disclosure based upon Exemption (b)(1)," but offers no explanation why the redacted portions of the records at issue in this matter are classified as intelligence sources under E.O. 12958. Dorn Dec. at ¶¶ 59–60.

Likewise, in discussing intelligence methods, Dorn states generally that "Intelligence methods must be protected in situations where a certain capability or technique, or the application thereof, is unknown to those individuals or entities that would take countermeasures." Dorn Dec. at ¶ 66. However, the Dorn Declaration provides no explanation of how this exemption specifically applies to the redacted documents provided to IPS. *Ibid*.

When discussing intelligence activities (*Id*. at ¶¶ 71–74), as well as foreign government information (*Id*. at ¶¶ 86–91), the Dorn Declaration provides a general explanation , but entirely fails to demonstrate that the redacted material is properly exempted. Dorn Dec at ¶¶ 71–74 & 86–91.

This Dorn "boilerplate" makes no effort "to tailor the explanation to the specific document withheld." *Wiener v. FBI*, 943 F.2d 972, 978–79 (9th Cir. 1991), *cert. denied*, 505 U.S. 1212 (1992). Therefore, the Dorn Declaration's conclusory assertion that  material is exempt and nonsegrable is insufficient to support nondisclosure. *Campbell*, 164 F.3d at 30–31.  "[A]n entire document is not exempt merely because an isolated portion need not be disclosed. Thus the agency may not sweep a document under a general allegation of exemption, even if that general allegation is correct with regard to part of the information." *Vaughn* 484 F.2d at 825.

In most cases,  the agency should not have difficulty describing the context and nature of the withheld information without revealing its substance. *Campbell*, 164 F.3d at 31.  However, the Dorn Declaration neither adequately describes the portions of the documents withheld here by the CIA, nor explains with sufficient specificity to enable meaningful review how disclosure should be

exempt.

A Vaughn Index and supporting affidavit "cannot support summary judgment if they are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *King*, 830 F.2d at 219; *see also, Nation Magazine*, 71 F.3d at 890. While declarations in the context of national security should be given substantial weight, deference is not equivalent to acquiescence. *Campbell,* 164 F.3d at 30. The declaration may justify summary judgment only if it is sufficient "to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Ibid.* Here, the Dorn Declaration is conclusory, as it merely discusses the relied upon portions of the statute and attendant policy considerations. Dorn Dec. at ¶¶ 56–108. Therefore, Defendant has failed to meet its burden to adequately describe and justify its claimed exemptions.

**C.     The Vaughn Index Omits All Records Which the CIA Possesses but Referred to Other Agencies.**

When an agency withholds information pursuant to a FOIA exemption, the Vaughn Index must describe records withheld by the agency. *Vaughn*, 484 F.2d at 826–28. For "some of the responsive documents located in the CIA's files [which] contain information originated with Department of Defense (DOD), Department of State (DOS), National Security Administration (NSA) and the Drug Enforcement Agency (DEA)," the CIA "coordinated these documents with DOD, DOS, NSA and DEA" and "[c]ertain information was determined by DOD, DOS, NSA and DEA to be exempt from release." Dorn Dec. at ¶7. Dorn notes the determination of NSA regarding FOIA Exemptions 1 and 3, but not the specific determinations of DOD, DOS or DEA regarding what documents or portions of documents should be withheld. Dorn Dec. at p. 4, fn. 2. However, it appears the CIA did not release these responsive records in whole or in part. More importantly, the CIA's Vaughn Index neither described the withheld documents nor justified the redactions and

34

withholdings by referencing the determinations of the DOD, DOS, NSA and DEA as required by law.  Dorn Dec., Exh. A.

Further, prior to referring one document to DEA, the CIA determined that information was exempt from release.  Dorn Dec. at ¶9.  Rather than include a description of the record and a justification for its non-disclosure in its Vaughn Index as required by law, the CIA inexplicably deferred the required description to the DEA's Vaughn Index and Declaration.  *Ibid*.  As explained *supra*, given the CIA's delay in conducting its search, the DEA can not even commit to providing a declaration and Vaughn Index by August 31, 2007, but instead may simply file a "status report" on that date.  Little Dec. at ¶18.  The CIA's failure to include a description and justification of the records in its possession, but for which it and other agencies had determined were exempt, was a violation of the required Vaughn Index procedure.

