**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INSTITUTE FOR POLICY STUDIES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06-CV-00960 |
| ) | |
| UNITED STATES CENTRAL ) | |
| INTELLIGENCE AGENCY ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**
[Local Civil Rules 7.1(h) and 56.1]

Pursuant to LCvR 7.1(h) and LCvR 56.1, Plaintiff Institute for Policy Studies ("IPS") submits this statement of material facts.

1. On June 1, 2004, pursuant to the Freedom of Information Act (FOIA), Plaintiff Institute for Policy Studies ("IPS") requested from Defendant Central Intelligence Agency ("CIA"), "All records which mention or relate to the Colombian organization known as the 'PEPES' or the Perseguidos por Pablo Escobar, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar." Declaration of Paul Paz y Mino ("Paz y Mino Dec.") at ¶ 4 & Exhibit A thereto; Declaration of Marilyn A. Dorn ("Dorn Dec.") at ¶ 22 & Exhibit B thereto.

2. IPS' June 1, 2004 FOIA request included a request for "waiver of all fees in connection with this request," and the request described why IPS is entitled to a fee waiver pursuant to 5 U.S.C. section 552(a)(4)(A)(iii). Paz y Mino Dec., Exh. A; Dorn Dec., Exh. B.

3. IPS' June 1, 2004 FOIA request was not requested for any commercial or economic interest. Paz y Mino Dec., Exhs. A & I; Dorn Dec., Exhs. B & G.

4. IPS' June 1, 2004 FOIA request did not mention or reference the term "F-1999-00924." Paz y Mino Dec. at ¶ 5 & Exh. A thereto. Dorn Dec., Exh. B.

5. By letter dated June 29, 2004, the CIA acknowledged that it received IPS' request and the CIA responded that it was providing "previously released records" that were "located in a search conducted on behalf of a previous requester" using the search terms "pepes" and "Escober." Paz y Mino Dec. at ¶ 8 & Exh. B thereto; Dorn Dec. at ¶ 23 & Exh. C. The CIA did not state that it had conducted a search for records in response to IPS' FOIA request. *Ibid.* The CIA stated some of the documents in its attached indices "may not be relevant" to IPS' request. *Ibid.* The CIA did not state when such records were previously released. *Ibid.* The CIA also stated that it had "determined that [IPS'] request falls into the 'educational and non-commercial scientific institution fee category'" and that IPS would be charged at ten cents per page for pages in excess of the first 100 pages. Paz y Mino Dec., Exh. B; Dorn Dec., Exh. C. The CIA enclosed a fee schedule and two indices generated by this limited search. Paz y Mino Dec., Exh. B, K; Dorn Dec., Exh. C.

6. All of the records offered to IPS by the CIA in June, 2004 were from the Foreign Broadcast Information Service, which was within the CIA's Directorate of Science and Technology as of the June, 2004 response date. Paz y Mino Dec. at ¶10.

7. The CIA assigned Plaintiff's FOIA request the reference number F-2004-01528. Paz y Mino Dec., Exh. B; Dorn Dec. at ¶ 22 & Exhibit C.

8. The CIA's "initial action" was completed on June 29, 2004. Paz y Mino Dec., Exh. B; Dorn Dec., Exh. C.

9. On October 13, 2004, IPS appealed the CIA's response to its June 1, 2004 FOIA request. Paz y Mino Dec. at ¶ 11 & Exh. F thereto; Dorn Dec., Exh. D. IPS appealed the adequacy

of the CIA's search on the grounds that the CIA had only searched its database of previously released documents. *Ibid*. IPS also appealed the CIA's failure to identify all documents withheld and the reasons for non-disclosure. *Ibid*. IPS' appeal letter specifically requested a reply to the appeal "within the requisite 20 day time limit." *Ibid*.; Dorn Dec. at ¶ 24.

10. By correspondence dated November 30, 2004, the CIA referenced number F-2004-01528 and informed IPS that it had received IPS' October 13, 2004 appeal on October 20, 2004, had accepted IPS' appeal and would arrange for the Agency Release Panel to consider the appeal. Paz y Mino Dec. at ¶ 12 & Exh. G thereto; Dorn Dec. at ¶ 25 and Exhibit E. The CIA stated that—because of the high volume of appeals awaiting completion—IPS should expect a delay in the processing of its appeal. *Ibid*.

