**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INSTITUTE FOR POLICY STUDIES ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06-CV-00960 |
| ) | |
| UNITED STATES CENTRAL ) | |
| INTELLIGENCE AGENCY ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DECLARATION OF PAUL PAZ Y MINO**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND**
**IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Paul Paz y Mino, hereby declare and if called as a witness would testify as follows:

1. Since 2003, I have been worked the Institute for Policy Studies (IPS), the plaintiff in this matter. While at first a Research Scholar, I later became an Associate Fellow for IPS' Drug Policy Project. In my position with the Institute for Policy Studies I have prepared and received all the correspondence with the U.S. Central Intelligence Agency (CIA) which is related to this action.

2. Institute for Policy Studies is the nation's oldest multi-issue progressive think tank. Since 1963, the Institute has worked to forge viable and sustainable policies to promote democracy, justice, human rights, and diversity. IPS is a nonprofit tax-exempt organization. IPS prepares, publishes and distributes reports concerning issues relating to human rights.

3. As a part of my work for IPS' Drug Policy Project, I research United States policy towards Colombia and events in Colombia related to human rights conditions, drug policy and the ongoing civil conflict in Colombia. The IPS Drug Policy Project promotes a sustainable, constitutional, and humane drug control policy. The project highlights the consequences to

Columbia's poor and disenfranchised of military "counternarcotics" aid, of repressive regimes, and of environmental devastation caused by eradication and fumigation programs.

    4.    In furtherance of my research for the IPS Drug Policy Project, on June 1, 2004 I requested on behalf of the Institute for Policy Studies that the CIA release "All records which mention or relate to the Colombian organization known as the 'PEPES' or the Perseguidos por Pablo Escobar, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar." I made this request pursuant to the Freedom of Information Act (FOIA). A true and correct copy of that request is attached hereto as Exhibit A.

    5.    IPS' June 1, 2004 FOIA request did not mention reference number F-1999-00924.

    6.    IPS requested that the CIA provide "any reasonably segregable non-exempt portions of the requested material" and "[t]o expedite the release of the documents, please disclose them on an interim basis as they become available to you, without waiting until all the documents have been processed."

    7.    The FOIA request included a request for "waiver of all fees in connection with this request," and described why IPS is entitled to a full fee waiver under FOIA, including that the Institute for Policy Studies is a nonprofit organization and that disclosure of the information is in the public interest since release of the requested records, which directly relate to U.S. policy on Colombia, is likely to contribute significantly to greater public understanding of the operations or activities of the U.S. Government in Colombia. IPS' FOIA request was in the public interest and was not requested for any commercial or economic interest.

    8.    I received a letter from the CIA's Information and Privacy Coordinator dated June 29, 2004, which acknowledged that it received IPS' request and assigned the request the reference

number F-2004-01528. A true and correct copy of the CIA's June 29, 2004 correspondence is attached hereto as Exhibit B. The CIA stated that it had only searched its "database of previously released documents using the search terms 'pepes' and 'Escobar.'" The CIA stated some of the documents in its attached indices "may not be relevant" to IPS' request. The CIA did not state when such records were previously released. The CIA enclosed two indices, which they called requestor reports, generated by this search. True and correct copies of these two indices released by the CIA are attached hereto as Exhibit C, referencing the term "pepes" and Exhibit D, referencing the search term "Escobar".

9. The CIA's June 29, 2004 response also stated that it had "determined that [IPS'] request falls into the 'educational and non-commercial scientific institution fee category'" and that IPS would be charged at ten cents per page for pages in excess of the first 100 pages. The CIA enclosed a copy of its fee schedule, a true and correct copy of which is attached hereto as Exhibit E.

10. While the CIA's June 29th response stated that I could order the document for their requestor reports, I did not order any such documents. It appeared to me that all of the documents in the CIA's indices were solely from the Foreign Broadcast Information Service, which I understand from my research was within the CIA's Directorate of Science and Technology as of the June, 2004 response date. It appeared to me, based on comparison of the CIA's indices to documents I already possessed as a result of my previous research, that the CIA's June 29, 2004 response was limited to what it had previously released, and perhaps was even narrower that what it had previously released. I also did not order documents because the CIA's fee schedule stated that the CIA would charge IPS for documents in excess of 100 pages, as well as the CIA's search

time even if no records are found at the rate of $20/hour to $72/hour.

Declaration of Paul Paz y Mino in Support of Plaintiff's Motion for Summary Judgment and
in Opposition to Defendant's Motion for Summary Judgment                    4

11.     On October 13, 2004, IPS appealed the CIA's response to its June 1, 2004 FOIA request and referenced the CIA's reference number F-2004-01528. A true and correct copy of that appeal correspondence is attached hereto as Exhibit F. IPS appealed because CIA's search was too narrow as the CIA had only searched its database of previously released documents. IPS also appealed the CIA's failure to identify all documents withheld and the reasons for non-disclosure. IPS' appeal letter specifically requested a reply to the appeal "within the requisite 20 day time limit." IPS cautioned that if its appeal was denied IPS was prepared to seek relief in federal district court.

12.     I received a letter from the CIA's Information and Privacy Coordinator dated November 30, 2004, referencing request number F-2004-01528, in which the CIA informed IPS that it had received IPS' October 13, 2004 appeal, had accepted IPS' appeal and would arrange for the Agency Release Panel to consider the appeal. The CIA stated that IPS must expect a delay in receiving the Agency Release Panel's decision. A true and correct copy of that correspondence is attached as Exhibit G.

