Law Office of
**BRIAN GAFFNEY**

370 Grand Avenue, Suite 5
Oakland, CA 94610

(510) 891-9592 Telephone
(510) 891-9380 Facsimile

April 6, 2005

*Via Facsimile* (703) 613-3007
*Original by Mail*

Chair, Agency Release Panel
Attn: Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Re:   Case Number F-2004-01528
      Freedom of Information Act Appeal

Dear Chair and Information/Privacy Coordinator

This office represents the Institute for Policy Studies (IPS) in regard to the above FOIA appeal. Please direct future correspondence regarding Case Number F-2004-01528 to this office, as well as Paul Paz y Mino.

On June 1, 2004, IPS submitted a FOIA request to the Central Intelligence Agency (CIA) requesting "All records which mention or relate to the Colombian organization known as the 'PEPES' or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar." The June 1, 2004 FOIA request also included a request for "waiver of all fees."

On June 29, 2004, the CIA responded to this request by stating that it had only searched its "database of previously released documents using the search terms 'pepes' and 'Escobar'," enclosing copies of two requester reports generated by this limited search, stating that IPS will be charged at ten cents per page for pages in excess of the first 100 pages and enclosing a fee schedule.

On October 13, 2004, IPS appealed the CIA's response to the June 1, 2004 FOIA request, including the adequacy of the CIA's search and the CIA's failure to identify documents withheld. While FOIA requires a determination with respect to any appeal within twenty business days after the receipt of an appeal, to date the CIA has failed to make a determination on this FOIA appeal. On February 16, 2005, IPS again wrote to the CIA requesting an immediate response from the CIA.

This office on behalf of IPS again urges immediate resolution of this matter and provides additional information for the Agency Release Panel and the Information/Privacy Coordinator to consider in regards to this appeal.

IPS appeals the CIA's response to the June 1, 2004 FOIA request on the grounds that 1) the CIA should not have limited its search to previously released documents, 2) the CIA should have searched for all records which mention or relate to the Colombian organization known as the 'PEPES' or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar and should not have limited its search to pepes and Escobar, 3) should not have limited its search to Foreign Broadcast Information Service.

IPS also appeals the CIA's de facto denial of IPS' request for waiver of all fees associated with this request. FOIA requires the CIA to notify a requestor of the right to appeal to the head of the agency any adverse determination; the CIA failed to so notify IPS in regards to the fee waiver determination.

The IPS requested a waiver of document fee requirements pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the U.S. government and because disclosure of the requested information is not made in furtherance of any commercial interest of IPS.

(1) The Subject of the Request

The subject of IPS's request concerns the operations and activities of the United States government. As stated in IPS's initial request dated June 1, 2004, IPS is seeking CIA documents which mention or relate to "'PEPES' or the *Perseguidos por Pablo Escobar*, People Persecuted by Pablo Escobar, Pablo Escobar and/or the death of Pablo Escobar," including documents which disclose the United States' foreign policy with Colombia.. IPS requests this information so that it can educate the public on the United States' foreign policy with Colombia and the activities of the United States with Colombia. Indeed, one of the major objectives of the United States' policy with Colombia, was to assist in the manhunt for Pablo Escobar, in which the PEPES played a crucial role. Thus, the subject of the requested information involves the activities and operations of the U.S. government.

(2) The Informative Value of the Information to Be Disclosed

Disclosure of this information is likely to contribute to the public's understanding of the activities of the United States with respect to Colombia. As stated above, IPS is seeking records that relate to the United States' foreign policy with Colombia. It is clear that these documents are relevant and will contribute to the public's understanding of the United States government's foreign policy with Colombia. Moreover, IPS cannot obtain the requested information from any other available source. Once the information is disseminated to the public, the information will likely contribute to increase and add to the public's understanding of the U.S. government. Thus, the disclosure is likely to contribute to an understanding of the U.S. government's operations and activities as they relate to the United States' foreign policy with Colombia.

(3) Contribution to General Public Understanding

Disclosure will contribute to the understanding of a broad audience beyond IPS's internal understanding. IPS, this nation's oldest progressive think-tank, publishes a great deal of information

and reports on human rights and US policy. This search is in conjunction with our Drug Control Policy Project and the results will be used for publication purposes. IPS enriches public policy debates by publishing and making widely available reports concerning issues relating to human rights. Information about IPS and its Drug Control Policy Project can be accessed by the public, journalists and government officials at http://www.ips-dc.org/projects/drugpolicy.htm.

A list of IPS publications is available at http://www.ips-dc.org/pubs/pubs1.htm. A copy of an IPS publication is attached hereto. Accordingly, the requested information is likely to contribute to public understanding.

