UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INSTITUTE FOR POLICY STUDIES | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 06-0960 (HHK) |
| | ) | |
| U.S. CENTRAL INTELLIGENCE AGENCY | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND MOTION TO STRIKE DECLARATION
AND DEFENDANT'S SUPPLEMENT TO MOTION FOR SUMMARY JUDGMENT**

On May 15, 2007, Plaintiff filed a supplemental complaint in its action brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552. Prior to the filing of the supplemental complaint, the Defendant, the United States Central Intelligence Agency ("CIA"), had filed a motion for summary judgment. On June 13, 2007, the Plaintiff filed a motion for summary judgment and opposition to Defendant's Motion for Summary Judgment ("Plt. MSJ & Opp."). The CIA hereby submits its opposition to Plaintiff's motion for summary judgment and supplement to Defendant's motion summary judgment. The declaration of Ralph S. DiMaio ("DiMaio Declaration") and an updated Vaughn index are attached.

# ARGUMENT

**I.    Defendant conducted an adequate search**

    A.    <u>Defendant conducted a search up to the date of the search</u>

Plaintiffs incorrectly asserts that Defendant limited its search to the date of June 1, 2004. Plt. MSJ & Opp., p.6-7. The CIA did two searches in response to Plaintiff's FOIA request dated June 1, 2004. Subsequent to the first search of the previously released Foreign Broadcast Information Service ("FBIS") documents, the CIA performed a second search of the Directorate of Intelligence ("DI") and the area of the Director of CIA ("DCIA") that was completed prior to December 15, 2006 when the CIA notified plaintiff by letter that the processing of its request was complete. First Dorn Decl. Ex. J. Unfortunately, the letter inaccurately stated that the CIA's "processing of Plaintiff's request included a search for records in existence as of June 1, 2004." Defendant's MSJ, Ex. J. In fact, the second search of CIA records was a search based on subject, and not by date, and included <u>all</u> of the documents in existence as of the date of the search. DiMaio Decl. ¶ 8. The CIA commenced its search on or about December 12, 2004 and completed its search prior to December 15, 2006, the date of the letter it sent to Plaintiff informing him that the processing was complete. DiMaio Decl. ¶ 8. The June 1, 2004 date referred to in the letter (the date of plaintiff's FOIA request) was incorrect; the actual date the CIA records search commenced was on or about December 12, 2004, shortly after Plaintiff's appeal was accepted. DiMaio Decl. ¶ 8.

    B.    <u>The CIA conducted a search beyond that of a previous requester and with the proper reference number</u>

The Plaintiff incorrectly alleges that the Defendant limited its search to records located for another FOIA requester and another FOIA request reference number. Although the

Defendant initially searched previously released documents, the Defendant did a second search beyond the documents previously released. For the second search, the Defendant searched the Directorate of Intelligence DI and the DCIA. DiMaio Decl. ¶ 8.

The Plaintiff incorrectly suggests that the Defendant used the wrong reference number in its second search as the Vaughn Index lists reference number F01999-00924 rather than the Plaintiff's correct FOIA reference number, F-2004-01528. Plt. MSJ & Opp., p. 8-9. IPS points out that the FOIA reference number given in the Vaughn Index (F-1999-00924) is different from the number assigned to IPS's FOIA request (F-2004-01528). Due to an error in the database, the FOIA Request number from a previous case remained when the Vaughn Index for this request was printed. DiMaio Decl. ¶ 21. An updated Vaughn Index, which corrects this error, is attached as exhibit B to the DiMaio declaration.

    C.    <u>Defendant searched the proper directorates</u>

Plaintiff complains that the Defendant did not search three directorates, the National Clandestine Service (NCS); the Directorate of Science and Technology (DS&T); and the Directorate of Support (DS). The DS&T is the CIA component responsible for creating and applying technology to fulfill intelligence requirements. First Dorn Dec. ¶ 44. The NCS is the organization within CIA responsible for the conduct of foreign intelligence collection activities through the clandestine use of human sources. First Dorn Dec. ¶ 45. The DS is responsible for CIA's administrative matters. First Dorn Dec. ¶ 45.

