## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INSTITUTE FOR POLICY STUDIES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06-cv-960 (RCL) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION

This Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq*., case comes before the Court on defendant's Motion  [23] for Summary Judgment, plaintiff's Motion [32] for Summary Judgment, defendant's Opposition to Plaintiff's Motion for Summary Judgment and Motion to Strike Declaration and Defendant's Supplement to Motion for Summary Judgment [41], plaintiff's Opposition to Defendant's Supplement to Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment [70], Supplemental Memorandum in Support of Defendant's Motion for Summary Judgment [83], and plaintiff's Surreply to Defendant's Final Summary Judgment Brief and Supplemental Memorandum [92].   Upon consideration of the filings, the entire record herein and the relevant law, the Court will GRANT in part and DENY in part defendant's Motion [23] for summary judgment and GRANT in part and DENY in part plaintiff's Motion [32] for summary judgment.

# I.   BACKGROUND

## A.   FOIA Requests

On June 1, 2004, the Institute for Policy Studies ("IPS") sent a FOIA request to the CIA requesting the release of all records that mention or relate to the Columbian Organization known as "PEPES" or the Perseguidos por Pablo Escobar, People Persecuted by Pablo Escobar, Pablo Escobar, and/or the death of Pablo Escobar. Declaration of Paz Y Mino ("Paz Y Mino Decl.") ¶ 4; Declaration of Marilyn A. Dorn ("Dorn Decl.") ¶ 22.  The CIA responded to the request on June 29, 2004 by assigning a reference number of F-2004-01528 and notified IPS that it was providing "previously released records" that were "located in a search conducted on behalf of a previous requestor" using the terms "pepes" and "Escobar." Paz Y Mino Decl. ¶ 8; Dorn Decl. ¶ 23. Defendant also included a fee schedule and two *Vaughn* Indices along with the documents it provided stating plaintiff would be charged at ten cents a page for pages in excess of the first 100 pages. *Id.*  In response to defendant's search, plaintiff filed an administrative appeal on October 13, 2004. Paz Y Mino Decl. ¶ 11.  Defendant failed to respond to IPS's appeal within the twenty day statutory timeframe and on February 16, 2005, plaintiff sent a letter to the CIA requesting a response to its October 13, 2004 appeal. Paz Y Mino Decl. ¶ 13; Dorn Decl.  On April 6, 2005, plaintiff wrote to defendant, urging the resolution of this matter and stated that if defendant failed to respond to their request by performing a proper search free of charge then plaintiff would seek "judicial remedies." Paz Y Mino ¶ 19. As defendant did not make a determination on plaintiff's appeal, plaintiff filed suit in this court on May 23, 2006. Pl. Mot. Sum. J. at

2.  After the litigation commenced, defendant provided plaintiff with additional records on December 15, 2006, free of charge. First Dorn Decl. ¶ 30.

**B.      Procedural History**

Plaintiff filed its complaint on May 23, 2006, alleging a failure to conduct an adequate search, failure to provide all responsive records, failure to reply to FOIA appeals, improper withholding, and an improper denial of a fee waiver. On February 21, 2007, defendant gave plaintiff its supplemental response to plaintiff's initial FOIA request and included an updated *Vaughn* Index with their latest search. Second Dorn Decl. ¶ 5.  This search included records that originated with other agencies which, per standard operating procedure, defendant referred to the other agencies, the Drug Enforcement Administration ("DEA") and Department of State ("DOS"), respectively. First Dorn Decl. ¶ 8.  On April 13, 2007, defendant moved for summary judgment, arguing that they supplemented the previous search with a search of both the Directorate of Intelligence and the Director of the CIA Area for files on PEPES, that they correctly did not run a search for Pablo Escobar under a *Glomar* response, and a number of exemptions under the FOIA statute. On June 13, 2007, plaintiff filed its own motion for summary judgment, challenging the sufficiency of defendant's search, undue delay by defendant with the referral of records to other agencies, and broadly claiming exemptions while failing to properly describe the justifications. Plaintiff also requested declaratory relief for the defendant's failure to respond to the original appeal within twenty days and defendant's denial of a request for public interest fee waiver. Plaintiff also alleged that defendant violated the Administrative Procedure Act by failing to respond to FOIA appeals in a timely manner.

## II.        ANALYSIS

### A.        Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary judgment. *See, e.g. Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980). In a FOIA case, a court may award summary judgment to an agency upon the agency's showing that it conducted a search "reasonably calculated to uncover all relevant documents." *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The adequacy of the search is measured by a standard of reasonableness, which must be decided on a case by case

basis. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is whether the search itself was adequate notwithstanding the fact that other responsive documents may exist. *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). An agency is not required to search every record system, but must conduct a good faith, reasonable search of those record systems likely to possess the requested information. *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

FOIA requires agencies of the federal government to release records to the public upon request, unless one of the nine statutory exemptions applies. *See NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b). To prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records. *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989).

Once an agency has provided adequate affidavits, the burden shifts back to the plaintiff to demonstrate a lack of good faith search. In order to show that a search was adequate, defendant must demonstrate beyond a material doubt that its search was "'reasonably calculated to reveal responsive documents.'" *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995); *Truitt*, 897 F.2d at 542 (*quoting Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir.1983) (*Weisberg II* )).

The agency carries the burden of demonstrating that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. To meet this burden, the agency may submit nonconclusory affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Steinberg v. U.S. Dep't of*

*Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Courts measure reasonableness by examining the method of the search, not by determining whether additional responsive documents might potentially exist. *Cleary, Gottleib, Steen & Hamilton v. Dep't of Health and Human Servs.*, 844 F. Supp. 770, 777 n.4 (D.D.C. 1993) (citing *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C. Cir. 1986)). "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search." *SafeCard*, 926 F.2d at 1201

### B.     Plaintiff's Motions to Strike Declarations

Before turning to the adequacy of defendant's search and withholdings, the Court first addresses plaintiff's motions to strike portions of the declarations of Marylin Dorn, Elizabeth Culver, William Little, and Ralph DiMaio.  Plaintiff has moved to strike portions of these declarations for lack of personal knowledge and failure to support statements with written materials in the record.

Plaintiff's allegations misunderstand the personal knowledge requirements for FOIA declarations. The knowledge requirement of Fed. R. Civ. P. 56(e) can be satisfied, in FOIA cases, via the declaration of an agency official knowledgeable in the way information is gathered. *See Laborers' Int'l Union v. DOJ*, 58 F. Supp. 52, 55–56 (D.D.C. 1983).  Reliance upon an affidavit of an employee supervising a FOIA search is

appropriate, even when the employee relied on information provided by those who actually performed the search. *SafeCard*, 926 F.2d at 1201.

Plaintiff first argues that the affidavit given by Marylin Dorn fails to demonstrate that she had either the required authority to claim that these records were classified or personal knowledge that anyone with proper authority made such a decision. Pl. Mot. Sum. J. at 19.  Defendant shows that Ms. Dorn did have the requisite knowledge as Ms. Dorn is not only the Deputy Chief of the Policy and Community Action Staff of the National Clandestine Service of the CIA but also the Information Review Officer ("IRO") for the NCS. Def. Opp. to Pl. Mot. Sum. J. at 6.  As such, Ms. Dorn was responsible for the protection of information originated by the NCS. Additionally, Ms. Dorn was authorized to have access to all CIA records relevant to this litigation. *Id.*

Plaintiff additionally argues that Elizabeth Culver's declaration lacks personal knowledge because she was not involved in the processing of plaintiff's FOIA request and further that she does not have personal knowledge of what constitutes an investigation.  Pl. Ob. to and Mot. to Strike Por. of Culver Decl. at 1.  In response to plaintiff's allegation, defendant responded that Ms. Culver's review of the records satisfies the personal knowledge requirement under Rule 56(c)(4). Mem. in Opp. to Pl.'s Mot. to Strike Parts of the Culver Decl. at 2.  Defendant also points out that Ms. Culver noted in her declaration that she has "held administrative, operational, and managerial positions in the CIA since 1993," that has provided her with a basis to differentiate between policy reviews and investigations. *Id.*

Plaintiff also asserts that Mr. Little's declaration lacks his personal knowledge of the operations of the DEA's El Paso Intelligence Center ("EPIC") nor the preparation of

the "EPIC Sankey Monthly Reports," nor of the DEA's investigative or law enforcement efforts. Pl. Ob. to and Mot. to Strike Por. of the Supp. Decl. of William C. Little Jr. at 2. Defendant responds that Mr. Little is an attorney who has been involved with FOIA matters since 1994, which gives him extensive experience in the processing of FOIA requests. Mem. in Opp. to Pl.'s Mot. to Strike Parts of the Little Decl. at 1. Further, defendant points to a number of statements made by Mr. Little about his duty to familiarize himself with the procedures in order to process the document under FOIA. *Id*.

