UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INSTITUTE FOR POLICY STUDIES, <br> Plaintiff, <br><br> v. <br><br> UNITED STATES CENTRAL <br> INTELLIGENCE AGENCY, <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 06-960 (RCL) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

This Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, case once again comes before the Court on the Cross-motions for summary judgment, and on defendant's Motion to Clarify the Court's August 18, 2012 Memorandum Opinion and Order, and the opposition and reply thereto. Upon consideration of these filings, the applicable law, and the entire record in this case, the Court will GRANT in part and DENY in part the issue left to be decided in Plaintiff's Motion for summary judgment [32], GRANT in part and DENY in part the same issue in Defendant's Motion for summary judgment [23], and GRANT defendant's Motion for Clarification [120].

### I. BACKGROUND

This case has been pending in this Court since 2006, and its factual history is laid out in detail in the Court's most recent opinion in this case. *See Inst. for Policy Studies v. CIA*, 885 F. Supp. 2d 120, 131–32 (D.D.C. 2012). The issue now before the Court is whether and how the operational file exemption applies to the records sought in this case, and whether any exception to that exemption applies.

### II. Legal Standards

Under 50 U.S.C. § 3141(f)(4)(A)—the statute governing the treatment of the CIA's operational files under FOIA—if a complainant alleges that the CIA has improperly withheld requested records due to improper exemption of operational files, the CIA must "demonstrate[e] to the court by sworn written submission that exempted operational files likely to contain responsive records currently perform the functions set forth in subsection (b) of this section." As Judge Walton has observed, in such settings the law of the D.C. Circuit requires that the government offer more than conclusory language, recitation of the statutory standard, and vague and sweeping statements which give the Court neither basis to credit the government's assertions nor factual support for essential elements of the operational files exemption. *See Aftergood v. Nat'l Reconnaissance Office*, 441 F. Supp. 2d 37, 45 (D.D.C. 2006) (citing *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) and *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987)).

Additionally, even exempted operational files are

> subject to search and review for information concerning . . . any special activity the existence of which is not exempt from disclosure under the provisions of [FOIA] . . . or the specific subject matter of an investigation by the congressional intelligence committees, the Intelligence Oversight Board, the Department of Justice, the Office of General Counsel of the Central Intelligence Agency, the Office of Inspector General of the Central Intelligence Agency, or the Office of the Director of National Intelligence for any impropriety, or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity.

50 U.S.C. § 3141(c)(2)–(3).

In order for the special activity exception to apply, the requestor must identify a "particular" CIA activity in connection with its request. *Sullivan v. CIA*, 992 F.2d 1249, 1253–54 (1st Cir. 1993). The Senate Report offers some examples of what qualifies: Requests relating to "the Bay of Pigs invasion or the CIA's role in replacement of the Guatemala regime in the

1950s" are sufficiently specific, but requests seeking to declassify "a broad category or type of covert action operations," such as "covert efforts to counter Soviet influence in Western Europe during the 1950s," are not. S. Rep. No. 305, at 24–25. In *Sullivan*, the First Circuit considered and rejected the argument that the CIA's decades-long efforts to thwart Fidel Castro qualified as "special activity," reasoning that those were less like "the overthrow of the Guatemalan government," which "was a discrete operation with a beginning, an end, and a circumscribed middle," and more like the "CIA operations against Soviet influence in Western Europe during the 1950s." 992 F.2d at 1254.

### III. ANALYSIS

#### A. Establishing the Operational File Exemption

Defendant relies on sworn declarations from Marilyn A. Dorn and Ralph S. Dimaio to satisfy its burden under § 3141(f)(4)(A). *See* Def's Final Brief in Supp. of Def's Mot. for Summ. J. and in Opp. to Pl's Cross-Mot. for Summ J. at 11–12. These declarations are insufficient. Defendant says that "Dorn's representation essentially follows the language of the relevant House Report"; unfortunately for defendant, that is all it does. Though the Dorn Declaration certainly says that the "CIA's operational files contain records reporting information collected through intelligence sources and methods" which were "not subsequently disseminated to intelligence consumers," it offers the Court no independent ground to agree with that assessment. Dorn Decl. at ¶ 48. Likewise, the DiMaio Declaration does no more than assert that the files Defendant claims are exempt operational files do indeed fit the statutory definition of exempt operational files. *See* DiMaio Decl. at ¶ 15. As the old saying goes, however, "show, don't tell": Section 3141(f)(4)(A) requires that the CIA *demonstrate* "that exempted operational files likely to contain responsive records currently perform the functions set forth in subsection (b)."