> **D.     The Dorn Declaration and the Vaughn Index Are Inadequate as Neither Discuss Document No. 1339991.**

Neither the Dorn Declaration nor the Vaughn Index provide any discussion of Document No. 1339991, a twenty-four (24) page document that was provided to IPS with all but two paragraphs redacted.  Paz y Mino Dec., Exh. L; Dorn Dec., Exh. A.  Because there is no discussion of this document, there is no justification for non-disclosure of over twenty-three (23) pages of redacted material.  In the absence of any discussion of Document No. 1339991, it is impossible for the CIA to demonstrate that the information withheld logically falls within the purview of any FOIA Exemption.  Further, it is impossible for either IPS or this Court to determine how disclosure of the redacted portions would likely impair national security.  *King*, 830 F.2d at 220.  Clearly, the CIA has not met its burden.  *Id.* at 221.

## IV.     PLAINTIFF IS ENTITLED TO DECLARATORY RELIEF.

Plaintiff is entitled to a declaratory judgement that Defendant violated FOIA by (1) failing

to respond to Plaintiff's FOIA appeal within 20 business days of filing the appeal, and (2) failing to follow the proper procedure with respect to Plaintiff's request for a public interest waiver of fees associated with release of the requested records.

The Declaratory Judgment Act authorizes federal courts to award declaratory relief where, as here, there is an "actual controversy." 28 U.S.C. § 2201.  To establish an "actual controversy" for purposes of a declaratory judgment, there must be "a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) [citation omitted].  Although FOIA provides a remedy to enjoin the agency from withholding agency records and for fee waivers denied  (5 U.S.C. §§ 552(a)(4)(A)(vii) & 552(a)(4)(B)), the Declaratory Judgment Act grants this Court authority to provide additional remedies to redress the CIA's procedural violations.

### A.    Plaintiff Is Entitled to Declaratory Relief for the CIA's Failure to Respond to Plaintiff's FOIA Appeal Within 20 Business Days of Filing the Appeal.

FOIA requires an agency to "make a *determination* with respect to any appeal within twenty days. . . after the receipt of such appeal." 5 U.S.C. §§ 552(a)(6)(A)(ii) (emphasis added); *Consumer Product Safety Commission et al. v. GTE Sylvania*, 447 U.S. 102, 121 (1980).  The CIA has never made a determination on Plaintiff's administrative appeal.  Paz y Mino Dec. at ¶ 20.  Plaintiff is entitled to declaratory relief that the CIA violated FOIA in failing to process IPS' administrative appeal and that the agency's appeal regulations violate FOIA.

#### 1.    There Is an Actual Controversy of Sufficient Immediacy to Warrant Declaratory Relief.

Because the CIA's response to IPS' June 1, 2004 FOIA request was only to release previously released records using the search terms "pepes" and "Escober," on October 13, 2004 IPS

filed its administrative appeal. Paz y Mino Dec. at ¶ 11 & Exh. F thereto. The CIA claims to have received the appeal on October 20, 2004. Dorn Dec. at ¶ 25 & Exh. E. thereto. Even so, the CIA's determination of the merits of the appeal was required no later than November 9, 2004—20 days after the CIA received the appeal. 5 U.S.C. §§ 552(a)(6)(A)(ii). It is undisputed that the CIA has never responded to IPS' appeal. Paz y Mino Dec. at ¶ 20; Answer at ¶45 ("Defendant. . . admit[s] that as of the date the Complaint was filed, CIA had not responded to IPS' October 13, 2004 appeal.")

There is a substantial controversy between the parties with respect to Defendant's violation of 5 U.S.C. section 552(a)(6)(A)(ii). Plaintiff claims that the CIA violated FOIA's response deadline by failing to make a determination on Plaintiff's October 13, 2004 administrative appeal within 20 business days. Complaint at ¶ 57. Defendant denies that its failure to respond to Plaintiff's appeal within 20 business days violated FOIA's response deadline. Answer to Supplemental Complaint at ¶ 57.[12]

In addition, there is an immediate need for such relief because of IPS' pending and future FOIA requests to the CIA. On May 9, 2007, IPS filed another FOIA request to the CIA. Paz y Mino at Dec. ¶ 22. The CIA has refused to disclose any documents and IPS has filed an administrative

_____

[12] This controversy exists despite repeated attempts by IPS to resolve this issue administratively prior to filing suit. IPS' October 13, 2004 administrative appeal specifically requested a reply to the appeal "within the requisite 20 day time limit" and cited 5 U.S.C. § 552 (a)(6)(A)(ii). Paz y Mino Dec., Exh. F; Dorn Dec., Exh. D. The CIA responded not by making a determination, but by informing IPS that it should expect a delay. Paz y Mino at ¶ 12 & Exh. G thereto; Dorn Dec. at ¶ 25 & Exh. E. By letter dated February 16, 2005 IPS again reminded the CIA that more than 20 days had elapsed, urged an immediate response to its appeal, and requested the documents be released as they became available without waiting for all documents to be assembled. Paz y Mino Dec. at ¶ 13 & Exh. H thereto; Dorn Dec., Exh. F. By letter dated April 6, 2005 IPS again wrote to the CIA, urging resolution of this matter and cautioned that if "the CIA does not respond to this FOIA appeal by promptly conducting a thorough search of its records and releasing the requested documents free of charge, IPS will have to consider its judicial remedies." Paz y Mino Dec. at ¶ 14 & Exh. I thereto; Dorn Dec, Exh. G.