11. On February 16, 2005, IPS again wrote to the CIA referencing number F-2004-01528 and requesting an immediate response to its FOIA appeal. Paz y Mino Dec. at ¶ 13 & Exh. H thereto; Dorn Dec. at ¶ 26 and Exhibit F. In this letter, IPS informed the CIA that it had received no follow-up information regarding the status of its FOIA appeal or the Agency Release Panel's decision. *Ibid*. IPS stated that well over 20 work days had passed since the CIA's November 30 letter. *Ibid*. IPS requested that the CIA disclose the requested documents as they become available, without waiting until all the documents have been assembled. *Ibid*. IPS specifically requested that the CIA provide unclassified and declassified documents. *Ibid*.

12. On April 6, 2005, IPS sent the CIA's Agency Release Panel and the Information and Privacy Coordinator a letter urging immediate resolution of this matter and providing the CIA with additional information to consider with respect to IPS' FOIA appeal. Paz y Mino Dec. at ¶ 14 & Exh. I thereto; Dorn Dec., Exh. G. In the April 6, 2005 letter, IPS—by and through its legal

counsel—stated that IPS was appealing the CIA's response to the June 1, 2004 FOIA request on the grounds that (1) the CIA should not have limited its search to previously released documents; (2) the CIA should have searched for all records which mention or relate to the Colombian organization known as the "PEPES" or the Perseguidos por Pablo Escobar, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar and should not have limited its search to pepes and Escobar; and (3) the CIA should not have limited its search to Foreign Broadcast Information Service records. *Ibid.*; Dorn Dec. at ¶ 28.

13. IPS also explained that it was entitled to a full waiver of document fee requirements pursuant to 5 U.S.C. section 552(a)(4)(A)(iii). Paz y Mino Dec. at ¶15 & Exh. I; Dorn Dec., Exh. G. IPS provided the CIA twelve (12) pages of additional information to consider as part of the CIA's denial of IPS' fee waiver request. *Ibid.* This information explained why IPS was entitled to a full waiver of document fee requirements pursuant to 5 U.S.C. section 552(a)(4)(A)(iii). *Ibid.* Plaintiff addressed (1) the subject of the request, (2) the informative value of the information to be disclosed, (3) the contribution to general public understanding, (4) the significance of the contribution to public understanding, (5) the existence of a commercial interest, and (6) the magnitude of a commercial interest. *Ibid.*

14. By correspondence dated May 13, 2005, the CIA responded, referencing F-2004-01528, and acknowledging receipt of IPS' February 16, 2005 and April 6, 2005 correspondence. Paz y Mino Dec. at ¶ 16 & Exh. J thereto; Dorn Dec. at ¶ 28 & Exh. H. No determination by the CIA on the request for records or the fee waiver request was included in this CIA correspondence. *Ibid.*

15. To date, IPS has not received any correspondence from the CIA that a determination has been made on IPS' October 13, 2004 appeal, that the CIA's Agency Review Panel has

completed its review and determination, or that CIA has conducted a fee waiver analysis in response to IPS' June 1, 2004 FOIA request. Paz y Mino Dec. at ¶ 20.

16. The CIA denies that its failure to respond to IPS' administrative appeal within 20 business days violated FOIA's response deadline. Defendant's Answer to IPS' Supplemental Complaint at ¶ 57.

17. By correspondence dated December 15, 2006 the CIA stated that it had conducted "a search for records in existence as of 1 June 2004." Paz y Mino Dec. at ¶ 17 & Exh. K thereto; Dorn Dec. ¶ 30 & Exh. J.

18. The CIA's December 15, 2006 letter also stated that the CIA determined that IPS does not meet the criteria for a fee waiver. Paz y Mino Dec., Exh. K; Dorn Dec., Exh. J.

19. The CIA's December 15, 2006 letter also stated that with respect to "that portion of your request pertaining to Pablo Escobar," the CIA would neither confirm nor deny the existence or nonexistence of responsive records. Paz y Mino Dec. at ¶ 17 & Exh. K thereto; Dorn Dec. at ¶ 32 & Exh. J.

20. The CIA's December 15, 2006 letter also stated it was enclosing eight documents with document numbers 1339991-1339992, 1340582-1340586, and 1391030 which was released in "segregable form." The CIA stated that one additional document required consultation with other agencies. *Ibid*.

21. The CIA's December 15, 2006 letter also stated that it "located additional United States Government material that was not originated by the CIA," that these records appeared relevant to IPS' request, and had been referred to the originating agencies for review and direct response. *Ibid*.

22. By correspondence dated February 21, 2007, the CIA's Information and Privacy Coordinator released one additional document, document number 1337243. Paz y Mino Dec. at ¶ 19 & Exh. T thereto; Dorn Dec. at ¶ 33 & Exh. L.