13.     On February 16, 2005, IPS again wrote to the CIA, referencing request number F-2004-01528, and requested an immediate response to its FOIA appeal. In this letter, IPS informed the CIA that it had received no follow-up information regarding the status of its FOIA appeal or the Agency Release Panel's decision. IPS stated that well over 20 work days had passed since the CIA's November 30 letter. IPS requested that the CIA disclose the requested documents as they become available, without waiting until all the documents have been assembled. IPS specifically requested that the CIA provide unclassified and declassified documents. A true and correct copy of that correspondence is attached as Exhibit H.

14. On April 6, 2005, IPS sent the CIA's Agency Release Panel and the Information and

Privacy Coordinator a letter urging immediate resolution of this matter and providing the CIA with additional information to consider with respect to IPS' FOIA appeal. A true and correct copy of that correspondence is attached as Exhibit I. IPS stated that IPS was appealing the CIA's response to the June 1, 2004 FOIA request on the grounds that 1) the CIA should not have limited its search to previously released documents, 2) the CIA should have searched for all records which mention or relate to the Colombian organization known as the 'PEPES' or the Perseguidos por Pablo Escobar, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar and should not have limited its search to pepes and Escobar, and 3) should not have limited its search to Foreign Broadcast Information Service records.

15. The April 6, 2005 IPS letter explained that IPS was entitled to a full waiver of document fee requirements pursuant to 5 U.S.C. section 552(a)(4)(A)(iii). The letter explained that (1) the subject of the requested information involves the activities and operations of the U.S. government; (2) the disclosure of the requested information is in the public interest because it is likely to contribute to an understanding of the U.S. government's operations and activities as they relate to the United States' foreign policy with Colombia; (3) the requested information is likely to contribute to public understanding; (4) the disclosure of information is likely to contribute significantly to public understanding of the operations or activities of the United States government; and (5) the request was not made in furtherance of any commercial interest of IPS.

16. I received a letter dated May 13, 2005, referencing request number F-2004-01528, in which the CIA's Information and Privacy Coordinator acknowledged IPS' February 16, 2005 and April 6, 2005 correspondence. A true and correct copy of that correspondence is attached as Exhibit J. No determination by the CIA on the request for records or the fee waiver request was included

in this CIA correspondence.

17. On January 30, 2007 I received correspondence dated January 8, 2007 and December 15, 2006 from the CIA's Information and Privacy Coordinator. True and correct copies of both letters are attached as Exhibit K. The CIA stated that the CIA's processing of IPS' FOIA request "included a search for records in existence as of 1 June 2004." With respect to records pertaining to Pablo Escobar, the CIA stated it could neither confirm nor deny the existence or nonexistence of such records. The CIA stated it was enclosing eight documents with document numbers 1339991-1339992, 1340582-1340586, and 1391030 which was released in "segregable form." The CIA stated that one additional document required consultation with other agencies. Further, the CIA stated that it "located additional United States Government material that was not originated by the CIA. This material appears to be relevant to your request, and has been referred to the originating agencies for review and direct response."

18. True and correct copies of the documents which the CIA enclosed with the correspondence I received on January 30, 2007 are attached hereto as Exhibits K through S as follows: Exhibit L (Doc. #1339991), Exhibit M (Doc. # 1339992), Exhibit N (Doc. #1340582), Exhibit O (Doc. #1340583), Exhibit P (Doc. #1340584), Exhibit Q (Doc. #1340585), Exhibit R (Doc. #1340586), and Exhibit S (Doc. #1391030).

19. I received a letter dated February 21, 2007 from the CIA's Information and Privacy Coordinator releasing one additional document. A true and correct copy of the correspondence dated February 21, 2007 and the enclosed document (Doc. #1337243) is attached hereto as Exhibit T.

20. To date, IPS has not received any correspondence from the CIA that a determination

has been made on IPS' October 13, 2004 appeal, that the CIA's Agency Review Panel has completed

its review and determination, or that CIA has conducted a fee waiver analysis in response to IPS' June 1, 2004 FOIA request.

21. To date, IPS has received no records in response to FOIA request reference number F-2004-01528 from the Department of Defense, the Department of State, the National Security Agency, and/or the Drug Enforcement Agency. I have received no correspondence from these other federal agencies regarding this FOIA request. Neither the CIA nor any other federal agency has informed IPS when the other federal agencies will respond in full to the June 1, 2004 FOIA request.

22. On May 9, 2007, pursuant to FOIA, IPS requested from the CIA, "All records which relate to the CIA's FOIA request # F-1999-00924, including the original FOIA request, all records released related thereto, and all other documents related to this FOIA request," as well as a request for a full fee waiver. The CIA has determined that no records will be released and a full fee waiver will not be granted. IPS has filed an administrative appeal of this determination.

23. IPS has plans to file additional FOIA requests, including fee waiver requests, in the future with the CIA and other federal agencies to further its non-commercial interest in furthering public understanding of U.S. government activities.

24. Based on my research for the IPS Drug Policy Project, I know that on or around February 1, 1993 a newly formed clandestine military organization called Los Pepes, and also known as People Persecuted by Pablo Escobar and *Perseguidos por Pablo Escobar*, declared open war in a communiqué against Pablo Escobar. Pablo Escobar died in 1993. Sometime after the death of Pablo Escobar and the dismantling of the Medellin cartel, the Los Pepes organization disbanded.

25. I have reviewed the Vaughn Index and Dorn Declaration prepared by the CIA and filed with this Court. Based on my review I am familiar with the exemptions claimed. IPS does not

seek release of the CIA employee names and internal information, cryptonyms and pseudonyms, administrative routing notations, dissemination control markings or medical information which the CIA claims is exempt.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on June 7, 2007 in San Francisco, California.

/S/ Paul Paz y Mino
Paul Paz y Mino