(4) The Significance of the Contribution to Public Understanding

Finally, disclosure of the requested information will elevate the public's awareness and understanding of U.S. government's policy towards Colombia beyond what is currently known. As stated above, the requested information is not available elsewhere and to IPS's knowledge has never been published for the general public. Therefore, the public's understanding of the United States Policy with Colombia will be significantly enhanced once the information is disclosed. Thus, the disclosure of the requested information is in the public's interest and will significantly contribute to the public's understanding of the U.S. government's activities and operations. In determining whether the disclosure of the requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the disclosed records to a reasonably broad audience of persons interested in the subject. Carney v U.S. Dept. of Justice, 19 F.3d 807 (2nd Cir. 1994).

The subject of this FOIA request will be used to contribute to one or more of the following: IPS' publications, website, newsletters, public presentations, and/or local and national news stories contributed to or written by IPS staff. Exactly which of these uses of the information addressed in this FOIA request will be determined after complete review of the requested material.

The staff, consultants and counsel of IPS bring a broad range of expertise and skills to IPS that will enable it to review and understand the records requested through this FOIA and to then supply this information in a coherent and understandable way to the general public and the media. IPS can draw on its researchers, policy analysts, and others to review and summarize this information. IPS certainly has the necessary qualifications relevant to *any* use of the records that may come about upon reviewing them.

IPS' contribution to the public understanding, as compared to the level of understanding prior to disclosure, as well as IPS' intent to inform the public, are well established. Moreover, many of the records requested may not have been publicly released. A requester is likely to contribute significantly to the public understanding if the information disclosed is new; supports public oversight of agency operations; or otherwise confirms or clarifies data on past or present operations of the government." 132 Cong. Rec. H9464 (Reps. English and Kindness)

(5) The Existence and Magnitude of a Commercial Interest

IPS has no commercial interest that would be furthered by the requested disclosure. IPS is a 501(c)(3) tax-exempt non-profit organization and requests the information to further its scientific,

legal and educational efforts.

In considering whether IPS meets the fee waiver criteria, it is imperative to remember that FOIA, in general, carries a presumption of disclosure and that the fee waiver amendments of 1986 were designed specifically to allow nonprofit, public interest groups such as IPS access to U.S. government records without the payment of fees. FOIA's fee waiver provision "is to be liberally construed in favor of waivers for noncommercial requesters." McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d 1282, 1284 (9th Cir. 1987). As stated by one Senator, "[A]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information..." 132 Cong. Rec. S. 14298 (statement of Sen. Leahy). In interpreting this amendment, the Ninth Circuit stated that the amended statute "is to be liberally construed in favor of waivers for noncommercial requesters." (citing Sen. Leahy). The amendment's main purpose was "to remove the roadblocks and technicalities which have been used by various Federal agencies to deny waivers or reductions of fees under the FOIA. (citing Sen. Leahy). McClellan at 1284. Thus, the main legislative purpose of FOIA is to facilitate access to agency records by "watchdog" organizations, such as environmental groups, which use FOIA to monitor and challenge U.S. government activities. The FOIA fee waiver provision was added to FOIA "in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests" in clear reference to requests from nonprofit public interest groups. Better Gov't Ass'n v. Department of State, 780 F.2d 86, 93-94 (D.C. Cir. 1986), quoting Ettlinger v. FBI, 596 F. Supp. 867, 876 (D. Mass. 1984).

If the CIA does not respond to this FOIA appeal by promptly conducting a thorough search of its records and releasing the requested documents free of charge, IPS will have to consider its judicial remedies. Please contact this office if necessary.

Sincerely,

Brian Gaffney

cc:   Paul Paz y Mino, Institute for Policy Studies

# IPS News
### THE INSTITUTE FOR POLICY STUDIES

Volume 4 • Winter 2001

## Capitol Hill Forum Launches Progressive Challenge Effort on Electoral Reform

The IPS-led Progressive Challenge kicked off an ambitious, activist year with an all day forum on electoral reform on January 19, 2001, the day before the inauguration of George W. Bush.

The event, titled "The Progressive Challenge: An Action Agenda for Electoral Reform," manifested the project's goal of linking lawmakers and grassroots activists, and involving them in one another's work. The forum also highlighted the Progressive Challenge's ability to bring together the many strands of a broad issue, providing a look at the scope of electoral reform issues and promoting cooperation between groups attacking the problems from different angles.



*Representative Cynthia McKinney (D-GA) recounts her struggles with challenges to her district*

The day began with two plenary sessions held in the large ninth-floor conference room of the Hart Senate Office Building. Prominent progressives from the House and Senate, organizers, and researchers spoke before an overflow crowd, linking the current struggles for democracy with the work of Martin Luther King, Jr., and laying out a vision for renewal of our democratic system.