3

1.      *DS&T and NCS*

Defendant determined that any records that the DS&T[1] or NCS potentially might have would be found in categories of DS&T and NCS operational files that are exempt under the CIA Information Act of 1984. DiMaio Dec. ¶ 15; See 50 U.S.C. § 431. Therefore, the CIA did not search the operational files of the NCS or DS&T. See First Dorn Dec. ¶ 48. Pursuant to the CIA Information Act of 1984, Congress authorized the Director of Central Intelligence ("DCI") to exempt certain operational files from the search, review and disclosure provisions of the FOIA. See 50 U.S.C. § 431. In 2005, the DCI designated as exempt from NCS[2] files, personality files and external organizations files. Similarly, operations and technical support files are among the DS&T files that the DCI designated as exempt. DiMaio Decl. ¶ 13.

In accordance with the Act, the DCI reviews operational files designations periodically, but not less than once every ten years. 50 U.S.C. § 431(g). Accordingly, the DCI's operational files designations are not like the DCI's formal invocation of the state secrets privilege, which requires that the DCI assert the privilege on a case-by-case basis as it arises in each litigation. Plaintiff complains that the Defendant omitted any search of the DS&T and NCS files and that such omission was overly broad. Plt. MSJ & Opp., p. 12. The Defendant, however, determined that to the extent that they exist, records responsive to the request would be located in the categories of NCS and DS&T operational files that the DCI has designated as exempt

---

[1] In addition, based on the mission and functions of the DS&T directorate, the Defendant determined that the DS&T was not reasonably likely to contain responsive material. First Dorn Decl. ¶ 47.

[2] The NCS was formerly the Directorate of Operations, from which the operational files are exempted.

operational files. DiMaio Dec. ¶¶ 11, 15. Because the operational files located in these designated categories are exempt from search and review, the Defendant properly did not search for records within the NCS and DS&T.[3]

### 2. *DS*

The Directorate of Support ("DS") is responsible for CIA's administrative matters and maintains records on current and former CIA employees. First Dorn Decl. ¶ 45. It maintains records on all current and former CIA employees, whether employed in a contract or staff capacity, as well as other individuals for whom security processing or evaluation has been required. First Dorn Decl. ¶ 45. The Defendant properly determined that the DS would not likely have information responsive to Plaintiff's FOIA request and therefore, the Defendant properly did not search the DS.

### D. The Defendant Properly did not Search for Documents regarding Pablo Escobar

#### 1. *Marilyn Dorn had the requisite authority when she submitted her declaration*

The Plaintiff incorrectly argues that Marilyn Dorn, who provided two declarations for the Defendant's summary judgment motion, did not have the requisite authority to claim that records responsive to the search term were classified. While the title on Ms. Dorn's Declarations is Deputy Chief of the Policy and Community Action Staff of the National Clandestine Service of the CIA, Ms. Dorn was also the Information Review Officer ("IRO") for the National

---

[3] Plaintiff's argues that the request qualifies for a special activity exception to the CIA and cites Sullivan v. Central Intelligence Agency, 992 F.2d 1249, 1253 (1st Cir. 1993), for the rule that a requester identify a particular CIA activity in connection with the request. Plt. MSJ & Opp., p. 15. Plaintiff has not identified a particular CIA activity in its request for information regarding Pablo Escobar and thus does not qualify for the special activity exception.

Clandestine Service ("NCS")[4] of the CIA.  DiMaio Dec. ¶ 5.[5]

As the NCS/IRO, Ms. Dorn was responsible for the protection of information originated by the NCS, or otherwise implicating NCS interests, which might be the subject of court proceedings.  As part of her official duties, she was to ensure that any determinations as to the release or withholding of NCS information were proper and did not jeopardize NCS interests or endanger NCS personnel or facilities.  As NCS, she had original classification authority and was authorized to make original classification and declassification decisions.  See DiMaio Dec. ¶¶ 2, 3, 5.