Finally, plaintiff argues that Mr. DiMaio's declaration lacks personal knowledge on the basis that he was not personally involved in defendant's processing of plaintiff's FOIA requests as the search took place prior to Mr. DiMaio was assigned to his current position. Pl.'s Ob. to and Mot. to Strike Por. of the Decl. of Ralph S. DiMaio at 2. Defendant responded by saying that Mr. DiMaio addressed his basis for personal knowledge during his deposition. Final Brief in Supp. of Def.'s Mot. for Sum. J. at 27.

A declarant is deemed to have personal knowledge if he has a general familiarity with the responsive records and procedures used to identify those records and thus is not required to independently verify the information contained in each responsive record. *Schoenman v. FBI*, 575 F. Supp. 2d 166, 172 (D.D.C. 2008). The D.C. Circuit's opinion in *Londrigan* illustrates this principle. *See Londrigan v. FBI*, 670 F.2d 1164 (1981); *see also Elliott v. Fed. Bureau of Prisons, No. 04–1702*, 2006 WL 5217760, 2006 U.S. Dist. LEXIS 94342 at * 19–*20 (D.D.C. Oct. 17, 2006) (holding that a declaration met the standard for personal knowledge because it was based, in part, on declarant's review of "official files and records"). In reviewing the declarations of Marilyn Dorn, Elizabeth

Culver, Ralph DiMaio, and William Little, this Court finds that these declarants did have the personal knowledge required of them.

In addition to arguing that these declarants lacked personal knowledge, plaintiff also argues that the declarations of Culver, Little, and DiMaio failed to support their statements with written materials in the record. Plaintiff asserts that pursuant to Federal Rule of Civil Procedure (FCRP) 56(c)(1)(A), it is required that a statement or dispute of fact be supported by materials in the record. Pl.'s Ob. to and Mot. to Strike Por. of the Decl. of Elizabeth Ann Culver at 3. Defendant responds by asserting that the issue is not whether the supporting documents are attached to the declaration but rather whether the facts alleged in the declaration would be admissible at trial under FRCP 56(c)(4). FCRP 54(c)(4) states that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56. As this Court has already determined that the declarants each had the required personal knowledge, the Court denies plaintiff's motion to strike parts of the Culver declaration, the Little declaration, and the DiMaio declaration.

**C.    Adequacy of Defendant's Search**

In its cross motion for summary judgment, plaintiff argues that defendant's search does not meet the adequacy standards because it failed to conduct a search up to the date of the search, it only searched records that related to a previous search, it only searched two of the five directorates, and it failed to search for plaintiff's search term "Pablo Escobar" Pl. Mot. Sum. J. at 2.  In response to the last two allegations, defendant argued that its search was adequate and responded to plaintiff's allegations by asserting a

*Glomar* defense. The Court will now break down each argument in order to determine whether the defendant's search meets this Court's standards.

1.      **Search up to the Date of the Search**

"The question is not whether any other documents possibly responsive to the request exist, but rather whether the search for those documents was accurate." *Steinberg*, 23 F.3d at 551.  It is the plaintiff's burden in challenging the adequacy of an agency's search to present evidence rebutting the agency's initial showing of a good faith search. *See Maynard v. Central Intelligence Agency*, 986 F.2d 547, 560 (2d Cir. 1993); *Weisberg*, 705 F.2d at 1351–52.

Plaintiff challenges the sufficiency of defendant's search by stating that defendant "impermissibly limited its initial response to previously released records, and then after suit was filed conducting a search in December, 2006 that was impermissibly limited to records in existence as of June 2004." Pl.'s Mot. Sum. J. at 6. Additionally, plaintiff asserts that "two and a half years after IPS filed its FOIA request and over six months after the suit was filed, the agency belatedly notified Plaintiff on December 15, 2006 that the CIA conducted 'a search for records in existence as of 1 June 2004.'" Pl.'s Mot. Sum. J. at 7.

At the initiation of this litigation, defendant filed the declaration of Marylin Dorn describing the document search for "pepes" and "Escobar." Defendant asserts that the indication of a search up to date of search language was a typo in the June 1, 2004 letter that defendant sent to plaintiff. Declaration of Ralph DiMaio ('DiMaio Decl.') ¶ 8. Defendant further argues that they conducted two searches in response to plaintiff's request. Def. Opp. to Pl.'s Mot. Sum. J. at 2.  In addition to its initial search of previously

released Foreign Broadcast Information Service ("FBIS") documents, defendant performed a second search of the Directorate of Intelligence ("DI") and the area of the Director of CIA ("DCIA"). Def. Opp. to Pl.'s Mot. Sum. J. at 2. Once the search was complete, defendant sent a letter to plaintiff informing it that the processing of its request was complete which contained an inaccuracy that stated that defendant's "processing of Plaintiff's request included a search for records in existence as of June 1, 2004." *Id.* Defendant claims, through its declarations, that the second search was based on subject matter and included all documents in existence as of the date of the search. DiMaio Decl. ¶ 8.

Defendant's showing of a typographical error and subsequent corrections, while exposing sloppy administrative work on the part of the agency, nonetheless does not violate FOIA, as plaintiff alleges. *See SafeCard*, 926 F.2d at 1202 (finding that technical failings do not support defendant's search being inaccurate nor an inference of bad faith). Defendant's submission of declarations of DiMaio signed under oath, show good faith on the part of defendant that the search was performed correctly. This Court finds that defendant did conduct a search to date and thus grants summary judgment on this point for defendant.

### 2.   Searching Only Records Located in a Search from a Previous Requestor

Plaintiff additionally argues that defendant further failed to perform an adequate search and violated FOIA by limiting its search to records located in a search on behalf of a previous requestor and another FOIA reference number. Plaintiff argues that defendant's search was inadequate because defendant limited their December 2006 and January 2007 response to a FOIA reference number that was different from the FOIA

reference that was assigned to plaintiff. Pl.'s Mot. Sum. J at 8. Plaintiff asserts that since each document produced by defendant as part of the *Vaughn* Index had a different reference number than that assigned to plaintiff, defendant failed to undergo a reasonable search for the requested documents. *Id*.

Again, in response to plaintiff's allegations of an inadequate search, defendant responded by asserting that the FOIA number assigned to the *Vaughn* Index was yet another typographical error which it subsequently corrected by providing plaintiff with an updated *Vaughn* Index in 2007 that referenced plaintiff's correct FOIA request number. Def. Opp. To Pl.'s Mot. Sum. J. at 3.  Defendant explains that its record systems are decentralized and compartmented. Def. Mot. Sum. J. at 6.  According to defendant, there are five directorates: the Directorate of Intelligence (DI); the National Clandestine Service (NCS); the Directorate of Science and Technology (DS&T); the Directorate of Support (DS); and the Director of CIA Area (DCIA). *Id*. Defendant alleges that once it received plaintiff's request, they began by searching their database of previously released records using the terms "pepes" and "escobar." *Id* at 6. Once defendant had completed that initial search, it then provided plaintiff with two requestor reports that were based on searches done on behalf of a previous requestor. *Id*. After plaintiff appealed defendant's determination to search only previously released records, defendant conducted a more expansive search. Dorn Decl. ¶ 6. The defendant asserts that due to an error in their database, the FOIA request number from a previous case remained on the plaintiff's *Vaughn* Index. Def. Opp. to Pl. Mot. Sum. J. at 3. Defendant further asserts that it has corrected the mistake and provided plaintiff with an updated *Vaughn* Index. DiMaio Decl. ¶ 21.