Assertion, no matter how sincerely meant, is not demonstration. And in the words of the D.C. Circuit, "where no factual support is provided for an *essential* element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm.*, 823 F.2d 574, 585 (D.C. Cir. 1987) (emphasis original). But because the Court also concludes that the special activity exception applies, no detailed discussion of the inadequacy of defendant's attempt to claim the operational file exemption is necessary: Even if defendant had successfully invoked that exemption, the special activity exception would undo it, leading to the same result.

### B. Investigation Exception

The Court, having reviewed the Los Pepes Panel report and its associated memoranda ex parte and in camera at the request of both parties, concludes that § 431(c)(3)'s investigation exception does not apply because the panel was not engaged in the sort of investigation necessary to trigger the exception.

### C. Special Activity Exception

Plaintiff has demonstrated that their request concerns a sufficiently specific special activity the existence of which is unclassified, namely, what they claim were CIA efforts to "assist in the apprehension of [Pablo] Escobar and other members of the Medellin cartel." Culver Decl. at 34. These efforts, like the Bay of Pigs or the overthrow of the Guatemalan government, can fairly be described as constituting a discrete operation with a beginning, an end, and a circumscribed middle. *Sullivan*, 992 F.2d at 1254. Likewise, unredacted portions of the Los Pepes Panel documents describe an operation that began with "the establishment of a U.S. Embassy Joint Task Force and the concurrent establishment of a Colombian Task Force, all designed to assist in the apprehension of Escobar and other members of the Medellin cartel" and

ended, presumably, with "the shoot-out with Escobar and his body guard which resulted in Escobar's death." Culver Decl. at 34–35. Defendant asserts simply that the Los Pepes Panel documents do not "reveal the existence (or non-existence) of a specific CIA covert action operation involving Los Pepes or Escobar."

It is true that no one line in the unredacted portions of the documents independently affirms the existence of declassified CIA special activities connected to Los Pepes or Escobar. Nevertheless, the evidence in the record supports the Court's conclusion that such activities (1) did exist, (2) were CIA-linked, and (3) have been declassified.

### i. Special Activities did Exist

Most tellingly, two of the defendant's own Vaughn Indices for the Los Pepes Panel documents state that portions of the documents contain "special activities." *See, e.g.*, Culver. Decl. at 26, 33. Defendant responds that the Vaughn Indices merely recite language from Executive Order 12958[1]—which, in § 1.5, lists categories of information which may be considered for classification—and that "reciting this broad language" is not an official acknowledgment of covert CIA action. A review of the actual passages is instructive. On page 26 the IPS Index states, under "Document Description," that "the information withheld would reveal information that is properly classified pursuant to an Executive Order in the interest of national defense or foreign policy; specific intelligence (including special activities); intelligence sources; . . . and official titles and assignments of CIA employees." Culver Decl. at 26. Similarly, on page 33 the IPS Index says, under "Document Description," that "the information withheld would reveal information that is properly classified pursuant to an Executive Order in the interest of national defense or foreign policy; specific intelligence (including special

---

[1] Exec. Order No. 12958, 60 Fed Reg. 19825 (Apr. 20, 1995) was further amended by Exec. Order 13292 Fed. Reg. 15,315 (Mar. 28, 2003).

activities)." Culver Decl. at 33. It is unclear why defendant dismisses these passages as "recitation." Many recitations are quite grave—couples recite vows of fidelity at their wedding, court officers recite an oath of truthfulness to witnesses, and the President recites an oath to preserve, protect and defend the Constitution of the United States. The Court's best guess, then, is that defendant means to say it recited the phrase "special activities" the way a sullen seventh grader recites Hamlet's soliloquy, i.e., without conviction, while furtively glancing at the glacial progress of a minute hand ticking away the time until lunch.

The Court is unconvinced. EO 12958 § 1.5 provides a list of classifiable information. The relevant Vaughn Indices state that defendant redacted material in order to protect, among other things, one of those categories—"special activities." Defendant offers literally no evidence that the Vaughn Indices mean anything other than what they so plainly mean.

Defendant could, hypothetically, have argued that it accidentally copied-and-pasted boilerplate language into the Vaughn Indices that included the phrase "special activities" even though the reports contain no mention of such activities. Not that such an argument would persuade; the indices do not use identical language in discussing what information categories the redactions protect, and one index even omits mention of "special activities," strongly suggesting that the author or authors of the indices deliberately chose what terms of art to use in their document descriptions. *See* Culver. Decl. at 37.