appeal. *Ibid*. In addition, IPS has plans to file future FOIA request. *Id*. at ¶ 23. Because there is a substantial controversy about Defendant's FOIA obligations and because there is immediate need for the Court to clarify the agency's duties, this Court should provide the declaratory relief requested by Plaintiff, as such relief will protect Plaintiff from repeated actions by the CIA in response to pending and future IPS FOIA requests and administrative appeals.

2.      Declaratory Relief Is Necessary Because the CIA's FOIA Appeal Policy Has Affected and Will Continued to Affect Plaintiff's Interest.

Plaintiff also challenges Defendant's ongoing policy of failing to adequately respond to administrative appeals within 20 business days. First Supplemental Complaint at ¶ 70. Under FOIA, an agency "*shall*. . . make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal." 5 U.S.C. § 552(a)(6)(A)(ii) (emphasis added).[13] In contrast, the CIA's FOIA regulations at 32 C.F.R. section 1900.42(e) state that the CIA only " *attempt to* complete action on an appeal within twenty (20) days of the date of receipt." This is exactly what happened here—Defendant relied on "the high volume of appeals awaiting completion" to never make a determination on IPS' appeal. Paz y Mino Dec., Exh. G. The CIA's administrative appeal regulation directly conflicts with FOIA's statutory requirement. In the absence of declaratory relief, Defendant's improper regulation will be applied to IPS' pending and future FOIA requests to the CIA. Paz y Mino Dec. at ¶ 22–23. Therefore,

_____

[13] The time limits for agency determination on FOIA appeals may only be extended for unusual circumstances. 5 U.S.C. § 552(a)(6)(B)(i). "Unusual circumstances" are defined by statute and do not include a backlog of appeals. *Id*. at §552(a)(6)(B)(iii). The agency must provide written notice to the FOIA requestor "setting forth the unusual circumstances for such extension *and* the date on which a determination is expected to be dispatched." *Id*. at §552(a)(6)(B)(i) (emphasis added). In any case, "[n]o such notice shall specify a date that would result in an extension for more than ten working days." *Id.* at §552(a)(6)(B)(i). All of this is academic here, however, as the CIA set forth neither unusual circumstances nor the date when a determination would be dispatched. Paz y Mino Dec., Exhs. G & J.

declaratory relief is appropriate here.

**B.     Plaintiff Is Entitled to Declaratory Relief for CIA's Denial of IPS' Request for a Public Interest Fee Waiver.**

FOIA requires that "[d]ocuments shall be furnished without any charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 32 C.F.R. § 1900.13(b)(2); *see also  Prison Legal News v. Lappin*, 436 F.Supp.2d 17, 23 (D.D.C. 2006).

There is a substantial controversy between the parties with respect to Plaintiff's entitlement to a waiver of all fees pursuant to FOIA's "public interest exception." While Plaintiff alleges that "the CIA improperly denied IPS' July 1, 2004 request for a public interest waiver of fees, and so violated the fee waiver provision of FOIA," Defendant denies this allegation.   Supplemental Complaint at ¶ 59; Defendant's Answer to Supplemental Complaint at ¶ 59.

In an action regarding the waiver of fees under FOIA, the court must determine the matter *de novo* and the court's review of the matter is limited to the record before the agency."  5 U.S.C. § 552(a)(4)(A)(vii).  Plaintiff requested a waiver of all fees in connection with its June 1, 2004 FOIA request.  Paz y Mino Dec., Exh A; Dorn Dec., Exh. B.  IPS stated that the request was for non-commercial use and that IPS is a non-profit organization. *Ibid*.  FOIA's fee waiver provisions were intended specifically to facilitate access to agency records by nonprofit public interest groups, which utilize FOIA to monitor and mount challenges to governmental activities. *See Better Government Ass'n v. Department of State*, 780 F.2d 86, 89 (D.C. Cir. 1986).  FOIA is to be liberally construed in favor of waivers for noncommercial requesters. 132 Cong. Rec. S14298 (Sept. 30, 1986).  In addition, IPS stated that "disclosure of the information in this request is in the public interest since release to us of these records, which directly relate to U.S. policy on Columbia, is

likely to

contribute significantly to public understanding of the operations or activities of the U.S. government in Columbia.  Paz y Mino Dec., Exh. A;  Dorn Dec., Exh. B.