23. When the CIA submitted its Motion for Summary Judgment on April 13, 2007, the CIA filed and served a "Vaughn document Index" and a declaration of the Deputy Chief of the CIA's Policy and Community Action Staff within the National Clandestine Service ("NCS"), Marilyn Dorn, which described how the CIA conducted its search for responsive records. Dorn Dec. at ¶¶ 1 & 34 and Exhibit A to Dorn Dec.

24. The CIA's Vaughn index consists of nine (9) pages, and each page addresses a different document. Dorn Dec., Exh. A. One document was entirely withheld, the rest were partially released. *Ibid*. The CIA claimed that all of the documents fall within FOIA exemption (b)(1) and (b)(3). *Ibid*. The CIA also claimed exemption (b)(2) for one of the partially released documents. For the document entirely withheld, the CIA claimed exemptions (b)(1), (b)(2),(b)(3), (b)(6) and (b)(7)(e). *Ibid*.

25. Each document produced as part of the CIA's Vaughn index is identified by reference number F-1999-00924, which is different than the number the CIA assigned Plaintiff's June 1, 2004 FOIA request (*i.e.*, reference number F-2004-01528). Dorn Dec., Exhs. A & C; Paz y Mino Dec., Exh. B.

26. One of the documents produced by the CIA—Document No. 1339991—is not discussed in the Dorn Declaration nor included in the Vaughn index filed with the Court in this action. Dorn Dec., Exh. A; Paz y Mino Dec. at ¶ 18 & Exh. L thereto.

27. In regards to documents 1340582, 1340583, 1340584, 1340585, 1340586, 1391030,

and 1397243 the Vaughn Index does not reference anything about the withheld or redacted portions of the documents. Dorn Dec., Exh. A.; Paz y Mino Dec., Exhs. N–T.

28. The Dorn Declaration does not contain any specific reference to the documents listed in the Vaughn Index. Dorn Dec. at ¶¶ 56–108. The Dorn Declaration does not specifically reference either the documents produced or the portions withheld here by Defendant. *Ibid*. The Dorn Declaration fails to draw any connection between the documents at issue and the exemptions the CIA claims. *Ibid*.

29. According to the Dorn Declaration, all CIA components are contained within one of five CIA directorates or office clusters: Directorate of Intelligence (DI), the National Clandestine Service (NCS), the Directorate of Science and Technology (DS&T), the Directorate of Support (DS) and the Directorate of CIA Area (DCIA). Dorn Dec. at ¶ 15.

30. In response to Plaintiff's FOIA request, only two of five directorates were tasked to search for responsive documents: the DI (Directorate of Intelligence) and the DCIA (the Directorate of CIA Area). Dorn Dec. at ¶ 40.

31. The DI and DCIA identified information that required coordination or referral to (1) the National Clandestine Service (NCS), (2) the Directorate of Support (DS), and (3) the Directorate of Science and Technology (DS&T). Dorn Dec. at ¶ 43. This coordination was required because the other components, NCS, DS and DS&T, "originated" the information or "otherwise had equity in it." *Ibid*.

32. The CIA did not search DS&T, NCS or DS for records responsive to IPS' FOIA request. Dorn Dec. at ¶ 44.

33. DS is the initial reception point for all FOIA requests. *Id*. at ¶ 14. DS is responsible

for "maintain[ing] records." *Id*. at ¶ 45. Within DS is the Information and Privacy Coordinator, Information Management Services, or IMS. *Ibid*. IMS is "the focal point for all FOIA requests and decisions." *Id*. at ¶ 43.

34.   The Information and Privacy Coordinators wrote all of the FOIA responses to Plaintiff. Paz y Mino Dec. at ¶¶ 8, 12, 16, 17; Dorn Dec. at ¶ 43 & Exhs. C, E, H, J & Y thereto. It was the Directorate of Support, through the Information and Privacy Coordinator, who first responded to Plaintiff regarding Defendant's decision to only search the CIA's "database of previously released records using the search terms 'pepes' and 'Escobar'." Paz y Mino Dec. at ¶ 8 & Exh. B thereto; Dorn Dec. at ¶ 23 & Exh. C.

35.   DS, NCS and DS&T components reported back to the Directorate of Support's IMS, after DI and DCIA consulted with them. Dorn Dec. at ¶ 43.

36.   NCS is responsible for conducting foreign intelligence collection activities. Dorn Dec. at ¶ 46.

37.   Plaintiff requested records related to foreign intelligence arising from United States foreign policy in Colombia. Paz y Mino Dec. at ¶¶ 7, 15 & Exh. I; Dorn Dec., Exh. G at p. 2, §1.

38.   The CIA did not search "operational files" of the NCS, DS&T and the Security Center. Dorn Dec. at ¶ 48.

39.   The CIA did not conduct any search for responsive records within DS, and does not claim an "operational file" exemption for DS' files. Dorn Dec. at ¶¶ 44–48.