The first panel featured Senator Paul Wellstone of Minnesota, as well as Representatives Dennis Kucinich (OH), Bernie Sanders (VT), Jan Schakowsky (IL), Eleanor Holmes Norton (DC), Barbara Lee (CA) and John Tierney (MA). They were

(continued on p. 4)

## Inside

Sarah Anderson Represents IPS at World Social Forum .................................. page 3

Foreign Policy In Focus Previews Bush Administration ............................ page 6

**Plus**
Global Economy ....................................................... 2
Drug Policy .............................................................. 2
IPS Briefs ................................................................. 3
New Project on Nuclear Policy ............................ 4
Pinochet Precedent Conference .......................... 7
Saul Landau .. The Wurst is Yet to Come ......... 7

*for the latest news, publications, and events, visit*
**www.ips-dc.org**

## SEEN Conference Calls for Coal Phaseout

IPS's Sustainable Energy and Economy Network (SEEN) convened their second annual conference on fossil fuels, human rights and international financial institutions in Ranchi, India, from January 29-February 2, 2001. The conference brought together over 60 activists from throughout India and around the world to focus on the environmental and human rights consequences of mining and burning coal, and to explore ways to press the World Bank and other international financial institutions into appropriate lending policies.

Human rights violations, short- and long-term environmental impacts from mining and burning coal, and the details of World Bank lending are real, day-to-day issues in India. And as evidence mounts that climate change is a ticking time bomb, India is at or near ground zero.

(continued, see box on p. 5)

733 15th Street NW Suite 1020 • Washington, DC 20005-2112 • T: 202-234-9382 • F: 202-387-7915 • www.ips-dc.org

## Three New Reports Highlight Global Economy Work

IPS's Global Economy project released a flurry of reports in late 2000 and early 2001, illuminating the state of corporate power and the movement against it.

Two of the reports were released in early December to mark the first anniversary of the 1999 Seattle protests, the beginning of the mass movement against corporate globalization.

For **"Student Voices: One Year After Seattle,"** Bhumika Muchhala, a recent college graduate who demonstrated in Seattle, conducted interviews with 50 students and recent graduates from 38 universities across the country. The 40-page report offers the students' own words on: how they became politicized and what continues to motivate them, the collective vision, their most empowering experiences at protests and on campus, organizing across race and socioeconomic divides, and their plans for the future and how they want to contribute to the movement in the long run.

**Top 200: The Rise of Corporate Global Power,** by Sarah Anderson and John Cavanagh, delivered the startling conclusion that 51 of the world's 100 largest economic entities are now corporations and only 49 are countries, when GDPs are compared to corporate sales. Meanwhile, the world's top 200 corporations account for over a quarter of economic activity on the globe, while employing less than one percent of its workforce. The report concludes that there is a tremendous threat to democracy as these corporations transform their economic clout into political power.

The Global Economy project released NAFTA at 7 at the beginning of January. This short report by Sarah Anderson compares the claims made by supporters of the agreement with statistics on poverty, wages, environmental quality, and the balance of trade in the United States, Canada, and Mexico.

All three reports are available in Adobe Acrobat format at the Institute's website, *www.ips-dc.org*, or you may order them by calling the Institute at 202-234-9382 x236.


*Graphic from* **Nafta at 7**, *which updates IPS's* Field Guide to the Global Economy.

## Drug Policy Project's Sanho Tree Visits Colombia

In January, Drug Policy Director Sanho Tree went on a 2-week fact-finding trip to Colombia, meeting with peasant farmers, refugees, and indigenous and human rights groups, as well as US and Colombian officials. He toured Bogota and the province of Putumayo, one of the main conflict zones between leftist rebels, the military, and right-wing paramilitary deathsquads. Putumayo is also the epicenter of US military involvement.

Tree has since undertaken lecture tours in Oregon and New England, and spoken at Yale and American University.

His trip led him to conclude that "the region's problems are social, political, and economic in nature. Sending guns and helicopters will solve neither the problems of poverty in Latin America nor addiction in the US. The region is in desperate need of a mini-Marshall Plan, but our response has been to send them Desert Storm. Some day we will have a rational drug control policy and peace in Colombia, but our current policy merely postpones that inevitable day of reckoning. Meanwhile, we are mortgaging our future and the interest paid on that mortgage can be seen in the devastated lives of the campesinos caught in the crossfire and in our own addicts who cannot get treatment upon request because of insufficient government funding." Tree will continue to speak around the country this spring.

If you would like to sponsor a talk, please email him at **stree@igc.org**.


*IPS's Sanho Tree stands in a Putumayo coca field during his recent trip to Colombia.*