Ms. Dorn was authorized to have access to all CIA records on any subject relevant to this litigation, and authorized to sign declarations on behalf of the CIA regarding searches of CIA records systems and the contents of records, including those located in, or containing information under the cognizance of, CIA directorates other than the NCS.  She was authorized to sign declarations on behalf of the CIA regarding searches of CIA records systems and the contents of records, including those located in, or containing information under the cognizance of, CIA directorates other than the NCS.  DiMaio Dec. ¶¶ 4, 5.[6]

---

[4] The NCS is responsible for conducting the CIA's foreign intelligence and counterintelligence activities; special covert action; coordinating liaison with foreign intelligence and security services; serving as the repository for foreign counterintelligence information; supporting clandestine technical collection; and coordinating CIA support to the Department of Defense.  Specifically, the NCS is responsible for the conduct of foreign intelligence collection activities through the clandestine use of human sources.  DiMaio Dec. ¶ 2.

[5] Ralph S. Dimaio is the present NCS/IRO and RVO and has submitted a declaration to supplement Ms. Dorn's declaration.

[6] Moreover, in FOIA cases, the declaration of an agency official knowledgeable in the way information is gathered satisfies the personal knowledge requirement of Fed. R. Civ. P. 56(e).  See Laborers' International Union v. DOJ, 58 F. Supp. 52, 55-56 (D.D.C. 1983)).

2.   *Defendant's reasons for the Glomar Response are valid*

IPS argues that the CIA's Glomar response is implausible because Pablo Escobar died in 1993. The CIA's Glomar response is valid, however, even though Escobar is dead. If the CIA admits that it possesses intelligence information about a particular foreign national such as Pablo Escobar, the CIA essentially admits that CIA intelligence methods have been applied against that foreign national. This would allow any associates of that individual to take countermeasures to identify and frustrate these methods in order to make their future activities undetectable by the CIA. Further, any admission by the CIA that it does not possess information about a particular foreign national would confirm the success of any efforts employed by that individual to conceal his or her activities from the CIA. Other individuals could then employ these practices to conceal their activities from the CIA. These reasons continue to apply even after the death of the individual about whom information is sought from the CIA.

3.   *The CIA has not released intelligence information about Pablo Escobar*

The Plaintiff incorrectly argues that the Defendant's initial search and release of information indicated that the CIA itself had gathered intelligence information on Pablo Escobar. Plt. MSJ & Opp., p. 22-24. When the Defendant first received Plaintiff's June 1, 2004 FOIA request, it searched the previously released documents maintained within the DS, and responded accordingly, with the list of the Foreign Broadcast Information Service ("FBIS") documents that it provided to plaintiff on June 29, 2004. DiMaio Dec. ¶ 7. FBIS was an entity that collected

---

Reliance upon an affidavit, of an agency employee responsible for supervising the FOIA search is appropriate, even though the employee necessarily relied upon information provided by staff members who actually performed the search. SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

and translated openly available news and information from non-US media sources,[7] and any documents located in that search were open source, unclassified, documents, already within the public domain. DiMaio Dec. ¶ 7. Because all of the FBIS documents were already open source, unclassified, documents, that the search may have located documents related to "Escobar," one of the search terms that the CIA used, would not risk revealing a classified fact – i.e., whether the CIA itself had gathered intelligence information on Pablo Escobar. Nor could the fact that the CIA used the search term "Escobar" in this search reveal whether the CIA had gathered information on Pablo Escobar, or whether it had any sort of relationship with him.