Again, plaintiff's burden in challenging the adequacy of an agency's search is to present evidence rebutting the agency's initial showing of a good faith search. *See Maynard v. Central Intelligence Agency*, 986 F.2d 547, 560 (2d Cir. 1993). To this end, the plaintiff has failed to show any evidence, other than the initial typos. In subsequent declarations from defendant, they swore under oath that they had, in fact, gone back to correct the error. DiMaio Decl. ¶ 21. Plaintiff does not dispute this fact. As the plaintiff has failed to provide any evidence, and defendant has corrected its shoddy administrative work, the court finds that defendant's updated *Vaughn* Index with the correct FOIA request number shows that defendant had not limited their search to that of a previous requestor.

### 3.      Searching Only Two of the Five Directorates

Defendant claims that it correctly did not search any of the records contained within DS&T and NCS as any files that it might have found would have been designated as operational files under the CIA Information Act of 1984. Def. Opp. to Pl. Mot. Sum. J. at 4.

The CIA Information Act of 1984 authorized the Director of Central Intelligence to exempt certain operational files from the search, review, and disclosure provisions of FOIA. 50 U.S.C. § 431. In order for a file to be an "operational file" within the meaning of the CIA Information Act of 1984, the files must fall into one of three categories to be exempted:

> (1) files of the Directorate of Operations[1] which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services;

---

[1] Now the National Clandestine Service (NCS)

(2) files of the Directorate for Science and Technology which document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems; and

(3) files of Office of Personnel Security which document investigations conducted to determine the suitability of potential foreign intelligence or counterintelligence sources.

50 U.S.C. § 431(b)(1)–(3).  Because the files were likely to be operational, defendant did not search these files at the NCS or DS&T. Def. opp to pl. Mot. Sum. J. at 4.  Defendant does not dispute the fact that they only searched two of the five directorates with respect to plaintiff's FOIA request. Def. Mot. Sum. J. at 7.  Defendant explains that they did not task DS&T, NCS, or DC to search for responsive records "because the files most likely to have information responsive to the request would be exempt under 50 U.S.C. § 431." *Id.* Defendant goes further to explain that "the NCS is responsible for the conduct of foreign intelligence collection activities through the clandestine use of human sources. First Dorn Decl. ¶ 45.  The DS is responsible for CIA's administrative matters. First Dorn Decl. ¶ 45." Def. Opp. to Pl. Mot. Sum. J. at 3.  Defendant argued that since these types of records are the operational files that the CIA Information Act of 1984 protects from FOIA, it did not have to perform the search in the first place as it would have to exempt any files that they found within these directorates. *Id.* at 4. The Directorate of Support ("DS") is administrative in nature and maintains records on current and former CIA employees as well as individuals for whom security processing or evaluation has been required. *Id.* at 5.  Due to the nature of the information maintained in DS, defendant asserts that it correctly determined that DS would not likely have information responsive to plaintiff's FOIA request and therefore did not search that directorate. *Id.*

Plaintiff asserts that defendant's failure to search for responsive records in the DS&T, NCS, or DS violated FOIA. Plaintiff cites to Dorn's declaration where the CIA had "identified information that required coordination or referral to (1) the National Clandestine Service, (2) the Directorate of Support, and (3) the Directorate of Science and Technology 'because the other component originated the information or otherwise had equity in it.'" Pl. Mot. Sum. J. at 9. Plaintiff asserts that defendant improperly cited the CIA information Act of 1984. *Id.* at 12.  Plaintiff argues that the CIA Information Act of 1984 does not prohibit the CIA from searching for responsive records within their directorates, it merely exempts "operational files" *Id.* at 12.  Specifically, plaintiff alleges that defendant failed to claim any operational files exemption and even if they did, it would not cover all files in the NCS and DS&T, a search that defendant omitted. *Id.* Thus, plaintiff concludes that defendant acted over-broadly within the language of the CIA Information Act. Additionally, plaintiff argues that the Director of the CIA failed to claim an "operational files" exemption for the DS&T and the NCS files. *Id.* at 13. Plaintiff points out that in order to take advantage of the CIA Act, defendant "must explicitly claim an exemption with respect to specifically categorized "operational files." *Id.*  Plaintiff argues that the only evidence that defendant has proffered is a sworn statement that "CIA officers also determined that any records that the DS&T or NCS potentially may have located would be found in DS&T and NCS operational files." *Id.*; Dorn Decl. ¶ 48.  Plaintiff additionally asserts that defendant's statement lacks any foundation that the files within the DS&T or NCS would be only found in "operational files." *Id.*

Plaintiff concludes its argument as to why the CIA Information Act does not exempt defendant from searching for responsive records by arguing that defendant withheld files that contain only disseminated NCS intelligence and these files are not exempt from the search parameters under the CIA Act. Pl. Mot. Sum. J. at 16.  Plaintiff cites 50 U.S.C § 431(b)(3) which states that, "files which are the sole repository of disseminated intelligence are not operational files," and the exemption for "operational files" does not protect some "operational files" which are transferred from exempted operational files to other fields and then transferred back.  50 U.S.C. § 431(b)(3). Plaintiff points to sworn affidavits from defendant that admits that "records disseminated by NCS were located during the searches conducted by the DI and the DCIA." Dorn Decl. ¶ 48.

Plaintiff further argues that, even if these documents were protected under the CIA Act, plaintiff qualifies for the "special activity" exception. *Id*. at 15; 50 U.S.C. § 431(c)(2).  Plaintiff's request must be construed in light of two basic concerns in order to qualify for the exception: (1) specificity and (2) secrecy. *Sullivan v. Central Intelligence Agency*, 992 F.2d 1249, 1253 (1st Cir. 1993).  In order to meet the specificity standard, "a requestor must identify a particular CIA activity in connection with [the] request." *Id*. Plaintiff argues that its request met the specificity standard as they were asking for documents that mention or relate to "PEPES," the *Perseguidos por Pablo Escobar*, and the People Persecuted by Pablo Escobar, Pablo Escobar; and/or the death of Pablo Escobar. Plaintiff asserts that PEPES meets the requirements as the organization had a definitive beginning, middle and end. Additionally, plaintiff asserts that the search terms for "Pablo Escobar" and "the death of Pablo Escobar" are limited to a definitive period of

time Pl. Mot. Sum. J. at 16.  Plaintiff argues that its search also meets the secrecy requirement as it was asking for unclassified and declassified documents. *Id*. The secrecy exception requires that the requested material not be exempt, meaning unclassified or declassified. (*Sullivan*, 992 F. 2d at 1259). Because the Court has determined that defendant's search fails on other grounds, the Court does not determine whether or not plaintiff met the "special activity" exception within the Act.

Courts have held that an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 28 (D.C. Cir. 1998) (*quoting Oglesby I*, 920 F.2d at 68), *Nation Magazine*, 71 F.3d at 890.  The Court will evaluate the search's reasonableness based on what it knows at the conclusion of the search, rather than on the agency's speculation at the initiation of the search.  *Id*.  In this case, the Court finds that the defendant's failure to search the remaining three directorates while admitting that they would likely contain records responsive to plaintiff's search does not rise to the level of an adequate search. This Court orders defendant to perform plaintiff's requested search in the three directorates that defendant failed to search and denies defendant summary judgment on this point.

### 4.        Did Not Search for Documents Regarding Pablo Escobar

Once plaintiff initiated litigation, it alleged that defendant failed to perform an adequate search because defendant failed to search plaintiff's search term "Pablo Escobar" and only searched for "Escobar." Defendant issued a *Glomar* response as to why they did not search for records containing "Pablo Escobar." Def. Mot. Sum. J. at 8.

Given the FOIA's broad disclosure policy, the United States Supreme Court has "consistently stated that FOIA exemptions are to be narrowly construed." *U.S. Dep't of Justice v. Julian,* 486 U.S. 1, 8, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988). However, the CIA "may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception." *Gardels v. CIA,* 689 F.2d 1100, 1103 (D.C. Cir. 1982); *see also Miller v. Casey,* 730 F.2d 773, 776–77 (D.C. Cir. 1984); *Phillippi v. CIA,* 546 F.2d 1009, 1012 (D.C. Cir. 1976). This response is known as a *Glomar* response and is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption. *See, e.g., Hunt v. CIA,* 981 F.2d 1116, 1118 (9th Cir. 1992); *Phillippi,* 546 F.2d at 1011 (acknowledging CIA refusal to confirm or deny existence of records regarding activities of ship named *Hughes Glomar Explorer*). In determining whether the existence or nonexistence of these records fits under a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases. *See, e.g., Gardels,* 689 F.2d at 1103-05.