### ii. The Special Activities Were CIA-Linked

Defendant could also, hypothetically, have argued that the Vaughn Indices disclose the existence of "special activities," but not their affiliation, i.e. not whether these were CIA special activities. This argument would fail as well. In *Sullivan*, the court noted that the House Report accompanying the Information Act defines the statutory phrase "special activity" as "any activity

of the United States Government, other than an activity intended solely for obtaining necessary intelligence, which is planned and executed so that the role of the United States is not apparent or acknowledged publicly, and functions in support of any such activity, but not including diplomatic activities." 992 F.2d at 1253 (citing H.R. REP. NO. 98-726(I), at 28). Despite the potential breadth of the phrase "any activity of the United States Government," the *Sullivan* court read this to nevertheless mean a particular *CIA* activity. *Id.* This Court has done so as well. *See Inst. for Policy Studies v. CIA*, 885 F. Supp. 2d at 138. For the following reasons, the Court again concludes that the term of art "special activities," as used in the relevant Vaughn Indices, means CIA-linked special activities.

First, according to the Los Pepes Panel documents themselves, the House Permanent Select Committee on Intelligence was briefed on the matter by CIA staff, and the National Security Council and Senate Select Committee on Intelligence were briefed by Directorate of Operations officers, including the chief of the CIA's independent investigations unit. Culver Decl. at 27, 34. The only rational explanation the Court can muster for the CIA's extensive involvement in explaining this matter to oversight entities—given that defendant has offered no alternative—is that the CIA was responsible for the intelligence activities (including special activities) at issue in the report.

Second, defendant's own evidence supports this conclusion: The very executive order defendant claims to have been mindlessly reciting, EO 12958, repeatedly uses the phrase "special activities" in contexts that make plain that the phrase denotes CIA involvement. *See* EO 12958, § 3.5(c) ("the Secretary of Defense may establish special procedures for systematic review for declassification of classified cryptologic information, and the Director of Central Intelligence may establish special procedures for systematic review for declassification of

classified information pertaining to intelligence activities (including special activities)"); § 3.5(e) ("After consultation with affected agencies, the Secretary of Defense shall develop special procedures for the review of cryptologic information, the Director of Central Intelligence shall develop special procedures for the review of information pertaining to intelligence activities (including special activities)"); § 4.4 ("For special access programs pertaining to intelligence activities (including special activities, but not including military operational, strategic and tactical programs), or intelligence sources or methods, this function will be exercised by the Director of Central Intelligence.")  There is even a "Special Activities Division" within the CIA's Directorate of Operations. *See* Bob Woodward, *Secret CIA Units Playing a Central Combat Role*, WASH. POST, Nov. 18, 2001, at A1.

### iii. The Existence of the Special Activities at Issue has Been Declassified

*Sullivan* notes that the secrecy prong of the special activity provision means that "the data must be either unclassified or declassified," and that "[d]eclassification occurs only when 'an authorized Executive Branch official has officially and publicly acknowledged the existence . . . of a specific special activity.'" 992 F.2d at 1254 (citations omitted). As discussed above, the CIA-authored Vaughn Indices attached to the Culver Declaration explicitly acknowledge the existence of special activity that is linked to Los Pepes and Escobar. The Court therefore concludes that defendant has declassified the existence of the relevant special activity. Consequently, defendant's operational files continue to be subject to search and review for information concerning that activity. *See* 50 U.S.C. § 3141(c).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for summary judgment will be GRANTED in part and DENIED in part, and Defendant's Cross-Motion for summary judgment will be

GRANTED in part and DENIED in part, in a separate order issued this date. Defendant will be required to search the Directorate of Science & Technology, the National Clandestine Service, and the Directorate of Support, and defendant's operational files in those directorates shall be subject to this search for any information concerning the declassified special activity identified in this opinion. Defendant will also be required to produce a Vaughn Index for this search that identifies each document withheld, states the statutory exemption claimed for each withheld document, and explains how disclosure would damage the interests protected by the claimed exemption. *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1326 n.1 (9th Cir. 1995). The Court will construe any claimed exemptions from disclosure narrowly, "in keeping with FOIA's presumption in favor of disclosure." *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 869 (D.C. Cir. 2010) (citation omitted).


Signed by Royce C. Lamberth, Judge, on August 19, 2015.