Defendant denied Plaintiff's fee waiver request.  Paz y Mino Dec. at ¶ 9 & Exh. B thereto; Dorn Dec. at ¶23 & Exh. C.  The CIA stated that IPS would be charged for reproducing records in excess of the first 100 pages, attached the agency's fee schedule, and informed IPS that checks must be made payable to the United States Treasurer.  Paz y Mino Dec., Exh. B; Dorn Dec., Exh. C. Defendant did not claim that IPS had failed to satisfy FOIA's requirements for entitlement to a public interest fee waiver nor that the CIA had conducted the required fee waiver analysis. *Ibid*.

On April 6, 2005, Plaintiff provided the CIA twelve (12) pages of additional information to consider as part of the CIA's denial of IPS' fee waiver request.  Paz y Mino Dec., Exh. I; Dorn Dec., Exh. G.  This information explained why IPS was entitled to a full waiver of document fee requirements pursuant to 5 U.S.C. section 552(a)(4)(A)(iii).  *Ibid*.  Plaintiff addressed (1) the subject of the request, (2) the informative value of the information to be disclosed, (3) the contribution to general public understanding, (4) the significance of the contribution to public understanding, (5) the existence of a commercial interest, and (6) the magnitude of a commercial interest.  *Ibid*.  These are the same six factors which the CIA's FOIA regulations require the agency to consider.  32 C.F.R. § 1900.13(b)(2)(i)–(vi).  Clearly, IPS established that it did not have a commercial interest and that disclosure was in the public interest.  *Lappin*, 436 F.Supp. at 23.  When the CIA acknowledged receipt of IPS' April 6, 2005 correspondence, it made no mention of conducting a fee waiver analysis.  Dorn Dec. at ¶28 & Exh. H thereto.

Thus, the CIA did not justify the denial of IPS' requested fee waiver.  5 U.S.C. § 552(a)(4)(B); *see also*, *e.g., Ettlinger v. F.B.I.*, 596 F. Supp. 867, 874–75 (D. Mass. 1984).  There is an immediate need for this Court to issue a declaratory judgment on this issue. *Maryland Cas.*,

312 U.S. at 273. IPS has other FOIA fee waiver requests pending with the CIA, including the fee waiver request dated May 9, 2007. Paz y Mino Dec. at ¶ 22. The CIA has already denied that fee waiver request and an administrative appeal has been filed by IPS. *Ibid*. IPS also plans to file other FOIA fee waiver requests in the future. *Id*. at ¶ 23.

Therefore, this Court should provide the declaratory relief requested by Plaintiff, as such relief will protect Plaintiff from repeated actions by Defendant as to IPS pending and future fee waiver request.

## V.     THE CIA VIOLATED THE ADMINISTRATIVE PROCEDURE ACT BY FAILING RESPOND TO FOIA APPEALS IN A TIMELY MANNER.

Plaintiff is entitled to Summary Judgment as to its APA claims, as the APA provides a cause of action to redress Defendant's undisputed procedural violations of FOIA's statutory mandates. 5 U.S.C. §§704, 706(1); *Office of Foreign Assets Control, United States Dep't of the Treasury v. Voices in the Wilderness*, 382 F.Supp.2d 54, 59–61 (D.D.C. 2005.) A reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or *otherwise not in accordance with law*." *Id.*, *citing* 5 U.S.C. § 706(2)(A)(emphasis added). The APA also authorizes a reviewing court to set aside agency actions which are undertaken "without observance of procedure required by law." 5 U.S.C. § 706(1).

For the reasons stated above, Defendant contravened FOIA by inadequately searching for records requested by IPS and by failing to respond to Plaintiff's October 13, 2004 administrative appeal within the time frame established by FOIA. Based upon the undisputed facts, Plaintiff is entitled to summary judgment on its APA claims as a matter of law.

## CONCLUSION

For all of the set forth above, and the supporting materials, exhibits and declarations described herein, this Court should grant Plaintiff's Motion for Summary Judgment and deny

Defendant's Motion for Summary Judgment.

DATED: June 13, 2007                    RESPECTFULLY SUBMITTED,

/S Brian Gaffney                        /S/ Andrea Ferster
Brian Gaffney (pro hac vice)            Andrea C. Ferster (#384648)
Matt McFarland (pro hac vice)           Attorney at Law
LAW OFFICES OF BRIAN GAFFNEY            1100 17th Street, N.W. 10th Floor
605 Market St., Suite 505               Washington, D.C. 20036
San Francisco, CA 94105                 Telephone: (202) 974-5142
Telephone: (415) 442-0711               Facsimile: (202) 331-9680
Facsimile: (415) 442-0713