40.   The Director of the CIA has not explicitly claimed an exemption with respect to specifically categorized "operational files" for the records requested by IPS here.

41.   Records disseminated by NCS were located during the searches conducted by DI and

DCIA. Dorn Dec. at ¶ 48.

42. The Director of the CIA has not exercised his classification authority with respect to the requested records.

43. Ms. Dorn is not a subordinate officials to whom classification authority has been delegated by the CIA Director in writing.

44. The CIA coordinated the responsive documents with Department of Defense (DOD), the Department of State (DOS), the National Security Agency (NSA), and/or the Drug Enforcement Agency (DEA). Dorn Dec. at ¶7.

45. The Dorn Declaration does not state the specific determinations of DOD, DOS or DEA regarding what documents or portions of documents should be withheld.

46. The Vaughn Index neither described any withheld documents nor justified the redactions and withholdings by referencing determinations of the DOD, DOS, NSA or DEA.

47. It wasn't until December 15, 2006 that the CIA was able to state that it had completed a search for responsive records and had identified records in CIA files that had been referred to the other agencies. Paz y Mino Dec. at ¶17; Dorn Dec. at ¶ 7.

48. Prior to referring one document "in the CIA's possession to DEA, the CIA determined that information was exempt from release. Dorn Dec. at ¶9. The CIA deferred description of the withheld information to the DEA's Vaughn Index and Declaration. *Ibid*. The CIA did not include reference to this document in Vaughn Index or declaration filed with this Court. Dorn Dec. at ¶9 and Exh. A.

49. The CIA did not forward the responsive documents to DEA until on or after December 5, 2006. Little Dec. at ¶ 12.

50. DEA's processing of the referred records did not commence until December 12, 2006. Little Dec. at ¶14. The DEA can provide no definite time for completion of its FOIA review. *Id*. at ¶16. DEA stated that by August 31, 2007, DEA may be able to provide a "status report" of its FOIA review or submit a Declaration and Vaughn Index. *Id*. at ¶18.

51. To date, IPS has received no records in response to FOIA request reference number F-2004-01528 from the Department of Defense, the Department of State, the National Security Agency, and/or the Drug Enforcement Agency. IPS has received no correspondence from these federal agencies regarding this FOIA request. Neither the CIA nor any other federal agency has informed IPS when the other federal agencies will respond in full to the June 1, 2004 FOIA request. Paz y Mino Dec. at ¶ 21.

52. Documents released to IPS and noted in the Vaughn Index before the Court pertain to Escobar

53. IPS does not seek release of the CIA employee names and internal information, cryptonyms and pseudonyms, administrative routing notations, dissemination control markings or medical information which the CIA claims is exempt. Paz y Mino Dec. at ¶ 25.

54. On May 9, 2007, IPS filed another FOIA request with the CIA, as well as a request for a full fee waiver. Paz y Mino at Dec. ¶ 22. The CIA has determined that no records will be released and a full fee waiver will not be granted. *Ibid*. IPS has filed an administrative appeal of this determination. *Ibid*.

55. IPS has stated that it has plans to file future FOIA requests, including fee waiver requests. *Id*. at ¶ 23.

56. CIA's FOIA regulations state that the CIA only " attempt to complete action on an

appeal within twenty (20) days of the date of receipt."

57.     There is a substantial controversy between the parties with respect to Defendant's violation of FOIA's administrative appeal response deadline.

58.     There is a substantial controversy between the parties with respect to Plaintiff's entitlement to a waiver of all fees pursuant to FOIA's "public interest exception."

59.     On or around February 1, 1993 a newly formed clandestine military organization called Los Pepes, and also known as People Persecuted by Pablo Escobar and *Perseguidos por Pablo Escobar*, declared open war in a communiqué against Pablo Escobar.  Pablo Escobar died in 1993.  Sometime after the death of Pablo Escobar and the dismantling of the Medellin cartel the organization disbanded.   *Id*. at ¶ 24.


June 13, 2007                                          RESPECTFULLY SUBMITTED,

/S Brian Gaffney                                       /S/ Andrea Ferster
Brian Gaffney (pro hac vice)                           Andrea C. Ferster (#384648)
Matt McFarland (pro hac vice)                          Attorney at Law
LAW OFFICES OF BRIAN GAFFNEY                           1100 17th Street, N.W. 10th Floor
605 Market St., Suite 505                              Washington, D.C. 20036
San Francisco, CA 94105                                Telephone: (202) 974-5142
Telephone: (415) 442-0711                              Facsimile: (202) 331-9680
Facsimile: (415) 442-0713