**II.    Defendant properly coordinated records with and referred records to agencies**

Plaintiff complains that the Defendant has not released certain responsive documents in its possession or listed them in its Vaughn index and has instead referred certain documents to other agencies for direct response to the Plaintiff. Plt. MSJ & Opp., p. 24. The Defendant properly both coordinated with other agencies and referred documents to other agencies. A "referral" occurs when the document request originated from a third-party agency and the originating agency is asked to respond directly to the requester. A "coordination" occurs when the document originated from the CIA but contains information related to the third-party agency. Following review by the third-party agency, the CIA responds directly to the requester. See Snyder v. Central Intelligence Agency, 230 F .Supp.2d 17, 25 ftn. 5 (D.D.C. 2002) (finding CIA did not improperly withhold documents when it did not immediately release records that have been reviewed and processed for release until those records also have been reviewed by third-

---

[7]    FBIS no longer exists as a separate entity; it is now part of the CIA's Open Source Center. DiMaio Dec. ¶ 7.

party agencies).

Several of the responsive documents located in the CIA's files contained information originated by the Department of Defense ("DOD"), Department of State ("DOS"), National Security Agency ("NSA"), and the Drug Enforcement Agency ("DEA"). The documents were coordinated with those agencies in accordance with standard procedure. First Dorn Decl. ¶ 7. After coordination with the other agencies, the documents were included in the CIA's response to plaintiff, and in the Vaughn indices. DiMaio Dec. ¶ 17.

Plaintiff claims that it received no records from any of the agencies. Only DEA and DOS were referred documents because those documents were originated by the DOS and the DEA. Executive Order 12958 § 3.7(b) mandates this referral. The DOS determined that the document was releasable in full, and responded directly to plaintiff by letter dated December 4, 2006. Exhibit A. DiMaio Dec. ¶ 18. With respect to the one document referred to the DEA, the DEA will file a separate declaration and/or Vaughn Index regarding its processing of the referred document. Defendant's MSJ at 2, n. 1; Declaration of William Little of DEA. DEA's document, moreover, is included in the Vaughn Index as Document 1368251. DiMaio Dec. ¶ 19.

### III.    Vaughn Indices are adequate.

#### A.    Vaughn Index refers to proper FOIA request

As discussed above, the Plaintiff incorrectly suggests that the Defendant used the wrong reference number in its second search as the Vaughn Index lists reference number F01999-00924 rather than the Plaintiff's correct FOIA reference number, F-2004-01528. Plt. MSJ & Opp., p. 8-9, 28. IPS points out that the FOIA reference number given in the Vaughn Index (F-1999-00924) is different from the number assigned to IPS's FOIA request (F-2004-01528). Due to a

error in the database, the FOIA Request number from a previous case remained when the Vaughn Index for this request was printed. DiMaio Decl. ¶ 21. An updated Vaughn Index, which corrects this error, is attached as exhibit B to the DiMaio Declaration.

      B.      <u>Vaughn Index sufficiently describes and justifies the withholdings</u>

           1.     *The Vaughn Index sufficiently describes the information withheld*

<u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973) requires agencies to prepare an itemized index correlating the withheld information with an exemption. <u>See</u> <u>Id</u>. at 827. Here, the Vaughn Indices are sufficiently detailed and describe the withholdings and the justifications for the withholdings.

*Document No. 1340582*

The updated Vaughn Index, attached to DiMaio Declaration as Exhibit B, sufficiently describes the withheld information concerning Document No. 1340582. The information withheld "consists of CIA internal and external dissemination lists and classification and control markings."

*Document No. 1340583*

The updated Vaughn Index states that the Document listed as No. 1340583 contains articles are about "Latin American military issues" and that "[o]ne article consisting of two paragraphs contains information about PEPES and is responsive to Plaintiff's request." Moreover, the Vaughn Index states that the redacted information within the responsive article contains information that is currently and properly classified pursuant to the Executive Order 132958 and would reveal intelligence sources and methods, foreign government information and the name of a CIA employee, component of assignment, and CIA internal organization."

DiMaio Declaration, Exhibit B.