After the initiation of litigation, defendant invoked a *Glomar* response based on exemption 1, Executive Order 12958. Dorn Decl. at ¶ 49.  Defendant alleges that it was correct in refusing plaintiff's request to search for documents regarding Pablo Escobar, and maintained that it can neither confirm nor deny the existence or nonexistence of records referring to Pablo Escobar. Defendant asserts that there has been no official prior acknowledgement by the defendant that it has or does not have records pertaining to Pablo Escobar. Def. Mot. Sum. J. at 8. Invoking the *Glomar* response, defendant maintains that this will "'prevent disclosing to our adversaries the specific persons and areas in which the CIA is interested and upon which it focuses its methods and resources

. . . The disclosure to a potential U.S. intelligence target of the areas and persons of CIA interest would indicate to that target how CIA is allocating its resources.'" Dorn Decl. ¶ 54.  Defendant concludes that it "properly refused to search for records regarding someone who appeared to be a foreign national in order to safeguard intelligence sources, methods and U.S. Foreign relations interests." Def. Mot. Sum. J. at 9.  Further, defendant asserts that if it admits that it possesses information regarding Pablo Escobar, it would be admitting that intelligence methods have been applied against a foreign national. Def. Opp. to Pl.'s Mot. Sum. J. at 7.  Defendant asserts that this admission could frustrate continuing efforts as any associates of this person could take countermeasures to prohibit defendant from detecting future activities. *Id.*

Plaintiff asserts that defendant's failure to search for their requested term "Pablo Escobar" made its search inadequate. Plaintiff points to the fact that when they sent in their initial request in 2004, defendant informed the plaintiff that it had previously searched using the term "Escobar" and released that information to the plaintiff. Pl. Mot. Sum. J. at 18.  It was only at the commencement of this litigation that defendant invoked the *Glomar* response, refusing to "confirm or deny existence or nonexistence of requested information as the fact of its existence or nonexistence is classified." *Wolf*, 473 F.3d at 374.  Plaintiff argues that defendant has violated FOIA by not searching for the requested search term "Pablo Escobar" as "(1) its affidavit fails to support its claimed *Glomar* Response, (2) the asserted reasons for the *Glomar* response are not plausible, (3) information regarding Pablo Escobar has already been officially acknowledged. Pl. Mot. Sum. J. at 19.

Plaintiff additionally asserts that defendant's reasons for using a *Glomar* response are not plausible. In order for a FOIA exemption to be sufficient, the agency's claimed invocation must appear logical or plausible. *Wolf*, 473 F. 3d at 374 – 75, *citing Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982) and *Hayden*, 608 F.2d at 1388.   In this situation, the plaintiff requests that the Court take judicial notice that Pablo Escobar is, in fact, deceased. Pl. Mot. Sum. J. at 21.   According to plaintiff, defendant, via Dorn's Declaration, claims that if the CIA were to admit to having information regarding Pablo Escobar,

> he could take countermeasures to identify, if possible, and frustrate the methods in order to make his future activities undetectable by the CIA. If the foreign national's countermeasures are successful, the CIA loses its ability to monitor his activities. Moreover, others who may be collaborating with the foreign natioanl [sic] also will soon cease engaging in these detectable activities with similar results.

Dorn Decl. at ¶ 51.  As plaintiff points out, it would be incredibly difficult for Pablo Escobar to frustrate the CIA's measure as he died in 1993. Pl. Mot. Sum. J. at 21.  The next example that the defendant provides via the Dorn declaration for their *Glomar* response is that if the defendant admitted that it does not possess information about Pablo Escobar, "[t]he result of this admission is that [Pablo Escobar] would know that his operational security practices have successfully defeated CIA intelligence methods and that he can act with impunity." Dorn Decl. at ¶ 52.  Plaintiff again points out that it is "impossible for a dead man to successfully defeat CIA intelligence methods or act with impunity." Pl. Mot. Sum. J. at 22.

Defendant responds to plaintiff's arguments by simply saying that its *Glomar* response is still reasonable as "these reasons continue to apply even after the death of the

individual about whom information is sought from the CIA." Def. Opp. to Pl. Mot. Sum. J. at 7.

Finally, plaintiff highlights the fact that defendant has already acknowledged it does, in fact, have information regarding "Pablo Escobar" as their initial response to plaintiff was to refer to a previous search request. Pl. Mot. Sum. J. at 23.  Plaintiff asserts that it was not until after litigation had commenced that defendant raised the *Glomar* defense as whether the CIA gathered information on Pablo Escobar is a "classified fact." Dorn Decl. ¶ 49.  Plaintiff argues that this cannot be the case as defendant had previously publicly acknowledged that records do exist. Pl. Mot. Sum. J. at 23.  Additionally, plaintiff notes that documents that have already been released to plaintiff and the Court as well as noted in the *Vaughn* Index from the defendant that pertain to Escobar. *Id.*[2] Plaintiff concludes that because defendant has already released information "pertaining to Pablo Escobar" the existence of these records cannot be classified and a *Glomar* response has no standing. *Id* at 24.

Defendant asserts that the initial search they conducted for plaintiff was for previously released documents that were from the Foreign Broadcast Information Service ("FBIS"). Def. Opp to Pl. Mot. Sum. J. at 7.  Defendant further asserts that the FBIS collected "openly available news and information from non-US media sources and any documents located in that search were open source, unclassified, documents, already within the public domain." DiMaio Decl. ¶ 7.  Defendant, in its argument, fails to

---

[2] "For example, Document 1340584 states, "Escobar probably believes only a sustained bombing against upper-class targets will force the government to accept his accept [sic] terms for surrender." Pl. Mot. Sum. J. at 23.

acknowledge its acknowledgement of Escobar in their subsequent search or in their *Vaughn* Index that was released to the plaintiff and the Court.

Defendant's argument that they only released "open source" records is inaccurate. It is undisputed and defendant even shows, through its declarations that it has released information from other directorates within the agency. Additionally, defendant ran multiple searches for plaintiff using the term "Escobar" and not only disclosed responsive documents, but also created Vaughn Indices explaining their withholding of certain information. The Court finds it hard to believe that this was done solely for open source material that is open to the public. Because defendant has demonstrated the existence of documents pertaining to "Pablo Escobar," this Court finds that defendant has acknowledged their existence. The Court holds that defendant's *Glomar* response is invalid and denies summary judgment on this point for the defendant. The court further orders defendant to perform plaintiff's requested search for records relating to Pablo Escobar.

### D.      Referral of Records to Another Agency

In addition to the documents that defendant supplied to plaintiff, defendant referred plaintiff's request to the Department of State ("DOS") and the Drug Enforcement Administration ("DEA") as the defendant discovered a nine-page teletype that originated at the DEA. Executive Order 12958 § 3.7(b) mandates this referral. When an agency receives a FOIA request for records in its possession, "it must take responsibility for processing the request" even if the documents originated elsewhere. *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir.1983). Referrals to the originating agency are appropriate, but a referral system constitutes withholding "if its net effect is significantly to impair the

requester's ability to obtain the records or significantly to increase the amount of time [s]he must wait to obtain them." *Id*. The withholding is "'improper' unless the agency can offer a reasonable explanation for its procedure." *Id*.

Plaintiff asserts that defendant's referral of records to other "originating agencies"[3] significantly delayed the disclosure of records to plaintiff. Pl. Mot. Sum. J. at 24. Plaintiff argues that "[w]hen an agency receives a FOIA request for 'agency records' in its possession, it must take responsibility for processing the request. It cannot simply refuse to act on the ground that the documents originated elsewhere." *McGhee*, 697 F.2d at 1110.  Plaintiff further claims that the origin of the documents is irrelevant, as long as they are in an agency's possession, they are 'agency records' and therefore defendant has a duty to release them. Pl. Mot. Sum. J. at 25.