*Document No. 1340584*

The updated Vaughn Index for Document No. 1340584 states that "[o]ne article concerns Colombia and drug-related violence escalating following a car-bomb attack on PEPS facilities and is responsive. The redacted portions of this responsive article contain information which is properly classified pursuant to the Executive Order 132958 in the interests of national defense or foreign policy." DiMaio Declaration, Exhibit B.

*Document No. 1340585*

The updated Vaughn Index for Document No. 1340585 states "one article concerns Columbia and extralegal steps against Escobar, discusses PEPES, and is responsive. The redacted portions of this responsive article contain information which is properly classified pursuant to the Executive Order 132958 and would reveal intelligence sources and methods and classification controls and markings." DiMaio Declaration, Exhibit B.

*Document No. 1340586*

The updated Vaughn Index for Document No. 1340586 states "[o]ne article concerns Columbia and implications of Escobar's death. The redacted portions of this responsive article contain information which is properly classified pursuant to the Executive Order 12958 and would reveal foreign government information and information which reveals intelligence sources and methods." DiMaio Declaration, Exhibit B.

*Document No. 1391030*

For Document No. 1391030, the updated Vaughn Index states "[t]his 3 page memorandum for the record contains information from 6 December 1993 briefings of the NSC

and SSCI on the "Los Pepes" Affair by CIA officers. The updated Vaughn Index also states "[t]he information withheld discusses U.S. government activities in support of U.S. foreign policy. The information withheld would reveal information that is properly classified pursuant to an Executive order in the interest of national defense or foreign policy; specific intelligence activities (including special activities)."

*Document No. 1397243*

The updated Vaughn Index for Document No. 1391243 states "[t]his is a 6 page memorandum for the record consisting of 2 page cover memorandum and four page attachment from 6 December 1993 briefings of HPSCI staff on results of "Los Pepes" Panel and on the Death of Pablo Escobar." The updated Vaughn Index also states "[t]he information withheld discusses developments in Columbia and specific U.S. government activities in support of U.S. foreign policy. The information withheld would reveal information that is properly classified pursuant to Executive order in the interest of national defense or foreign policy; specific intelligence activities (including special activities) . . ."

2.   *The Declaration appropriately references the Vaughn Index*

The Plaintiff criticizes the Dorn declaration for not referencing the numbered documents that are set forth in the Vaughn Index. Plt. MSJ & Opp. "Nowhere does the Dorn Declaration contain any specific reference to the documents produced or portions withheld. Id., ¶ 31. The declaration, however, is not meant to be a substitute for the Vaughn Index. See Campaign for Responsible Transplantation v. FDA, 219 F. Supp. 2d 106, 116 (D.D.C. 2002) ("An adequate Vaughn index facilitates the trial court's duty of ruling on the applicability of certain invoked FOIA exemptions, gives the requester as much information as possible that he may use to

present his case to the trial court and thus enables the adversary system to operate."). The Defendant's Vaughn Indices sufficiently address the Defendant's withholdings and specifically address the applicable exemptions applied per document. Because the Vaughn Indices address each document in detail, the declarations are not required to do so in the same detail.

### C.    Vaughn Index includes records referred to other agencies

The Plaintiff argues that it was not enough for the Defendant to indicate which exemptions applied to information that had been referred to other agencies. Plt. MSJ & Opp. P.34. The Vaughn Indices include the documents that contained information referred to other agencies. DiMaio Dec. ¶ 17. Plaintiff argues that the Defendant should have identified the determinations of each agency, rather than just indicating which exemptions applied. Plaintiff provides no case law that supports this proposition. In addition, the Plaintiff argues that the Defendant should not have referred documents to DEA, but should instead have made determinations and respond on behalf of the DEA. Referral of documents to agencies that originate the documents for direct response, however, is appropriate. Goldstein v. Office of Independ. Counsel, No. 87-2028, 1999 WL 570862, at *14 (D.D.C. July 29, 1999) (magistrate's recommendation) (requiring referring agency to ask agency receiving referral to provide court with its position concerning releasability of records referred). Referral of documents to agencies that originate the documents for direct response is also required by E.O. 12958. Therefore, the Defendant properly referred a document to its originating agency, the DEA, for direct response.[8] The referred document is also listed in the updated Vaughn Index as document 1368251.