Defendant asserts that pursuant to Executive Order 12958 § 3.7 (b) "third agency rule," it properly referred these documents to the DOS and DEA accordingly. Def Mot. Sum. J. at 9–10.  Defendant explains that many of the responsive documents located in its files originated from other agencies, specifically the Department of Defense ("DOD"), Department of State ("DOS"), National Security Agency ("NSA"), and the Drug Enforcement Agency ("DEA"). *Id*.  As standard procedure dictated, defendant coordinated with those agencies to obtain the documents and then those documents were included in defendant's response to the plaintiff. *Id*.

Once defendant discovered that some of the requested records originated with other agencies, it followed standard procedure by referring these documents to the DEA

---

[3] "These were responsive documents '*located in the CIA's files,*' but which contain[ed] information originated by the Department of Defense ('DOD'), Department of State ('DOS'), National Security Agency ('NSA'), and the Drug Enforcement Agency ('DEA')." Paz y Mino Decl. at ¶ 17; Dorn Decl. at ¶ 7; Plt. Mot. Sum. J. at 24.

and DOS for its direct response.  Since defendant was able to determine that the documents originated entirely with the DEA and the DOS, it was correct in referring the documents to those agencies for its direct response to plaintiff. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1108 (D.C. Cir 2007). The requested documents were released to plaintiff from the DOS in February of 2012 and from the DEA in March of 2012. Pl. Surr. to Def. Fin. Mot. Sum. J. at 12.  Plaintiff, in its surreply, argues that defendant's referral of these documents to other agencies caused undue delay and thus violated FOIA via the disclosure of records to the plaintiff. *Id*. This Court finds that because defendant acted in accordance with agency operating procedures for processing requests it has not violated FOIA. This Court additionally notes that this referral has not appeared to hinder the plaintiff's ability to gain access to these documents as plaintiff concedes to have documents from the DEA and DOS in their possession.

### E.    Withholding Documents under Exemptions

Summary judgment is only proper if the agency's search was adequate and FOIA exemptions were properly invoked. *See King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987). The government must file affidavits and a "*Vaughn* Index" to enable the court to perform this *de novo* review of the government's classification decision.  *Vaughn*, 484 F.2d at 827; *Coldiron v. United States Dep't of Justice*, 310 F. Supp. 2d 44, 46 (D.D.C. 2004). The supporting affidavit must contain sufficient detail to forge the "logical connection between the information withheld and the claimed exemption." *Oglesby II*, 79 F.3d at 1178 (citiation omitted).  Included in the Vaughn Index must be (1) a description of each document being withheld, and (2) an explanation of the reason for the agency's nondisclosure. *Id*. at 1176 (citation omitted). The index must provide "as much

information as possible without thwarting the [asserted] exemption's purpose" *King*, 830 F.2d at 224. Defendant submitted the Marilyn Dorn Declaration ("Dorn Decl.") and accompanying *Vaughn* indices to prove the adequacy of its exemptions. The Court will examine defendant's justifications below.

### 1.    Exemption 1

Exemption 1 protects matters that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order[.]" 5 U.S.C. § 552(b)(1). Pursuant to Executive Order 12598, 60 Fed. Reg. 19,827, § 1.5, information may be classified only if all of the following conditions are met:

> (1) an original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one of more of the categories of information listed in section 1.4 of this order; and
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 12958, § 1.1(a).[4] The phrase "damage to the national security" means "harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information." Exec. Order. No. 12958 § 6.1(j). Information may be classified either at the "top secret," "secret," or "confidential" level, id. § 1.2(a), and such classified information must fall within one of the following categories:

---

[4] Exec. Order No. 12958, 60 Fed Reg. 19825 (Apr. 20, 1995) was further amended by Exec. Order 13292 Fed. Reg. 15,315 (Mar. 28, 2003).

> (a) military plans, weapons systems, or operations;
> (b) foreign government information;
> (c) intelligence activities (including special activities), intelligence sources or methods, or cryptology;
> (d) foreign relations or foreign activities of the United States, including confidential sources;
> (e) scientific, technological, or economic matters relating to the national security, which includes defense against transnational terrorism;
> (f) United States Government programs for safeguarding nuclear materials or facilities;
> (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, which includes defense against transnational terrorism; or (h) weapons of mass destruction.

Id. § 1.4.

### a.       *Documents 1333991 and 1333992*

Defendant withholds, pursuant to Exemption 1, documents 1333991 and 1333992, respectively consisting of "scope note and analytic assessment regarding the diversifying Latin American drug threat in 2000" and an "intelligence report prepared by the DCI Crime and Narcotics Center in 1997." Def. Opp to Pl. Mot. Sum. J. at 14.  1333991 satisfies subsection (A) of 5 U.S.C. § 552(b)(1) because it falls under Exec. Order No. 12958 § 1.4(d) which allows for classification of "foreign relations or foreign activities of the United States" as well as intelligence activities (including special activities), intelligence sources or methods, or cryptology." 1333992 also satisfies subsection (A) of 5 U.S.C § 552(b)(1) because the document falls under Exec. Order No. 12958 § 1.4(c) which allows for classification of "intelligence sources or methods, or cryptology." Defendant also points out that it released all information within each document that pertained to the plaintiff's search, specifically information regarding Pablo Escobar's death, which was segregated from the rest of the document and released. Def. Opp to Pl. Mot. Sum. J. at 14.  The redacted portions of the documents were properly classified and

did not relate to plaintiff's search request. *Id*. In light of defendant's explanation, the Court finds that defendant properly withheld the specific documents.

> b. *Documents 1340582, 1340583, 1340584, 1340585,
> and 1340586*

Defendant has also withheld, pursuant to exemption 1, the following five reports: 1340582, 1340583, 1340584, 1340585, and 1340586. They consist of a cable dealing with the death of Pablo Escobar, articles about the Latin American military issues, an article discussing the escalating drug-related violence in Columbia, which specifically mentions a car-bomb attack carried out on a PEPES facility, articles that concern Columbia and extralegal steps against Escobar with a PEPES mention, and articles discussing the implications of Escobar's death. *Id*. at 10–12. Defendant asserts that each of these documents is properly classified pursuant to an Executive order 12958 § 1.4: that the redactions made in each of these documents were in the interest of "national defense or foreign policy the release of which would cause harm to U.S. foreign relations" as well as protecting "intelligence sources and methods; forging government information, and CIA internal practices, organizational data, functions, dissemination, and cable addresses." *Id*.

With respect to these documents, plaintiff argues that defendant failed to adequately describe the information that was withheld under exemption 1. Pl. Mot. Sum. J. at 36. Defendant, in its response as well as in the indices themselves, indicates that it has properly applied the executive order as well as released the responsive information that it was able to release without compromising classified information. Def. opp. To pl. Mot. Sum. J. at 11. Had defendant further explained their reasons for withholding the information in their *Vaughn* indices, it would have defeated the purpose of exemption 1

and risked exposing sensitive information to plaintiff. In addition, defendant points to

their declaration to supplement the explanation on their indices. *Id*. If agencies'

declarations were made in good faith, it is not the place of the court "to conduct a detailed

inquiry to decide whether it agrees" with them. *Halperin v. CIA*, 629 F.2d 144, 148 (D.C.

Cir. 1980).  Seeing no evidence of bad faith, the Court will defer to defendant's

exemption and hold that the redacted portions of the documents may be withheld.

### c.      Documents 1391030 and 1397243

In addition to the previous documents, defendant has also withheld, under

exemption 1, documents 1391030 and 1397243. The first document is a briefing given to

NSC and SSCI from December 6, 1993 on the "Los Pepes" affair. Def. Opp. to Pl. Mot.

Sum. J. at 11-12.  The second document is also a briefing, given to HSBI staff also from

December 6, 1993 on the "results of "Los Pepes" Panel and on Death of Pablo Escobar."