---

[8]    The DEA will file a separate declaration and/or Vaughn regarding its processing of the referred document. Declaration of William Little of DEA.

DiMaio Dec. ¶ 19.

### D. Updated Vaughn Index includes Document No. 13399991

The Plaintiff complains that the Vaughn Index did not discuss Document No. 13399991. The updated Vaughn Index includes Document No. 1339991, which was inadvertently omitted from the First Dorn Declaration. The DiMaio Decl. ¶ 21. The Vaughn Index indicates that the document is a classified as "secret," is a report regarding the "diversifying Latin American drug threat in 2000" and contains an "incidental reference to the violent deaths of drug lords, including Pablo Escobar's death in 1993 which has been released in full." The remainder of the information "reflects analysts' judgments regarding Latin American issues in 2000, including analytic assessments of bilateral and multilateral counter-narcotics efforts, as well as the money laundering and corruption in specific countries." The updated Vaughn Index indicates the applicable exemptions to the withheld portions and the reasons for their application.

## IV.    Plaintiff is not entitled to declaratory relief

### A. A plaintiff may seek judicial relief where an agency does not make a determination in 20 days of an appeal

The Plaintiff seeks declaratory judgment that Defendant violated FOIA by failing to respond to Plaintiff's FOIA appeal within 20 business days of filing the appeal and failing to grant Plaintiff a fee waiver. The Plaintiff, however concedes that the Defendant responded to Plaintiff's administrative appeal "by informing [Plaintiff] that it should expect a delay," due to "high volume of appeals awaiting completion," Plt. MSJ & Opp. Ftn. 12.

The purpose of a declaratory judgment is to settle legal rights not already determined. United States v. Doherty, 786 F.2d 491, 498 (2nd Cir.1986). Its principal goal "is to clarify in an expeditious manner the 'rights, liabilities, and other legal relationships' between adverse parties."

Bethel Native Corp. v. Dept. Of Interior, 208 F.3d 1171, 1176 (9th Cir.2000) (citation omitted); see also Broadview Chemical Corp. v. Loctite Corp., 474 F.2d 1391, 1393 (2d Cir.1973) ("[T]he principal purpose of a declaratory judgment is to clarify and settle disputed legal relationships and to relieve uncertainty, insecurity and controversy."). In the instant case no controversy exists for purposes of Plaintiff's request for declaratory relief. Plaintiff argues that Defendant did not timely respond to its administrative appeal. It is clear under the FOIA that an agency has twenty (20) days to respond to FOIA appeals. 5 U.S.C. § 552(a)(6)(A)(ii). Failure to process an administrative appeal within the statutory time limit gives rise to a cause of action in federal court pursuant to 5 U.S.C. § 552(a)(4)(B); See, e.g., Spannaus v. United States Dept. of Justice, 824 F.2d 52, 58 (D.C. Cir.1987). "But Defendant's failure to abide by the 20-day response time, by itself, presents no controversy with respect to whether a declaratory judgment should issue. If an agency does not issue a determination within the 20-day period, the requester may immediately seek judicial review, if he or she wishes to do so." Pagosans For Public Lands v. U.S. Forest Service, 06-CV-00556, 2006 WL 3951439 (D.Colo., Nov. 20, 2006) (denying declaratory judgment where Defendant did not timely respond to its FOIA administrative appeal.); cf., Edmonds Institute v. U.S. Dept. of Interior, 383 F. Supp.2d 105 (D.D.C. 2005), (denying declaratory judgment that the defendant acted contrary to law in violation of the Administrative Procedure Act when it failed to respond to FOIA requests within the twenty working dates required by statute and finding that the FOIA statute offers a clear and simple remedy for agency non-compliance with the FOIA deadlines); but cf., Payne Enterprises, Inc. v. United States, 837 F.2d 486 (D.C. Cir. 1988) (granting declaratory judgment where defendant's denial of documents not exempt under the FOIA was a clear violation of FOIA). Here, the

Plaintiff has filed a complaint and is able to get the appropriate relief.[9]  Therefore, the Court should deny Plaintiff's motion for declaratory relief.