Doc. No. 1391030 and 1397243.  Again, defendant argues that these documents are

properly classified pursuant to Executive Order 12958 § 1.4.  For each document,

defendant disclosed any "reasonably segregable" information and delivered that to

plaintiff. *Mead Data Cent*., 566 F.2d at 260.  Defendant stated both in the *Vaughn* index

as well as in Ralph DiMaio's Declaration ('DiMaio Decl.') that the redacted portions of

the document were classified "in the interest of national defense or foreign policy;

specific intelligence activities (including special activities) . . . intelligence sources,

intelligence methods, location of a covert CIA installation, foreign government

information, and CIA internal practices. . ." Doc No. 1391030, 1397243.  Again, plaintiff

asserts that defendant failed to describe information withheld with any specificity. Pl.

opp. to Def. Supp. to Mot. Sum. J. at 36.  Plaintiff further argues that defendant failed to

meet the criteria for classification or the harm that releasing the information would impose on national security. *Id*. This Court finds that defendant's descriptions were sufficient to justify its withholdings in these documents. If defendant were to describe the redacted parts of the document with more specificity, as the plaintiff requested, defendant would have been disclosing the exact information it sought to withhold. The Court upholds defendant's exemption one claims for these documents.

### d.       Document 1368251

This document originated with the DEA and defendant referred to the agency pursuant to Executive Order 12958. Def. Opp. to Pl. Mot. Sum. J. at 13.  In the *Vaughn* Index that defendant provided plaintiff, defendant alerted plaintiff to the referral and exempted the document pursuant to Executive Order 12958 as the order requires referral of documents that originate with said agency for its direct response. Def. Opp to Pl. Mot. Sum. J. at 13.  The DEA then submitted the unclassified portions of the teletype to plaintiff and provided its own, separate declaration along with separate exemptions for the nine-page teletype. Supp. Mem. in Supp. of Def. Mot. Sum. J. at 1.  While the exemptions offered by the DEA will be discussed later in this opinion, the Court finds that defendant properly invoked exemption 1 and properly referred the document to the appropriate agencies.

### e.       Document 1385928

Defendant withholds, pursuant to exemption 1, a five page document that consists of an "internal CIA cable concerning availability of a person . . . a case summary of polygraph derived information and case comments; a cover sheet with internal routing information . . . and a two page summary of a polygraph interview." Doc. No. 1385928.

The interview satisfies subsection (A) of 5 U.S.C. § 552(b)(1) because it falls under Exec.

Order No. 12958 § 1.4(d) which allows for classification of "intelligence activities

(including special activities), intelligence sources or methods, or cryptology" and

"foreign relations or foreign activities of the United States, including confidential

sources."  The document defendant withheld contains, among other things, the covert

location of a CIA installation, CIA investigative techniques and procedures, and

polygraph derived information. DiMaio Decl.  This satisfies the § 552(b)(1)(B) because

the document was properly classified as an intelligence document.  Additionally,

defendant argues that this document is classified at the secret level and contains

intelligence sources and methods as well as results from a polygraph and should be fully

withheld. *Id*.  While it is true that "reasonably segregable" portions of withheld

documents must be disclosed unless they are "inextricably intertwined with exempt

portions," *Mead Data Cent*., 566 F.2d at 260, this Court finds that defendant correctly

withheld the interview under exemption 1 and described with requisite specificity the

reasons for withholding.

### 2.    Exemption 2 – "low two"

Exemption 2 protects from disclosure information "related solely to the internal

personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The Supreme Court's

recent decision in *Milner v. U.S. Dep't of the Navy*, 131 S. Ct. 1259 (2011) eliminates the

distinction between the formerly-recognized "High 2"[5] and "Low 2"[6] exemptions. *Id.* at

1263. Instead, the Court ruled that "Low 2 is all of 2 (and that High 2 is not 2 at all . . . .)"

---

[5] "High 2" protected information the disclosure of which would risk circumvention of the law.
[6] "Low 2" protected materials concerning human resources and employee relations.

*Id.* at 1265.  It interpreted exemption 2 to encompass "only records relating to issues of

employee relations and human resources." *Id*. at 1271.

In this case, defendant invoked exemption 2 in order to withhold information

from two documents. Def. Mot. Sum. J. at 12.  These withholdings included information

such as the signature of a CIA officer as well as internal filing instructions and

administrative routing information. *Id*. Defendant argued that there was a lack of public

interest in this information and it does not justify the administrative burden on the CIA.

*Id*.  This explanation for withholding this information is still in line with the recent

*Milner* ruling. In that case, the Court emphasized that the "practice of 'construing FOIA

exemptions narrowly' stands on especially firm footing with respect to Exemption 2."

*Milner*, 131 S. Ct. at 1265–66 (internal citation omitted) (quoting DOJ v. *Landano*, 508

U.S. 165, 181(1993)). Narrow construction of § 552(b)(2), particularly the phrase

"personnel rules and practices of an agency" would include the signature of a CIA

officer, internal filing instructions, and an internal cover sheet with administrative routing

information. This Court finds that defendant properly withheld this information under

exemption 2.

### 3.      Exemption 3 – CIA Act of 1949

Exemption 3 covers records that are

[S]pecifically exempted from disclosure by statute . . ., provided that such
statute (A) requires that the matters be withheld from the public in such a
manner as to leave no discretion on the issue, or (B) establishes particular
criteria for withholding or refers to particular types of matters to be
withheld. . . .

5 U.S.C. § 552(b)(3). When an agency invokes Exemption 3, it must submit affidavits

that provide "the kind of detailed, scrupulous description [of the withheld documents]

that enables a District Court judge to perform a de novo review." *Church of Scientology of California, Inc. v. Turner*, 662 F.2d 784, 786 (D.C. Cir. 1980). Though the affidavits need not contain factual descriptions the public disclosure of which would endanger the agency's mission, *Vaughn v. Rosen* 484 F.2d 820, 826–27 (D.C. Cir. 1973), neither can they be vague or conclusory. *Church of Scientology*, 662 F.2d at 787. This Court seeks to balance the inherent tension between the public's interest in government goings-on with the protection of an agency's legitimate need for privacy. As in *Vaughn*, this Court relies on the agency to help strike the balance by providing an appropriately detailed affidavit. See *Vaughn*, 484 F.2d at 826–27.

Defendant invoked the CIA Act of 1949 and maintains that under this act, they properly withheld intelligence sources and methods. Def. Mot. Sum. J. at 13. The Act declares:

> In the interests of the security of the foreign intelligence activities of the United States and in order further to implement section 403-1(i) of this title that the Director of National Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from the provisions of sections 1 and 2 of the Act of August 28, 1935 (49 Stat. 956, 957; 5 U.S.C. 654), and the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency: Provided, That in furtherance of this section, the Director of the Office of Management and Budget shall make no reports to the Congress in connection with the Agency under section 607 of the Act of June 30, 1945, as amended (5 U.S.C. 947(b)).

50 U.S.C. 403g.  Defendant specifically cites to section six of the act which provides that "CIA shall be exempt from the 'provision of any other laws which require the publication or disclosure of the organization, function, names, official titles, salaries, or numbers of personnel employed by the agency.'" Def. Mot. Sum. J. at 13 citing 50 U.S.C. 403g.

Defendant argues that this provision does not allow it to disclose any information that

relates to the collection of foreign intelligence through its sources and methods. *Id*. Specifically, defendant withheld a polygraph interview because they allege it involves intelligence sources and methods, and organizational and functional information as well as additional signatures, employee's names and personal identifiers, etc. *Id*.  Plaintiff concedes that section 403g permits the CIA to withhold a signature of a CIA officer, employees' names and personal identifiers, and cryptonyms and pseudonyms pursuant to exemption 3. However, plaintiff contends that defendant's use of the Act under exemption 3 was overbroad and was not intended to cover material that "relates to the CIA's "function" of collecting "foreign intelligence through its intelligence sources and methods." Pl. Opp. to Def. Supp. Mot. Sum. J. at 38. This court is satisfied, after reviewing the declarations as well as the *Vaughn* index, that defendant has met its burden of exemption 3 to withhold the information.

### 4.      Exemption 6

Not relying solely on exemption 2, defendant withholds personal information that identifies names and/or identifying information about specific individuals, CIA employees, and their family members under exemption 6 as well. FOIA § 552(b)(6) exempts from disclosure "personnel and medical files and similar files" if its disclosure would constitute a clearly unwarranted invasion of personal privacy. The phrase "similar files" should be interpreted broadly and exempts all information that "applies to a particular individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599–603 (1982).