   B. <u>Defendant is not charging fees, thus Plaintiff's fee complaint is moot</u>

The Plaintiff complains that the Defendant denied its fee waiver request.  Plt. MSJ & Opp., p.39-42.  Although the Defendant initially denied Plaintiff's fee waiver request, the Defendant ultimately determined that it would not charge the Plaintiff fees.  Dorn Decl. ¶ 30; Ex. J.  In a letter dated December 15, 2006, the Defendant informed the Plaintiff that it would not be charging fees in this case.  Dorn Decl. ¶ 30; Ex. J; DiMaio Decl. ¶ 20.

Mootness deprives the Court of its ability to take remedial action because "there is nothing for [the court] to remedy, even if [it] were inclined to do so."  <u>Spencer v. Kemna</u>, 523 U.S. 1, 18 (1998).  Here, the Defendant is not charging fees and therefore, there is nothing for the Court to remedy.  A case is moot when "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  <u>Pharmachemie B.V. v. Barr Laboratories, Inc.</u>, 276 F.3d 627, 631 (D.C. Cir. 2002) (quoting <u>Clarke v. United States</u>, 915 F.2d 699, 700-01 (D.C. Cir. 1990)).  Plaintiff suggests that the Defendant in the future may deny Plaintiff's fee waiver requests in other FOIA cases.  This suggestion is merely speculative and because the Defendant is not charging fees in this case, Plaintiff's complaint is moot.

**V.** **The Court should Dismiss any Claims under the Administrative Procedure Act**

---

[9] Plaintiff argues that in the absense of a declaratory judgment, the Defendant will continue to apply its regulations which only state that the defendant will "attempt" to respond to an appeal within 20 days.  Nonetheless, Plaintiff has the remedy of seeking relief in District Court if it is unsatisfied with the Defendant's future responses to its FOIA requests or appeals.

The Court should dismiss Plaintiff's APA claims which are nothing more than a repetition of its FOIA claims. "The FOIA itself provides an adequate remedy for Plaintiffs' claims and separate APA review is not available." Sierra Club v. U.S. Dept. of Interior, 384 F. Supp.2d 1, 30 (D.D.C. 2004); see 5 U.S.C. § 703 (APA review available "except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law"); 5 U.S.C. § 704 (APA review of actions "for which there is no other adequate remedy in a court ..."). The APA authorizes judicial review only when the challenged agency action is final and when there is no other adequate remedy. 5 U.S.C. §§ 703-704; Bowen v. Massachusetts, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." ); Women's Equity Action League v. Cavazos, 906 F.2d 742, 750-51 (D.C. Cir. 1990)(noting that an "adequate" statutory remedy is "preclusive of a default remedy under the APA"); First National Bank of Scotia v. United States, 530 F. Supp. at 162, 167 (D.D.C. 1982) ("It is ... well-settled that where Congress has provided an adequate procedure to obtain judicial review of agency action, that statutory provision is the exclusive means of obtaining judicial review in those situations to which it applies."). Thus, an APA claim is precluded where a remedy is available under the FOIA. Sierra Club, 384 F. Supp.2d 1. Since the FOIA specifically provides for judicial review of agency decisions to withhold documents or deny fee waivers, it contains the procedure for judicial review of the challenged agency actions here. 5 U.S.C. § § 552(a)(4)(A)(vii), (a)(4)(B).


Dated: August 21, 2007            Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney

555 Fourth Street, N.W.
Washington, D.C. 20530