However, information about federal employees generally does not qualify for protection. *See Arieff v. Dep't of the Navy*, 712 F.2d 1462, 1467–68 (D.C. Cir. 1983) (declining to protect information about a large group of individuals); *Aguirre v. SEC*, 551

F. Supp. 2d 33, 54 (D.D.C. 2008) ("Correspondence does not become personal solely because it identifies government employees."). While "similar files" must be construed broadly, it must not become devoid of meaning altogether. There must be *some* personal information that relates to a particular individual for exemption 6 protection to be warranted.

Defendant asserts that it withheld personal information is about individuals including CIA employees and their family members. Defendant further argues that the public interest in this information is nonexistent and it has thus properly applied exemption (b)(6). Def. Mot. Sum. J. at 15. Plaintiff has insisted, through its motions, that it is are not interested in obtaining information regarding CIA employees and their family members. Pl. Mot. Sum. J. at 27. In light of the lack of legal objection from the plaintiff and defendant's description, this Court finds that defendant properly withheld this information under exemption 6.

### 5. Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm listed in Exemption 7's subsections. 5 U.S.C. § 552(b)(7); *see Abramson*, 456 U.S. at 622. In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate[] to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. DOJ*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citations and internal quotations omitted). The connection between an individual and potential violation of federal law or security risk must be "based on

information sufficient to support at least a 'colorable claim' of rationality." *King v. DOJ,* 802 F.2d 210, 229 (D.C. Cir. 1987).

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). *See Morley v. CIA*, 508 F.3d 1108, 1129 (D.C. Cir. 2007) (refusing to be overly formalistic and finding that withholding of documents that would release insight into agencies' investigatory or procedural techniques is also proper).

Defendant asserts exemption 7(E) as its reason to withhold a polygraph interview. Def. Mot. Sum. J. at 15. Defendant claims that the information contained within the polygraph, while partially responsive to plaintiff's request would have disclosed agency investigatory techniques and procedures of not only the agency but also certain other law enforcement agencies. *Id*. Defendant goes into further detail in the index, stating that part of the information contained in the document dealt with investigatory records, which fall squarely within exemption 7(E). Even though the plaintiff is correct in contending that not all of the information withheld falls within exemption 7(E), defendant has additionally argued that the information not covered by exemption 7(E) is, in fact, covered by other, more appropriate, exemptions, specifically exemptions 1, 2, 3, and 6. This Court finds that defendant properly raised exemption 7(E) for the investigatory records portion of this document and thus upholds defendant's withholding.

**F.      Segregable Material**

FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonable segregable" information must be disclosed after redacting the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). The Agency must demonstrate that all reasonably segregable material has been released by providing a "detailed justification" rather than "conclusory statements" *Mead Data*, 566 F.2d at 261.

With respect to all documents released to plaintiff, defendant asserts that a "line-by-line review was conducted for all documents at issue to identify and release reasonably segregable, non-exempt portions of documents." First Dorn Decl. ¶ 5. Defendant further argues that the *Vaughn* Indices provide sufficient detail for the justification to withhold the material. In providing these justifications, defendant asserts that they have complied with their obligation to release any segregable information. Def. Mot. Sum. J. at 16. After reviewing the declarations and *Vaughn* indices and seeing no evidence of bad faith, the Court finds that defendant released all reasonably segregable information.

### G. Withholding Documents Referred to Other Agencies

The document referred to DEA and released was a nine-page teletype, portions of which had been redacted pursuant to FOIA exemptions 1, 2, 3, 7(D), and 7(F). The Court returns to the nine-page teletype to determine if defendant has properly asserted each exemption.

### 1. Exemption 1

As discussed above, Exemption 1 protects matters that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order[.]" 5 U.S.C. § 552(b)(1). Pursuant to Executive Order 12598, 60 Fed. Reg. 19,827 § 1.5.

With respect to the DEA document, defendant invokes exemption 1 for withholding agency records, claiming that the information is properly classified as it affects national security, as defined in Executive order 13526 at § 1.1 (a). Little Decl. ¶ 14. Defendant further asserts that the information was properly withheld and meets the requirements set forth in Executive Order 13526 as set forth above in this opinion. In order to ensure that the document was properly classified, defendant then had the document reviewed for classification/declassification because the document had not been reviewed since 1993. Little Decl. ¶ 18. It was determined via the DEA El Paso Intelligence Center ('EPIC') Special Agent-in-Charge (SAC), that the document had a declassify date of April 9, 2018. *Id*. Once this process was complete, defendant applied exemption 1 to twelve different redactions. Pl. Surr. to Def. Final Mot. Sum. J. at 14. Each of the twelve exemption 1 redactions were redacting "intelligence sources." Little Decl. at ¶ 14. This Court finds that defendant has properly classified this information under exemption 1. Further, while the plaintiff argues that defendant failed to provide an adequate explanation for the reason for the exemption, this Court finds that the detailed description provided in the Little declaration of the process of document review and the time taken to determine what could be released to plaintiff was sufficient to show that they had properly applied exemption 1.

2. **Exemption 2**

Again, defendant asserts exemption 2 with respect to the teletype to redact phone numbers. Supp. Mem. in Supp. of Def. Mot. Sum. J. at 4. Exemption 2 protects from disclosure information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  In this case, defendant withholds the internal phone numbers of "internal telephone numbers assigned to staff personnel involved in matters related to criminal investigative activities." Little Decl. ¶ 19. Defendant asserts that the public interest in these numbers is non-existent, and that releasing them could result in interference with internal operations. *Id.*  This explanation of why exemption 2 is appropriate does not comport with *Milner*. In that case, the Court emphasized that the "practice of 'construing FOIA exemptions narrowly' stands on especially firm footing with respect to Exemption 2." *Milner*, 131 S. Ct. at 1265–66 (internal citation omitted) (quoting *DOJ v. Landano*, 508 U.S. 165, 181 (1993)). Narrow construal of § 552(b)(2), particularly the phrase "personnel rules and practices of an agency," demands that phone numbers fall out of its ambit. Phone numbers are not "material[s] concerning employee relations or human resources: 'use of parking facilities or regulations of lunch hours, statements of policy as to sick leave, and the like.'" *Id.* at 1262 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 363 (1976)). Since the phone numbers are neither "rules" nor "practices," exemption 2 is not one of them. However, plaintiff has not addressed this particular exemption in its reply and has stated in previous briefs that it is not seeking information involving phone numbers, or information regarding agency personnel. Pl. Mot. Sum. J. at 27.  "Because when a party does not address arguments raised by a movant, the court may treat those arguments as conceded," *Klugel*, 519 F. Supp. 2d at 72

(citing *Hopkins*, 238 F. Supp. 2d at 178), the Court holds that defendant is entitled to summary judgment on the issue of whether it properly withheld records for exemption 2.

### 3.      Exemption 3

Exemption 3 covers records that are

> specifically exempted from disclosure by statute . . ., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). With respect to the teletype, defendant withheld information pursuant to exemption 3 under the CIA Act of 1949, 50 U.S.C. § 403g.  The information that defendant withheld was an office code of the CIA activity that the agency received a copy of the DEA report. Little Decl. ¶ 34.  Defendant asserts that it withheld that information as it would disclose the organizational structure of the CIA. *Id*. Again, as with exemption 2, plaintiff makes no mention of any issues with this exemption in their reply so the Court holds that defendant is entitled to summary judgment on this issue.

### 4.      Exemption 7(C)

Defendant has also asserted exemption 7(C) as a basis for its non-disclosure of information that could be used to identify individuals. Little Decl. ¶ 22. The withholder must first satisfy the threshold issue of whether the document was created for law enforcement purposes. "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." *Mittleman v. Office of Personnel Management*, 76 F.3d 1240, 1243 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1123 (1997), citing *Pratt v. Webster*, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982).

Next, defendant must prove that an unwarranted invasion of privacy would occur if the documents were disclosed. "The myriad of considerations involved in the Exemption 7(C) balance defy rigid compartmentalization;" therefore, bright line rules are discouraged, and courts must identify the specific circumstances relevant to each case. *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984). The information withheld in the teletype consisted of names and other identifying information "that could reasonably be respected to constitute an unwarranted invasion of privacy." Little Decl. ¶ 22. These people include "third-parties, suspects, law enforcement officers and personnel, and confidential sources. . ." *Id.*  In order to determine whether they could withhold the information, defendant balanced the individual's privacy against any public interest in releasing the information. *Id.* at ¶ 23.  In fact, plaintiff has not addressed the withholding of these names in this specific document from the DEA at all. Plaintiff has only mentioned in previous motions that they are not interested in any names or identifying features of CIA employees or confidential sources being disclosed Pl. Mot. Sum. J. at 27. In light of the lack of argument, this Court finds that plaintiff has conceded this withholding and rules in favor of summary judgment for the defendant on this exemption for the teletype.

### 5.    Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source.

40

5 U.S.C. § 552(b)(7)(D). There is no assumption that a source is confidential for purposes of Exemption 7(D) whenever a source provides information to a law enforcement agency in the course of a criminal investigation. See *Landano*, 508 U.S. at 181. Rather, a source's confidentiality is determined on a case-by-case basis. *Id*. at 179–80. "A source is confidential within the meaning of 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *Landano*, 508 U.S. at 172).

Confidentiality can be established expressly or impliedly. Regardless of which type of confidentiality is asserted, the focus should always be on whether the *source* of the information spoke with the understanding of confidentiality, not whether the *document* is generally thought to be confidential. *Landano*, 508 U.S. at 172. To claim express confidentiality, an agency must offer "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. DOJ*, 164 F.3d 20, 34 (D.C. Cir. 1998) (quoting *Davin v. DOJ*, 60 F.3d 1043, 1061 (3d Cir. 1995)). This evidence can take many different forms, but it must "permit meaningful judicial review by providing a sufficiently detailed explanation" for the invocation of Exemption 7(D). *Id.*

This Court has stated that "[t]he nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists." *Amuso v. DOJ*, 600 F. Supp. 2d 78, 100 (D.D.C. 2009). The "violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source who provides information to investigators." *Lasko v. DOJ*, 684

F. Supp. 2d 120, 134 (D.D.C. 2010). With these principles in mind, this Court turns to the facts at hand.

Defendant withholds much of the document under exemption 7(D) as it argues that the information, when combined with other information could identify a confidential source. Def. Supp. Mot. Sum. J. at 11.  Defendant argues that given the violence associated with drug cartels, "it is reasonable to assume an implied promise of confidentiality as to the individuals who provided information to the DEA." Little Decl. ¶ 29.  As with the previous exemptions, plaintiff has not offered any argument as to why this information should not be exempted, effectively conceding that the exemption is appropriate. Given the lack of legal argument from the plaintiff, this Court finds that defendant properly withheld confidential source information pursuant to exemption 7(D).

### 6.      Exemption (7)(F)

Exemption 7(F) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information… could reasonably be expected to endanger the life or physical safety of any individual" 5 U.S.C. § 552 (b)(7)(F).

Again, defendant asserts that what it withheld from plaintiff could, in conjunction with other information released, endanger the life and physical safety of the confidential source. Little Decl. ¶ 30.  Yet again, plaintiff does not respond to defendant's use of exemption 7(F). This Court finds plaintiff's lack of a response to this withholding a concession that defendant properly upheld the redacted material and finds that defendant properly withheld information under exemption 7(F).

### H.      Declaratory Judgment

### 1.    CIA's Failure to Respond to the Original Appeal:

"The purpose of a declaratory judgment is to settle legal rights not already determined." *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986).  The goal of declaratory relief "is to clarify in an expeditious manner the 'rights, liabilities, and other legal relationships' between adverse parties." *Bethel Native Corp. v. Dept. of Interior*, 208 F.3d 1171, 1176 (9th Cir. 2000).  Under FOIA, an agency has twenty days to respond to an appeal. 5 U.S.C. § 552(a)(6)(A)(ii).  If an agency fails to process an appeal within the twenty-day timeframe, the requestor then may seek remedy within a federal court. *Id.* § 552(a)(4)(B).

Defendant argues that plaintiff is not entitled to declaratory relief as the plaintiff had the option and did file for judicial relief after defendant was unable to make a determination on plaintiff's appeal within the twenty day time frame. Def. Opp. to Pl. Mot. Sum. J. at 14.  Defendant contends that because plaintiff has the remedy of filing a complaint in the District Court, it is not entitled to declaratory relief. *Id.*

Plaintiff contends that defendant's ongoing policy of delaying appeals for longer than the twenty day time limit conflicts with FOIA statutory requirements and is therefore invalid. Pl. Opp. to Def. supp. Mot. Sum. J. at 42.

In light of the remedy of initiating a cause of action within federal court provided by FOIA, this Court finds that a declaratory judgment for the plaintiff on this point is improper. The Court denies summary judgment for plaintiff and grants it for defendant on this point.

### 2.    CIA's Denial of a Request for Public Interest Fee Waiver

Plaintiff has also argued that it is entitled to declaratory relief as defendant denied their initial request of a fee waiver. Pl. Mot. Sum. J. at 39.  While plaintiff notes that defendant did ultimately waive its fee, plaintiff contends that defendant did so "as a matter of administrative discretion" and denied plaintiff's "public interest fee waiver" request. Pl. Opp. to Def. Supp. Mot. Sum. J. at 44; Dorn Decl. ¶ 23. Thus, plaintiff argues that defendant improperly denied its fee waiver request. *Id*. Plaintiff argues that defendant could, in future requests, deny plaintiff a fee waiver. *Id*. at 45.

Defendant argues that since it ultimately waived their initial fee for Plaintiff's FOIA request, the plaintiff's fee complaint is moot. Def. Opp. to Pl. Mot. Sum. J. at 16. Defendant argues that since it is not charging fees, there is nothing for the court to remedy. *Id*.   Defendant further refutes plaintiff's argument that they may deny future fee waiver requests as being too speculative. *Id*.

A case is considered moot when "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pharmachemie B.V. v. Barr Laboratories, Inc*., 276 F.3d 627, 631 (D.C. Cir. 2002) (quoting *Clark v. United States*, 915 F.2d 699, 700-01 (D.C. Cir. 1990)).  This Court finds that the fact that plaintiff might at some point in the future file another FOIA claim and that defendant might then refuse to waive fees is no more than speculative. Thus, this issue is moot and the Court grants summary judgment for defendant and denies summary judgment for plaintiff on this point.

## I.      Administrative Procedure Act violation

Plaintiff asserts that it is entitled to relief under the Administrative Procedure Act, as it provides a cause of action to redress defendant's violations of FOIA's statutory mandates. 5 U.S.C. § § 704, 706(1). The Administrative Procedure act states that:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704.  With respect to FOIA cases, this Court has found that "FOIA itself provides an adequate remedy for plaintiffs' claims and separate APA review is not available." *Sierra Club v. U.S. Dept. of Interior*, 384 F. Supp. 2d 1, 30 (D.D.C. 2004). Further, the APA only authorizes judicial review when the agency action is final and there is no adequate remedy. 5 U.S.C. § 703.

In this case, plaintiff commenced litigation after exhausting the appropriate administrative remedies of filing an appeal with defendant after it received its initial documents from their request. As FOIA itself provides plaintiff with an adequate remedy, this Court denies plaintiff summary judgment on its APA claims as a matter of law.

## III.    CONCLUSION

For the foregoing reasons, the Court finds that defendant failed to perform an adequate search by failing to search three of their five directorates as well as failing to search for plaintiff's requested term 'Pablo Escobar.' The Court therefore denies defendant's motion for summary judgment on those issues and grants plaintiff's cross-

motion for summary judgment on those issues, and orders defendant to search the remaining directorates and perform plaintiff's requested search.

The Court also grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment on the applicability of FOIA exemptions 1, 2, 3, 6, 7(C), (D), (E), and (F) to the currently withheld documents.

The Court further grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment on the issue of the plaintiff's entitlement to declaratory judgment with respect to both the fee waiver and the delayed response with respect to the plaintiff's appeal from the defendant.

The Court further grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment on the issue of defendant's violation of the Administrative Procedure Act.

A separate Order consistent with this Memorandum Opinion will issue this date.

Signed by Royce C. Lamberth, Chief Judge, on August 14, 2012.